## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLUMBIA

---

JUDITH A. MANSFIELD       )
                              )
         Plaintiff,        )
                              )
      v.                   )     Civil Action No. 05-1790 (RMU)
                              )     Judge Ricardo M. Urbina
JAMES H. BILLINGTON,     )
LIBRARIAN OF CONGRESS,   )
                              )
        Defendant.      )

---

## PLAINTIFF JUDITH A. MANSFIELD'S OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### <u>INTRODUCTION</u>

Judith Mansfield performs the same duties for the Library of Congress as several of its male employees, but she is paid significantly less than her male counterparts. When Ms. Mansfield complained directly to the Librarian of Congress of sex discrimination, her position was immediately abolished, and she was returned to a subordinate position in the Library's hierarchy which she had previously held. The Librarian now asserts that "plaintiff is attempting to manufacture claims of sex discrimination and retaliation out of nothing,"[1] arguing that these facts, asserted in Ms. Mansfield's Complaint, are insufficient to state any claims under Title VII of the Civil Rights Act or the Equal Pay Act. The Librarian's assertions lack merit, and his motion to dismiss, or for summary judgment, must be denied.

---

[1] Defendant's Memorandum in Support of Motion to Dismiss or for Summary Judgment ("Def. Mem.") at 1.

<u>**BACKGROUND**</u>

**I.     Statement of Facts**

In August 2004, Defendant Librarian of Congress (the "Librarian") created three Assistant Director positions in the Library Services unit of the Library of Congress (the "Library"), which consisted of similar duties and were placed at the same level in the Library's organizational structure. *See* Complaint ("Compl.") ¶22; Exhibit ("Ex.") 1. Ms. Mansfield was assigned to the position of Assistant Director for Bibliographic Access. *See* Compl. ¶22; Ex. 10 (Affidavit of Judith A. Mansfield ("Mansfield Aff.")) ¶4. At the same time, Steve Herman and Mark Dimunation were assigned Assistant Director for Collections Management and Assistant Director for Special Collections and Services, respectively. *See* Compl. ¶22; Mansfield Aff. ¶5. Defendant, however, knowingly compensated Ms. Mansfield at the GS-15 level, substantially less than the two male employees who were being paid at the Senior Level.[2] *See* Compl. ¶23.

Following several unsuccessful attempts to resolve this wage disparity through her immediate supervisor, Ms. Mansfield hand-delivered a letter to Defendant on March 15, 2005, complaining that she has been performing the same duties as male employees of the Library but continually been paid less, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Equal Pay Act, 29 U.S.C. § 206(d)("EPA"). *See* Compl. ¶25; Ex. 6. In her letter, Ms. Mansfield also stated: "I want this matter to remain a private personnel matter and I want to negotiate a

---

[2]The Library's Senior Level Executive System has a minimum and maximum pay range as set by law. The minimum and maximum basic pay rates are linked to the General Schedule. Specifically, the minimum basic pay rate is 120 percent of the salary of a GS-15/1 for the SL-1 level, and the maximum basic pay rate is 162.44 percent of the salary of a GS-15/1 for the SL-4 level. The Senior Level Executive System provides for other forms of compensation as well. *See* Library of Congress Regulation ("LCR") 2017-2.1, Section 14.

satisfactory resolution as expeditiously as possible.  However, if I do not receive a response within 10 business days, I will assume there is no interest in resolving this matter privately."  Ex. 6. Whereupon Defendant immediately abolished her Assistant Director position, as well as the other two Assistant Director positions, and returned her to her prior position as Chief of the Arts and Sciences Cataloging Division ("ASCD Chief"), which occupied a lower level than the Assistant Director position in the hierarchy of the Library.  *See* Compl. ¶26; Mansfield Aff. ¶9; Ex. 1.

Moreover, Defendant has an extensive history of paying Ms. Mansfield less than he pays male employees who perform the same work, a situation which Ms. Mansfield was attempting to resolve in her letter to Defendant.  *See* Ex. 6.  In particular, almost three years ago, Defendant conducted a classification review of Ms. Mansfield's ASCD Chief position; the classifier determined in April 2003 that Ms. Mansfield's position was improperly classified at the GS-15 level and should be classified at the Senior Level.  *See* Compl. ¶¶18-20.  John Byrum, a male employee doing the same work for the Library as Chief of the Regional and Cooperative Cataloging Division, was being paid as a Senior Level employee, far more than Ms. Mansfield.  *See id.* at ¶19.  Defendant, however, ignored the findings of the classification review and continues, to this day, to have Ms. Mansfield perform the duties of the ASCD Chief position while maintaining her at the GS-15 level compensation, significantly lower than the Senior Level rate he has paid Mr. Byrum for performing the same duties until Mr. Byrum retired in January 2006.  *See id.* at ¶21.

In addition, Ms. Mansfield was promoted to Acting Director for Cataloging in September 2002.  *See* Compl. ¶11.  She ultimately served in that capacity, for nearly two years, until approximately June 2004.  *See* Compl. ¶¶11-15.  However, whereas Defendant compensated her male predecessor, Beacher Wiggins, at the Senior Level, Defendant paid Ms. Mansfield at the GS-15

level for the majority of the time she served in the position, except for two 120-day periods. *See id*.

As further evidence of the unfair manner in which Defendant has paid Ms. Mansfield, Defendant also paid Ms. Mansfield less than John Byrum when she supervised him in her capacities as Assistant Director of Bibliographic Access and as Acting Director for Cataloging. *See* Compl. ¶27 In these positions, Ms. Mansfield performed equal, if not more, work than her male counterpart, but she was paid substantially less. *See id.* at ¶28.

## II.    Procedural History

Ms. Mansfield has sex discrimination and retaliation claims under both Title VII and the EPA, which is a part of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA"). Pursuant to 28 U.S.C. § 1346(a)(2),[3] Ms. Mansfield filed her sex discrimination claim under the EPA in the United States Court of Federal Claims on April 14, 2005. *See Mansfield v. United States*, No. 05-472C. Because the U.S. Court of Federal Claims lacks jurisdiction over cases "sounding in tort," Plaintiff Mansfield was required to pursue her retaliation claim under the EPA, as well as her claims under Title VII, before this Court.[4] *See Jentoft v. United States*, 64 Fed. Cl. 549, 552 (2005)(holding that retaliation claims under the EPA "sound in tort" and therefore, the U.S. Court of Federal Claims lacks jurisdiction over them under 28 U.S.C. § 1491(a)(1)); *Bunch v. United States*, 33 Fed. Cl. 337,

---

[3]The Little Tucker Act, 28 U.S.C. § 1346(a)(2), provides the U.S. Court of Federal Claims with exclusive jurisdiction over non-tort claims against the United States exceeding $10,000.

[4]Defendant implies that Plaintiff has done something improper by filing two suits in two different courts based upon facts which overlap. *See* Def. Mem. at 1. Plaintiff has not done so by choice, but rather she has been forced to do so by the jurisdictional constraints imposed by the various statutes and judicial interpretations. In short, Plaintiff cannot file her EPA wage disparity claim in Federal District Court, nor her Title VII and EPA retaliation claims in the U.S. Court of Federal Claims. Thus, Plaintiff is faced with the Hobson's choice of litigating in two different courts simultaneously or forfeiting one or more of her claims under the two statutes.

341 (1995)(emphasizing that Congress clearly granted exclusive jurisdiction over Title VII claims to district courts pursuant to 28 U.S.C. §1343).[5]

Claims under the EPA do not require exhaustion of administrative remedies.  *See Washington County v. Gunther*, 452 U.S. 161, 175 n.14 (1981).   Plaintiff sufficiently exhausted her administrative remedies prior to instituting proceedings before this Court with respect to her claims under Title VII.   On April 18, 2005, Ms. Mansfield filed an allegation of discrimination ("EEO Complaint") against Defendant with the Library of Congress Equal Employment Opportunity Complaints Office ("EEOCO"), alleging sex discrimination and retaliation in violation of Title VII. *See* Ex. 6.  Ms. Mansfield subsequently received a letter from the EEOCO, dated May 27, 2005, dismissing her EEO Complaint on grounds that it contained the "same identical issues" raised in her pending civil action before the U.S. Court of Federal Claims.  *See* Ex. 7.  In a letter, dated June 2, 2005, Ms. Mansfield, through counsel, requested that the EEOCO reconsider its decision to dismiss her complaint, explaining that her EEO Complaint was made pursuant to Title VII whereas her civil action before the U.S. Court of Federal Claims involved violations of the EPA.  *See* Ex. 8. Moreover, Plaintiff pointed out that the U.S. Court of Federal Claims lacked jurisdiction over Ms. Mansfield's retaliation claims.  *See id.*  The EEOCO, however, declined to reopen her case and notified Ms. Mansfield of her right to file an action before this Court within 90 days of receipt of its letter.  *See* Ex. 9.

―――――――――――――

[5]Contrary to Defendant's assertion, Plaintiff's Complaint before this Court contains a claim under the EPA, namely her retaliation claim under 29 U.S.C. § 215(a)(3).  *See* Def. Mem. at 2-3 n.1. The EPA was enacted as an amendment to the FLSA.  As a result, retaliation against employees who complain of wage discrimination under the EPA is specifically prohibited by 29 U.S.C. § 215(a)(3), a provision of the FLSA.  Furthermore, Plaintiff invokes the Court's injunctive powers under the EPA pursuant to  29 U.S.C. § 217.

On September 9, 2005, within 90 days of the EEOCO's final decision dismissing her EEO Complaint, Ms. Mansfield filed her Complaint against Defendant before this Court, asserting claims for sex discrimination and retaliation under Title VII.  Ms. Mansfield also asserted her claim for retaliation under the EPA.  In lieu of an Answer and prior to any formal discovery, Defendant filed the instant Motion to Dismiss or for Summary Judgment, attaching the declaration of one Library official, under Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure.  As Plaintiff sets forth below, Plaintiff sufficiently states claims for relief under both Title VII and the EPA. Therefore, Defendant's motion must be denied.

## ARGUMENT

In his Memorandum, Defendant argues that Plaintiff Mansfield failed to state any claims for relief under Title VII or the EPA.  *See* Def. Mem. at 1.  On the contrary, Plaintiff asserts facts in her Complaint sufficient to establish a prima facie case for each of her claims.  *See* Compl. ¶¶11-23. Furthermore, Defendant requests that the Court draw inferences in his favor, improper inferences in this procedural posture, by requesting that the Court find that his decision to abolish Ms. Mansfield's Assistant Director position was not on account of her gender or her sex discrimination complaint.  *See, e.g.,* Def. Mem. at 11-13.  Defendant fails to satisfy the requirements of either Rule 12 or Rule 56, and therefore, his motion must be denied.

## I.    Legal Standards

The Federal Rules of Civil Procedure require only that a complaint contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S. 41, 47 (1957)(quoting FED. R. CIV. P. 8(a)(2)); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000)(A simple

statement such as "I was turned down for a job because of my race" is all a complaint has to contain

in order to survive a Rule 12(b)(6) motion (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir.

1998).).  For this reason, Defendant's motion to dismiss under Rule 12(b)(6) cannot prevail unless

Defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of

[her] claim[s] which would entitle [her] to relief." *Sparrow*, 216 F.3d at 1114 (quoting *Conley,* 355

U.S. at 45-46).  In reviewing a motion to dismiss, courts do not "assess 'the truth of what is asserted

or determin[e] whether a plaintiff has any evidence to back up what is in the complaint.'" *Browning*

*v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)(quoting *ACLU Foundation of Southern California*

*v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991).  Furthermore, the factual allegations in Plaintiff's

Complaint must be presumed true and all reasonable inferences must be drawn in her favor.  *See id.*

(noting that the complaint must be construed liberally).

　　In addition, summary judgment is proper only when "there is no genuine issue as to any

material fact and [ ] the moving party is entitled to judgment as a matter of law." *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986).  In moving for summary judgment, Defendant must "establish

that on the basis of the 'pleadings, depositions, answers to interrogatories and admissions on file,

together with the affidavits,' *no* reasonable finder of fact could render a verdict in the plaintiff's

favor." *Higbee v. Billington*, 246 F.Supp.2d 10, 15-15 (D.D.C. 2003)(emphasis added)(citations

omitted)(quoting FED R. CIV. P. 56(c)).[6] Consequently, in determining how a reasonable fact-finder

---

[6]Notably, Defendant has moved for summary judgment before Plaintiff has been afforded *any* discovery in this matter, rendering summary judgment particularly inappropriate.  *See Celotex*, 477 U.S. at 322 ("In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  (emphasis added)).

would decide, the Court must accept all evidence presented by Plaintiff as true and draw every reasonable inference in her favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter. *See id.*

Under the standards of Rule 8, Plaintiff more than states sufficient claims for relief under both Title VII and the EPA. Defendant's motion to dismiss, therefore, must be denied. Similarly, given that Defendant relies on the Court to draw inferences in his favor in moving for summary judgment, genuine issues of material fact exist and Defendant's request for summary judgment must be denied. Furthermore, summary judgment is inappropriate at this juncture, considering that Plaintiff has not been afforded the opportunity to obtain any discovery in this matter.

## II.    Dismissal of Plaintiff's retaliation claims under Title VII and the Equal Pay Act is inappropriate.

Dismissal of Plaintiff's retaliation claims is unwarranted. Defendant concedes that Plaintiff has exhausted her administrative remedies as to her Title VII retaliation claim, and exhaustion is not required for her EPA claim. *See* Def. Mem. at 8; *Gunther*, 452 U.S. at 175 n.14. Furthermore, Plaintiff has pleaded facts in her Complaint to give Defendant ample notice of the basis of her retaliation claims. *See Conley*, 355 U.S. at 47; *Sparrow*, 216 F.3d at 1114-15. In particular, Plaintiff asserts that immediately after she complained to Defendant of sex discrimination, Defendant abolished her Assistant Director position and returned her to her division chief position, which occupied a lower level in the Library's hierarchy. *See* Compl. ¶¶25-26; Ex. 1. These facts give rise to a fair inference that Defendant abolished Ms. Mansfield's position because she complained of discrimination. *See Clinton*, 292 F.3d at 242-43.

8

Defendant makes much of the fact that he also abolished the Assistant Director positions held by the two male employees. *See* Def. Mem. at 11-12. Defendant hopes the elimination of the Assistant Director positions held by the two male employees provides sufficient cover for the taking away of Ms. Mansfield's position just two weeks after she had complained to the Librarian that she was being underpaid due to her gender. *See id.* However, if a guided missile is fired to take out a target and does so, the fact that innocent bystanders are harmed as well does not mean the missile failed to reach the intended target. So too, here, Plaintiff contends in her Complaint that Defendant intended to reduce his liability to her by eliminating the positions of all three, regardless of the impact on the male employees. Of course, the male employees were returned to their former (less responsible) duties but without the loss of their Senior Level pay. *See* Mansfield Aff. ¶¶17-18. *See also, e.g.*, Ex. 2; Ex. 3. In contrast, Ms. Mansfield lost an opportunity to perform Senior Level duties (which lawfully should have been compensated at Senior Level pay) and was returned to a division chief position for which she was paid at the GS-15 level. *See* Mansfield Aff. ¶¶9-10, 13-16.

In addition, Defendant's argument amounts to no more than that an employer should not be liable for retaliating against a complaining employee if non-complaining employees were punished along with the complaining employee. Defendant's position clearly runs counter to the purposes of Title VII and EPA, which both seek to eliminate sex discrimination. Defendant's interpretation of the law would enable employers to freely retaliate against employees who complain of discrimination by simply punishing non-complaining employees. This circumstance in turn would create a chilling effect upon the willingness of aggrieved employees to speak out against employment discrimination or assert any of their rights under Title VII and the EPA. *See, e.g.*, *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 335-36 (1960)(Congress enacted the anti-retaliation provision

of the EPA to foster a climate in which employees would feel free to voice grievances without fear of reprisal.); *Wagner v. Taylor*, 836 F.2d 566, 574 (D.C. Cir. 1987)("Retaliation threatens the very core of Title VII's guarantees, for it may well dissuade employees from ventilating their grievances."); *EEOC v. Outback Steakhouse of Florida, Inc.*, 75 F.Supp.2d 756, 758 (N.D. Ohio 1999)("The impetus behind Title VII's anti-retaliation provision is the need to prevent employers from deterring victims of discrimination from complaining to the EEOC.").   In particular, an employee who has suffered discrimination would be discouraged from complaining, not only because her employer would be able to retaliate against her by simply directing its actions against other employees as well, but for fear that her complaint would subject her co-workers to adverse employment actions.   Given these consequences, Defendant's position must be rejected.

**III.      Defendant's elimination of Plaintiff's position constitutes an adverse action.**

Two weeks after Plaintiff complained to the Librarian of Congress that she was paid less than men performing the same job duties, Defendant abolished her Assistant Director position.   *See* Compl. ¶¶25-26.   In that position, Ms. Mansfield managed a budget of more than $40 million and supervised a staff of 550 employees.   *See* Mansfield Aff. ¶¶15-16.   By returning her to her position as a division chief, Defendant reduced her responsibility to management of a budget of $4.4 million and supervision of a staff of approximately 75 employees.   *See id.*   Despite this radical reduction in her duties and responsibilities, Defendant claims Ms. Mansfield suffered no adverse action.   *See* Def. Mem. at 9-11.   Because Defendant misreads the law regarding adverse actions, Defendant's motion must be denied.

In *Brown v. Brody*,  199 F.3d 446, 456-57 (D.C. Cir. 1999), the court held that a plaintiff suffers an adverse action at the hands of her employer when there are "materially adverse

consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm. "[7]    Examples of adverse actions accepted by the court include "hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing a significant change in benefits."    *Id.* (emphasis added)(quoting *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Here, Ms. Mansfield clearly suffered "materially adverse consequences affecting the terms, conditions, or privileges of her employment" when Defendant eliminated her Assistant Director position and placed her in her prior ASCD Chief position.  As Assistant Director, Ms. Mansfield supervised all nine Bibliographic Access division chiefs in the Acquisitions and Bibliographic Access directorate, including the ASCD Chief.  *See* Mansfield Aff.¶¶12-13; Ex. 1.  When she was returned to her ASCD Chief position, her responsibilities were again limited to the Arts and Sciences Cataloging Division, only one division within the Acquisitions and Bibliographic Access directorate. *See* Mansfield Aff. ¶14.  Additionally, in her capacity as Assistant Director, she managed a budget of over $40 million and staff of 550 members.  *See* Mansfield Aff. ¶¶15-16.  In contrast, she managed a smaller budget ($4.4 million) and a smaller staff of approximately 75 members as ASCD Chief.  *See id.*

Considering these differences between the two positions, the injury which Ms. Mansfield asserts here is not merely "dissatisfaction with reassignment or unhappiness over assigned duties,"

---

[7]The Supreme Court is currently in the process of resolving a circuit split to determine what constitutes an adverse action sufficient to sustain a claim under Title VII.  *See White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789 (6th Cir. 2004), *cert. granted*, 74 USLW 3130 (U.S. Dec. 5, 2005)(No. 05-259).

as Defendant contends.  *See* Def. Mem. at 11.  Rather, Ms. Mansfield lost significant supervisory duties when Defendant abolished the Assistant Director position and placed her in the subordinate ASCD Chief position, which this circuit has found to be an adverse action.  *See Holcomb v. Powell,* No. 04-5216, 2006 WL 45853, at *20-21 (D.C. Cir. Jan. 10, 2006)(reduction in responsibilities constitutes an adverse action); *Stewart v. Ashcroft,* 352 F.3d 422, 426-27 (D.C. Cir. 2003)(defendant denied plaintiff the opportunity to advance within defendant's hierarchy, which constituted an adverse action); *Burke v. Gould,* 286 F.3d 513, 522 (D.C. Cir. 2002)(withdrawing an employee's supervisory duties constitutes an adverse action).

Defendant asserts that Ms. Mansfield did not suffer an adverse action when Defendant eliminated her Assistant Director position and returned her to the ASCD Chief position because her salary did not decrease.  *See* Def. Mem. at 10-11.  However, had Defendant not discriminated against Ms. Mansfield (and appropriately paid her as Assistant Director), she would have suffered a diminution in pay upon the elimination of that position and her return to the ASCD Chief position, in which Ms. Mansfield was only receiving GS-15 level pay.  Thus, the abolition of her Assistant Director position would also constitute an ongoing future loss of Senior Level income, which Defendant lawfully should have paid her in that position.[8]  These are losses in pay that neither of the two male Assistant Directors suffered upon the elimination of their positions because they continued to receive the higher Senior Level pay.  *See* Mansfield Aff. ¶¶17-18.  *See also, e.g.*, Ex. 2; Ex. 3.

Furthermore, *Brody* does not limit adverse actions to those which result in a decrease of pay or benefits as Defendant suggests.  *See* Def. Mem. at 10-11.  In *Stewart*, the court emphasized that the language of its holding in *Brody* clearly encompasses other adverse actions, which do not

---

[8]Indeed, the higher level position provided Ms. Mansfield greater economic opportunity.

necessarily result in a diminution of pay or benefits. *See Stewart*, 352 F.3d at 426-27. *See also Holcomb,* 2006 WL 45853, at *20-21 (finding that plaintiff whose responsibilities were reduced, without a decrease in pay, suffered an adverse action); *Preda v. Nissho Iwai American Corp.*, 128 F.3d 789, 791 (2d Cir. 1997)(retaliatory adverse actions are "not limited to 'pecuniary emoluments,' but includes discriminatorily-motivated diminution in duties"). To illustrate its point, the court explained that lateral transfers, which typically do not result in a decrease of pay, can be considered adverse actions when they involved "materially adverse consequences [for] the terms, conditions, or privileges" of the plaintiff's employment. *See Stewart*, 352 F.3d at 427 (alteration in original)(quoting *Brody*, 199 F.3d at 457). As previously discussed, Ms. Mansfield essentially suffered a demotion upon the elimination of her Assistant Director position given the greater supervisory authority she had in that position, as compared to those she had as ASCD Chief.

Defendant also contends that the annual salary adjustment Ms. Mansfield received to her salary following her return to the ASCD Chief position resulted in an increase in her pay, and therefore, constitutes further evidence that she did not suffer an adverse action. *See* Def. Mem. at 9-10. However, as Defendant's own declarant explains, the increase to her pay was merely the annual pay adjustment that *all* federal government employees are given in order to offset inflation. *See* Declaration of Dennis Hanratty ¶13. Consequently, this increase to her pay, an increase totally unrelated to her own job situation, does nothing to prove that she experienced no adverse action when her Assistant Director position was abolished. For this reason and all those above, Defendant's request for dismissal on these grounds is unwarranted and Defendant's motion must be denied.

## III.    Causation is a question of fact to be resolved by the fact-finder.

Defendant contends that he could not have retaliated against Ms. Mansfield by abolishing

13

her position as Assistant Director two weeks after she complained that she was being paid less than her male colleagues on account of her sex for the performance of the same duties. *See* Def. Mem. at 12-13. His argument rests on the fact that he eliminated the positions of the two male Assistant Directors at the same time he abolished Ms. Mansfield's position. *See id.* However, had the National League abolished the Brooklyn Dodgers when Jackie Robinson broke the color-line in Major League Baseball rather than permit him to play, that action would be no less discriminatory simply because 24 white ball players lost their jobs, too. Because the Assistant Director positions were eliminated a mere two weeks after Ms. Mansfield's complaint of sex discrimination and pay disparity, Plaintiff is entitled to an inference that the Librarian acted in response to her complaint, and the collateral damage to two male employees who held the same position cannot preclude Plaintiff's claims that she was the real target of the Librarian's actions.

Ms. Mansfield's situation is not unlike that of the plaintiff in *Jones v. Ohio Dep't of Mental Health*, 687 F.Supp. 1169 (S.D. Ohio 1987). In *Jones*, the employer fired a white employee to cover for its firing of a black employee in a comparable position on the very same day. The Court did not reject the plaintiff's claim due to the fact that two employees of different races in comparable positions were fired on the same day because the action itself on its face displayed no disparate treatment. The Court rather pierced the surface and found that the employer acted because of the white employee's race to undermine the black employee's potential race discrimination claim. *See Jones*, 687 F.Supp. at 1171-72. Similarly, Defendant here has eliminated all three Assistant Director positions immediately following Ms. Mansfield's complaint of gender-based wage discrimination. *See* Compl. ¶¶25-26. The suspicious timing alone is sufficient to infer cause and effect, and a jury could infer the elimination of all three positions was an attempt to cover for the employer's true

14

motivations and to undermine Ms. Mansfield's sex discrimination and retaliation claims.  *See Singletary v. District of Columbia*, 351 F.3d 519, 525 (D.C. Cir. 2003)(The close temporal proximity between a plaintiff's discrimination complaint and an adverse action may alone establish an inference of a causal connection between the two events.); *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000)(same);  *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985)(same).

In addition, Defendant requests that the Court draw inferences in his favor by finding that he did not retaliate against Plaintiff in eliminating her position without providing a non-retaliatory reason for the abolition of the position.  *See* Def. Mem. at 12-13.  However, Defendant is requesting that the Court draw inferences in his favor to which he is not entitled in this procedural posture.[9]  *See Clinton*, 292 F.3d at 242; *Reeves v. Sanderson Plumbing, Inc.*, 530 U.S. 133, 151 (2000) (A trial court "must disregard all evidence favorable to the moving party that the jury is not required to believe.").  Furthermore, Defendant merely points to the elimination of the male employees' positions, which without more, cannot satisfy his burden in moving for summary judgment.  *See Cones*, 199 F.3d at 520-21 (Once the plaintiff presents a prima facie case of her claim, the defendant has the burden of producing a non-retaliatory reason for the presumptively retaliatory conduct.).  Thus, Defendant's request for summary judgment in his favor must be denied.  Moreover, whereas

--------

[9]Additionally, Defendant's argument that the two males were treated the same way as Ms. Mansfield fails in light of the fact that both men were paid at the Senior Level in their Assistant Director positions and continued to receive Senior Level pay after the elimination of their positions. Ms. Mansfield suffered the loss of an economic opportunity, which the two men did not, when Defendant eliminated the Assistant Director positions.  Had Ms. Mansfield been paid at the appropriate Senior Level rate in that position she would have suffered a decrease in pay upon the elimination of that position and her return to the ASCD Chief position, in which Ms. Mansfield was only receiving GS-15 level pay.  Furthermore, the abolition of her Assistant Director position would also constitute an ongoing future loss of Senior Level income if Defendant had not paid her discriminatory wages.

here the case turns on the Librarian's motive or intent in eliminating Ms. Mansfield's position and the Librarian has not even articulated a non-retaliatory reason, summary judgment is inappropriate. *Higbee*, 246 F.Supp.2d at 15.

**IV.   Plaintiff engaged in protected activity under the anti-retaliation provision of the Equal Pay Act.**

The Librarian does not dispute that Ms. Mansfield's letter, which was hand-delivered to him by Ms. Mansfield, specifically asserts complaints of sex and wage discrimination under the EPA and Title VII.  *See* Def. Mem. at 13-15.  The Librarian only contends that the letter was given directly to him rather than the EEOCO, and therefore, constitutes an "informal complaint," which the Librarian asserts is not protected activity under the anti-retaliation provision of the EPA.[10]  *See id.* The Librarian's argument runs counter to the specific mandate he has been given as the ultimate authority in enforcing federal anti-discrimination laws in the Library of Congress.  *See* 42 U.S.C. § 2000e-16(b).  Furthermore, the Librarian's contention that protected activity be limited to formal complaints contravenes the broad remedial purposes of the anti-retaliation provision, *i.e.*, to foster a workplace environment in which employees feel free to voice grievances without fear of reprisal, which even the Librarian acknowledges has been recognized and applied by the majority of circuits. *See* Def. Mem. at 15.

In reviewing the anti-retaliation provision of the EPA, the majority of circuits have held that informal complaints are protected activity under the provision.[11]  In *Valerio*, the U.S. Court of

---

[10]Significantly, Defendant does not dispute that Ms. Mansfield's letter constitutes protected activity under Title VII.

[11]*See, e.g., Valerio v. Putnum Associates, Inc.*, 173 F.3d 35 (1st Cir. 1999); *Brock v. Richardson*, 812 F.2d 121 (3d Cir. 1987); *EEOC v. Romeo Community Schools*, 976 F.2d 985 (6th Cir. 1992); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179 (8th Cir. 1975); *Lambert v. Ackerly*, 180

Appeals for the First Circuit explained that informal complaints are encompassed by the provision's language "has filed any complaint." *See Valerio*, 173 F.3d at 41. Specifically, the court noted that "[b]y failing to specify that the filing of any complaint need be with a court or agency, and by using the word 'any,' Congress left open the possibility that it intended 'complaint' to relate to less formal expressions of protest, censure, resentment, or injustice conveyed to an employer." *Id.* Furthermore, interpreting the phrase "has filed any complaint" to encompass only complaints filed with a court or agency would render superfluous the provision's additional language "or instituted or caused to be instituted any proceeding under or related to this chapter." *Id.* at 42.

Moreover, the remedial and humanitarian purpose of the anti-retaliation provision supports the inclusion of informal complaints as protected activity. *See Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)(Provisions of the FLSA, of which the EPA is a part, "must not be interpreted in a narrow, grudging manner."). *See also Valerio*, 173 F.3d at 43; *Brock*, 812 F.2d at 123-24; *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004). In enacting the anti-retaliation provision, Congress

> "sought to foster a climate in which compliance with the substantive provisions of the [EPA] would be enhanced" by recognizing that "fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions."

*Love*, 738 F.2d at 387 (quoting *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).

---

F.3d 997 (9th Cir. 1999); *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390 (10th Cir. 1997); *Love v. RE/MAX of America, Inc.*, 738 F.2d 383 (10th Cir. 1984); *EEOC v. White & Son Enterprises*, 881 F.2d 1006 (11th Cir. 1989).

The issue is one of first impression for this circuit. *See Rodriguez v. Puerto Rican Federal Affairs Admin.*, 338 F.Supp.2d 125 (D.D.C. 2004)(declining to rule on the issue on the undeveloped record of the case).

Narrowly construing the provision to protect only employees who have filed formal complaints would create an atmosphere of intimidation and thwart the purposes of the EPA.

Specifically, limiting the protections of the anti-retaliation provision to the filing of formal complaints would give an employer free hand to discharge an employee in retaliation for asserting rights under the EPA, so long as the employer acted before the filing of a formal complaint with the relevant court or agency or the institution of a proceeding. *See Valerio*, 173 F.3d at 43. In addition, "[b]y protecting only those employees who kept secret their belief that they were being illegally treated until they filed a legal proceeding, the [EPA] would discourage prior discussion of the matter between employee and employer, and would have the bizarre effect both of discouraging early settlement attempts and creating an incentive for the employer to fire an employee as soon as possible after learning the employee believed he was being treated illegally." *Id. Cf. Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)(seeking to avoid "a perverse incentive for employers to fire employees who might bring Title VII claims").

In particular, a narrow construction of the EPA anti-retaliation provision would defeat the purposes of the EPA where, as here, Ms. Mansfield complained of sex and wage discrimination directly to the Librarian, who is charged with enforcing federal anti-discrimination laws in the Library. *See* 42 U.S.C. § 2000e-16(b). In addition, her letter to Defendant clearly asserted violations of both the EPA and Title VII, sufficiently notifying Defendant of the nature of her complaint. *See* Ex. 6. In fact, the Librarian does not dispute that Ms. Mansfield's letter contained complaints of sex and wage discrimination under the EPA and Title VII. *See* Def. Mem. at 13-15. Moreover, given that Defendant abolished Ms. Mansfield's Assistant Director just two weeks after she delivered the letter to him, Plaintiff is entitled to an inference that Defendant eliminated her position because she

18

complained. In addition, a jury could reasonably infer that the Library abolished her position precisely because Ms. Mansfield communicated that she was prepared to make her complaint public. *See* Ex. 6. *See, e.g., EEOC v. Bojangles Restaurants, Inc.*, 284 F.Supp.2d 320, 328-30 (M.D.N.C. 2003)(finding employer unlawfully terminated an employee in anticipation of EEOC complaint). In light of these circumstances, Plaintiff engaged in protected activity and must not be precluded from pursuing her claim.

To the extent Defendant relies *Lambert v. Genesee Hosp.*, 10 F.3d 46 (2d Cir. 1993), and *Ball v. Memphis Bar-B-Q Co., Inc.*, 228 F.3d 360 (4th Cir. 2000), the holdings in these two cases are against the weight of authority as shown above. Moreover, *Lambert* and *Ball* are distinguishable from the facts here. Unlike Ms. Mansfield, the plaintiffs in these cases did not articulate a complaint of illegal discrimination. *See Lambert*, 10 F.3d at 55 (involving a complaint of "unfair wages" without stating that the low wages were on account of sex); *Ball*, 228 F.3d at 363 (involving a disagreement over plaintiff's potential testimony in a proceeding which had not been initiated). Thus, Defendant's reliance on these cases fails, and Ms. Mansfield's letter is protected activity under the EPA as recognized by the majority of circuits.

## V. Plaintiff has sufficiently exhausted administrative remedies as to her sex discrimination claims under Title VII.

Plaintiff sufficiently states a claim for sex discrimination under Title VII in her Complaint. Moreover, Plaintiff asserts facts in her Complaint sufficient to establish a prima facie case for each of her claims. In particular, Plaintiff asserts that she was paid less than male employees of the Library who performed the same work. *See* Compl. ¶¶11-23. Defendant has not proffered any non-discriminatory reason for the wage disparity between Ms. Mansfield and her male counterparts.

Defendant only asserts that Plaintiff's sex discrimination claim is time-barred because some of the discriminatory acts against Plaintiff occurred in 2002 and 2004, more than 20 days prior to the filing of her EEO Complaint on April 18, 2005. *See id.* at 6-8 (LCR 2010-3.1, Section 4A requires that a complainant contact the EEOC Office "not later than 20 workdays after the date of the alleged discriminatory matter."). Defendant fails to understand that Ms. Mansfield alleges not simply that Defendant has paid her less than her male counterparts at specific points of time but that as a result of Defendant's continuing failure to provide her with equal pay for equal work, she "*continues* to suffer lost wages and benefits."[12] Compl. ¶31 (emphasis added).

Ms. Mansfield's claim is clearly actionable under the case law of this jurisdiction. In *Shea v. Rice*, 409 F.3d 448 (D.C. Cir. 2005), the U.S. Court of Appeals for the District of Columbia stated that the continual, discriminatory compensation of an employee renders each pay check by which she receives less than she would be receiving absent the discrimination a discrete, discriminatory act that is actionable under Title VII. *See Shea*, 409 F.3d at 452-53 (stating that the Supreme Court upheld its prior statement that each discriminatory paycheck constituted a separate discriminatory act that could give rise to a Title VII claim in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)); *Anderson v. Zubieta*, 180 F.3d 329, 336 (D.C. Cir. 1999). Consequently, an employee is entitled to relief for all discriminatory paychecks issued within the applicable limitations period and thereafter. *See Shea*, 409 F.3d at 453; *Hildebrandt v. Illinois Dep't of Natural Resources*, 347 F.3d 1014, 1028-29 (7th Cir. 2003)(holding that discriminatory paychecks issued after the beginning of the limitations period are not subject to the statute of limitations).

---

[12]While some of the discriminatory acts may not be compensable, Defendant's long pattern of paying Ms. Mansfield less than her male counterparts provides further evidence of Defendant's discriminatory intent.

Ms. Mansfield's EEO Complaint, filed on April 18, 2005, encompasses all discriminatory paychecks that she received within 20 workdays prior to the date of her complaint, March 21, 2005, as provided by Library regulations. *See* LCR 2010-3.1, Section 4A; *Shea*, 409 F.3d at 453. Within that time period, she was receiving discriminatorily low paychecks as Assistant Director for Bibliographic Access when she was being paid at the lower GS-15 rate while the two male Assistant Directors were being paid at the Senior Level. *See* Compl. ¶¶22-25. In addition, Ms. Mansfield continued to receive discriminatory compensation following March 31, 2005, when Defendant eliminated her Assistant Director position, returned her to her prior ASCD Chief position, and continued to pay her at the GS-15 level. *See* Compl. ¶¶ 19-21; Mansfield Aff. ¶¶9-10. In particular, since Ms. Mansfield resumed the ASCD Chief position after March 31, 2005, Defendant has continued to pay her at the GS-15 level for the performance of those duties while it has paid male employees who perform the same work, such as John Byrum, the Chief of the Regional and Cooperative Cataloging Division, at the Senior Level rate. *See* Compl. ¶¶18-21. Considering these facts, Plaintiff's Complaint states a claim for sex discrimination under Title VII within the applicable limitations period. Thus, Defendant's motion to dismiss on grounds of failure to exhaust administrative remedies must be denied.

## <u>CONCLUSION</u>

For the aforementioned reasons, Plaintiff states sufficient claims for relief under Title VII and the EPA.  Furthermore, summary judgment is unwarranted at this junction given that genuine issues of material fact exist and Plaintiff has not had the opportunity for discovery. Defendant's Motion to Dismiss or for Summary Judgment, therefore, must be denied.

Respectfully submitted,


WEBSTER, FREDRICKSON & BRACKSHAW


Dated: January 25, 2006                    _____/s/_____

Bruce A. Fredrickson  #933044
Cedar P. Carlton # 480255
Rosy L. Lor #494549
1775 K Street, N.W.
Suite 600
Washington, D.C.  20006
(202) 659-8510
(202) 659-4082 (fax)

Attorneys for Plaintiff Mansfield

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of January, 2006, a copy of the foregoing Opposition to Defendant's Motion to Dismiss or for Summary Judgment, with Proposed Order, and Plaintiff's Statement of Genuine Facts at Issue, were served by first class mail, postage pre-paid, and transmitted electronically to:

Jane M. Lyons, Esq.
Assistant United States Attorney
555 4th Street, N.W.
Room E4822
Washington, D.C. 20530

_____/s/_____
Rosy L. Lor  #494549
1775 K Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 659-8510

Attorney for Plaintiff Mansfield
