**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JUDITH A. MANSFIELD,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **v.** | ) | Civil Action No. 05-1790 (RMU) |
| | ) | Electronic Case Filing |
| **JAMES H. BILLINGTON,** | ) | |
| Librarian of Congress, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF MOTION**
**TO DISMISS OR FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Plaintiff's opposition to defendant's dispositive motion confirms that she is not

attempting to pursue any claim for discrimination under the Equal Pay Act, 29 U.S.C. § 206(d),

in this Court and that her claim under the EPA in this case is limited to one for retaliation. See

29 U.S.C. § 215(a)(3). Pl.'s Opp. at 4-5. Although jurisdiction exists in this Court for plaintiff

to pursue claims for retaliation under the EPA and Title VII of the 1964 Civil Rights Act, as

amended, and sex discrimination, plaintiff's opposition demonstrates that her particular claims

fail for several reasons. First, because plaintiff's only asserted injury is the disparity in pay

between herself and her male colleagues, her sex discrimination claim is duplicative of the claim

she first filed in the Court of Federal Claims under the EPA.

The problem, however, is that for her adverse action, plaintiff relies exclusively on the

disparity in pay between herself and two male colleagues whom she asserts were treated similarly

when all of their positions were eliminated. As such, plaintiff fails to allege a separate and

distinct violation of Title VII. As for her retaliation claims under both the EPA and Title VII, the

former is not viable because plaintiff's conduct was not protected, and the latter fails because

plaintiff did not suffer any adverse action which can be severed from her EPA claim.

**A.      Summary Judgment**

Plaintiff responds to defendant's statement of material facts only by offering her own

statement of genuine material facts at issue.  Based on plaintiff's statement, it is plain that she

does not dispute defendant's Statement of Facts Nos. 1, 2, 3, and 8.[1]  Plaintiff's failure to refute

the specific factual assertions in Statement of Facts 4, 5, 6, and 7 should be treated as a

concession of those facts under the Court's Local Civil Rule 7(h).  See Twist v. Meese, 854 F.2d

1421 (D.C. Cir. 1988); Jackson, Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d

145, 151 (D.C. Cir. 1996); Trawick v. Hantman, 151 F. Supp. 2d 54, 58-59 (D.D.C. 2001).

Importantly, based on the evidence proffered by plaintiff, defendant respectfully requests

that his Statement of Facts No. 6 be supplemented to include that plaintiff first engaged in

protected activity by complaining to her supervisor about the disparity in her pay in October,

2004.  Affidavit of Judith A. Mansfield, ¶ 7 (Exhibit 10 to Pl.'s Opp.).

Furthermore, plaintiff's opposition suggests that the portion of defendant's pre-discovery

motion seeking summary judgment is "particularly inappropriate" because plaintiff has not yet

taken discovery in this case.   Pl.'s Opp. at 7 n.6.  Although factually accurate insofar as there

has been no discovery period in this case, plaintiff's argument is disingenuous at best  because

the Library has supplied plaintiff with hundreds of pages of discovery informally in connection

---

[1] Specifically, plaintiff corroborates defendant's Statement of Facts ("SOF") as follows:
Def.'s SOF ¶ 1 is addressed by Plaintiff's Statement ¶ 1; Def.'s SOF 2 corresponds with
Plaintiff's Statement ¶ 9; Def.'s SOF 3 is addressed at Plaintiff's Statement ¶¶ 16-17; Def.'s SOF
8 is addressed, in part, by Plaintiff's Statement ¶¶ 18, 20.

with the action pending in the Court of Federal Claims.  Particularly telling in this regard, plaintiff's opposition includes as exhibits the SF-50 Notification of Personnel Actions for other employees which were likely obtained in that process.

More importantly, however, plaintiff's criticism is based on a faulty legal foundation because she fails to identify material she would seek in discovery which she would need to demonstrate a material issue of fact.  Rule 56(f) authorizes the district court to exercise its discretion to allow discovery prior to resolving a motion for summary judgment "[s]hould it appear *from the affidavits* of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to the party's opposition . . . ."  Fed. R. Civ. P. 56(f) (emphasis added).  In order to prevail on a Rule 56(f) motion, the moving party must specify "what facts she intended to discover that would create a triable issue and why she could not produce them in opposition to the motion."  Carpenter v. Federal Nat'l Mortgage Ass'n, 174 F.3d 231, 231, 237 (D.C. Cir.), cert. denied, 528 U.S. 876 (1999).  By contrast, plaintiff here fails to provide an affidavit under Rule 56(f).  Plaintiff's opposition is completely devoid of any statement concerning her alleged need for discovery.  Consequently, any implied request for Rule 56(f) relief should be denied.  See Strang v. United States Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (party seeking discovery under Rule 56(f) must state "concretely why she could not, absent discovery, present by affidavit facts essential to justify her opposition to [defendant's] summary judgment motion.").

Rather, a party may defeat a properly-supported summary judgment motion only by providing a "response, by affidavits or as otherwise provided in this Rule, [setting] forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Rule 56(e) directs

that summary judgment "*shall* be entered against the adverse party" if that party fails to raise a genuine issue for trial (emphasis added).  See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986) ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party"); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548, 2553 (1986) ("a party who fails to make a showing sufficient to establish the existence of an element essential to establish that party's case, and on which that party will bear the burden at trial" cannot withstand a motion for summary judgment).  If the non-movant's evidence is "merely colorable, or is not significantly probative, summary judgment may be granted."  Liberty Lobby, 477 U.S. 249-50 (internal citations omitted).  Nor may the non-movant manufacture genuine issues of material fact on the basis of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), or with "conclusory allegations" or "unsubstantiated assertions."  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).  See also Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999) (accepting plaintiff's "conclusory allegations . . . would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial."); Harding v. Gray, 9 F.3d 150, 154 (D.C. Cir.1993).

While it is true that summary judgment must be approached with special caution in discrimination cases, "this does not eliminate the use of summary judgment in discrimination cases."  Marshall v. James, 276 F. Supp. 2d 41, 47 (D.D.C. 2003) (citing cases).  Instead, a discrimination plaintiff "is not relieved of her obligation to support her allegations by affidavits or other *competent* evidence showing that there is a genuine issue for trial."  Calhoun v. Johnson, 1998 WL 164780, at *3 (D.D.C. March 31, 1998) (internal citation omitted), aff'd, 1999 WL

- 4 -

825425, at * 1 (D.C. Cir. Sept. 27, 2000) (emphasis added). "Summary judgment is not a 'disfavored procedural shortcut,' but is an integral procedural tool which promotes the speedy and inexpensive resolution of every case." Marshall, 276 F. Supp. 2d at 47 (quoting Celotex Corp., 477 U.S. at 327). Where it is necessary for the Court to consider matters outside the Complaint, summary judgment is warranted in this case.

**B.    Plaintiff's Alleged Adverse Action Duplicates Her EPA Claim**

For purposes of this motion, defendant does not dispute that it is possible for an employee to claim violations of both the Equal Pay Act and Title VII. But in this case, where the only alleged adverse action is the disparity in pay itself which is already the subject of plaintiff's case in the Court of Federal Claims, that particular claim should be dismissed.

Plaintiff's opposition argues that the elimination of the three Assistant Director positions was an adverse action. But the only harm she identifies is that she was continuously paid significantly less than various of her male counterparts whom she asserts performed substantially the same work. See Pl.'s Opp. at 2-4 (Plaintiff's Statement of Facts); Complaint, ¶¶ 9, 19, 22 & Prayer for Relief. By itself, this fails to state a separate claim for any relief not already in play in the Court of Federal Claims other than a declaratory judgment that plaintiff's pay violated Title VII and, arguably, plaintiff's attorney's fees.[2] Importantly, the Complaint does not request

---

[2]  Although this Court lacks jurisdiction over plaintiff's Equal Pay Act claim, the Court of Federal Claims cannot obtain jurisdiction over plaintiff's Title VII claim. See 42 U.S.C. § 2000e(16)(c); see also Mobin v. United States, 22 Cl.. Ct. 331, 333 (1991)(citing United States v. Fausto, 484 U.S. 439 (1988) and Brown v. GSA, 425 U.S. 820, 832 (1976), for the proposition that District Courts, not Claims Court and Court of Claims [now Court of Federal Claims], respectively, have jurisdiction over Title VII claims. Although plaintiff's complaint fails to allege any basis for venue in the District of Columbia, defendant is not contesting venue as part of his motion because he does not dispute that plaintiff worked at all relevant times in D.C. and that venue is proper. 42 U.S.C. § 2000e-5(f).

compensatory damages as a form of relief, and the period for which backpay could be awarded if plaintiff prevailed is subsumed within the longer period for which backpay could be awarded if plaintiff prevails in the Court of Federal Claims.  See Shea v. Rice, 409 F.3d 448 (D.C. Cir. 2005) (analyzing Title VII claim that each paycheck under an unlawfully discriminatory pay system can be actionable for the period before the filing of an EEO charge).[3]

Plaintiff's identification of the adverse action in this case as "essentially . . . a demotion upon the elimination of her Assistant Director position given the greater supervisory authority she had in that position, as compared to those she had as an ASCD Chief" is a red herring.  Pl.'s Opp. at 13.  The essence of plaintiff's claim remains that this was adverse to her only because she continued to receive less pay than men.  Id.

Moreover, the elimination of the Assistant Director positions is not an adverse action. Although plaintiff points to the smaller budget and fewer number of people she supervises, id. at 10, this kind of change in her job is not so objectively dramatic that it can constitute an adverse action.  Plaintiff's reliance on Holcomb v. Powell, is misplaced because Holcomb presents a radically different situation:

---

[3] A claim under the EPA does not require any showing of intent.  See generally Lissak v. United States, 49 Fed. Cl. 281, 284 (2001).  Thus, if the Library prevails in the Court of Federal Claims, plaintiff's claims in this case may well be barred by issue preclusion because plaintiff will be unable to contest the legitimacy of the difference in pay which forms her entire claim in this Court.  See SBC Communications, Inc. v. FCC, 407 F.3d 1223 (D.C. Cir. 2005) (discussing the differences between claim and issue preclusion).  The reverse is not true with respect to the Library because issue preclusion is generally unavailable in litigation against the United States. See United States v. Mendoza, 464 U.S. 154, 160-163 (1984).  Notably, although the Complaint alleges in paragraphs 31, 36 and 41 that plaintiff suffered from "distress," plaintiff does not appear to request any relief in the form of damages to compensate for such distress.  See Complaint, Prayer for Relief.

> She [Holcomb] did, however, experience an extraordinary reduction in
> responsibilities that persisted for years, from which a reasonable jury could
> conclude Holcomb suffered "objectively tangible harm." The record includes
> uncontroverted testimony that her duties dramatically declined in both quantity
> and quality. Most tellingly, the February 2002 desk audit revealed Holcomb was
> performing tasks commensurate with a Grade 5 position-six grades below
> Holcomb's Grade 11 Program Specialist position.FDIC concedes Holcomb was
> performing work well below her grade level but counters that the reduction was
> the inadvertent result of a reorganization, was merely "temporary," and was
> remedied when management ordered a desk audit and rewrote her position to give
> her duties commensurate with her classification. FDIC fails to acknowledge,
> though, that the desk audit did not take place until February 2002-almost two
> years after Holcomb was assigned to Moran's section and found herself doing
> mostly clerical work. Additionally, it was not until August 2002-six months
> later-that personnel finally approved her new job description. We conclude
> Holcomb suffered an adverse employment action based on the precipitous
> reduction in the complexity of her work and the substantial amount of time it took
> to correct these deficiencies-even after management became aware of the
> problem. Holcomb was assigned duties not only far below her grade level but
> below the level at which she had entered federal employment ten years earlier.
> Moreover, she was mired in this professional purgatory for over two years. These
> extraordinary circumstances rise to the level of materially adverse consequences
> that inflict objectively tangible harm.

Holcomb v. Powell, No. 05-5126, 2006 WL 45853 (D.C. Cir. Jan. 10, 2006). Here, there is no

evidence that plaintiff was ever performing duties six grades below her actual grade. Plaintiff

herself describes herself as doing exactly the same kind of work but with responsibility for a

smaller budget and staff. This hardly amounts to the clerical work the D.C. Circuit found Ms.

Holcomb was required to perform in "professional purgatory." Accordingly, Holcomb does not

apply here.

    The other decisions on which plaintiff relies, Stewart v. Ashcroft, 352 F.3d 422 (D.C. Cir.

2003), and Burke v. Gould, 286 F.3d 513 (D.C. Cir. 2002), are also not applicable here and fail

to demonstrate that the supposed demotion constituted an adverse action. Stewart concerned a

non-selection decision. See Stewart, 352 F.3d at 423-24. Although Stewart recognizes that

certain decisions without negative economic consequences can constitute an adverse action, it may be easily distinguished from the facts of this case because plaintiff has not shown that there was any selection made for an open position during the 45-day window prior to her filing of her EEO complaint.  Likewise, plaintiff does not allege (and indeed it did not happen) that all of her supervisory duties were removed and that she was assigned to unspecified duties, as was the case in Burke.  See Burke, 286 F.3d at 521.  In this case, plaintiff simply returned to the same high-level job she had been occupying only without the collateral duties which had been assigned for a time.  See Mansfield Aff. ¶¶10, 14-16; Marcum Dec. ¶¶ 10, 13.  Neither Stewart nor Burke allow plaintiff to show that the alteration of her responsibilities constituted a distinct adverse action.

As an alternative to dismissal or summary judgment, defendant submits that if the Court finds that plaintiff has stated a distinct claim for disparate treatment on account of her gender under Title VII, the Court should consider principles of comity between and among the federal courts which may dictate that this Court's consideration of it should be delayed until after the Court of Federal Claims resolves its case because plaintiff filed there first.  See Save Power Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950 (5th Cir. 1997) (first-filed rule should be followed where there is "substantial overlap" of issues, and not merely identity of issues or parties); Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1006 (8th Cir. 1993) ("To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.").  The rule avoids interference among courts and recognizes the comity between them.  See Save Power, 121 F.3d at 950.

Though the first filed rule is not mechanically applied in this Circuit, see Columbia Plaza Corp. v. Security National Bank, 525 F.2d 620, 627 (D.C. Cir. 1975), the principle of comity among the federal courts and the goal of efficient judicial administration are brought squarely into play in the circumstances present here. First, there is an identity of parties in the Court of Federal Claims case and the case at bar. Second, there is a substantial overlap of issues in the two cases. The question before both courts is whether the Library paid plaintiff less than the two males to whom she compares herself. That determination, without the element of motive, is already pending before Judge Williams on the Court of Federal Claims. For this Court to weigh in on the same issue would engender the very duplication of efforts, interference with a sister court's authority, and potential for inconsistent results, that the principle of comity is designed to prevent.

**C.      The Court Should Dismiss Both Retaliation Claims**

      **1.      The Plain Language of the EPA's Anti-Retaliation Provision Does Not Cover the Alleged Protected Activity**

Plaintiff's opposition concurs in the observation in defendant's opening brief that the United States Court of Appeals for the District of Columbia Circuit has yet to address whether making an internal complaint, or even actions other than the filing of a complaint with an authority outside of the employer, constitutes protected activity for purposes of the retaliation provision of the EPA. See Pl.'s Opp. at 16 n.11; Def.'s Mem. at 14. Plaintiff cites several of the cases identified by defendant in his opening memorandum (at page 15 & n.7) from other Circuits which are obviously not binding on this Court. Plaintiff mainly urges the Court to ignore the

plain language of the statutory provision because of the supposed weight of authority on the other side and the policy arguments favoring a broad construction.  See Pl.'s Opp. at 16-19.

As to the former, the decisions tending to suggest a broad reading of the statute are only as weighty as their logic compels.  Based on the narrower language of the FLSA's anti-retaliation provision, particularly in comparison to other similar provisions, the Court should find that plaintiff's letter is not within the scope of 29 U.S.C. § 215(a)(3).  See Rodriguez v. Puerto Rico Fed. Affairs Admin., 338 F.Supp.2d 125, 130-31 (D.D.C. 2004) (denying defendant's motion to dismiss but recognizing that "the holdings of the Second and Fourth Circuits are more consistent with the FLSA's language"), rev'd on other grounds, 435 F.3d 378 (D.C. Cir. 2006).

Plaintiff's alternative argument that a broader reading serves "the remedial and humanitarian purpose[s]" should be rejected because the Supreme Court has instructed that the plain meaning of a statute is supreme and the Court should refrain from policy-making.  See Quality King Distributors, Inc. v. L'anza Research Int'l, Inc., 523 U.S. 135, 153 (1998) ("[W]hether or not we think it would be wise policy to provide statutory protection for . . . price discrimination is not a matter that is relevant to our duty to interpret the text of the Copyright Act."); Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 255 (2004) (interpretation of statutes begins and may end with their plain meaning).  Although the anti-retaliation provision uses the phrase "any complaint," 29 U.S.C. § 215(a)(3), that term is modified by other terms in the provision requiring the complaint to be filed.  Here, plaintiff's letter to the Librarian was not "filed," and plaintiff does not attempt to argue otherwise.  Plaintiff offers no meaningful response to the starkly different from the broader anti-retaliation provisions in multiple other statutes governing the workplace – notably, Title VII, the ADA, and the ADEA – which, by their terms,

protect informal "opposition" to unlawful practices under those laws.  <u>See</u> 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a); 29 U.S.C. § 623(d) (prohibiting employer retaliation because an employee has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [these statutes].").

Because the plaintiff's letter to the Librarian does not fall within the coverage of the anti-retaliation provision of the EPA, Count III of the Complaint should be dismissed.  Fed. R. Civ. P. 12(b)(6).

### 2.    Plaintiff's Own Affidavit Prevents Her From Showing Causation

To establish a *prima facie* case of retaliation under Title VII or the EPA, a plaintiff must show that:  (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. <u>Holbrook v. Reno</u>, 196 F.3d 255, 263 (D.C. Cir. 1999).[4]  To prove a causal connection, Plaintiff must show that the responsible officials had knowledge of the protected activity and that he or she took the adverse action because of the protected activity.  One way to do the latter is to show that the adverse action occurred "shortly after" the protected activity.  <u>Id.</u> (quoting <u>Mitchell v. Baldridge</u>, 759 F.2d 80, 86 (D.C. Cir. 1985)).  Critically, when a plaintiff relies on temporal proximity to prove a causal connection, the temporal proximity must be "very close."  <u>See</u> <u>Clark County School District v. Breeden</u>, 532 U.S. 268, 273 (2001).

In this case, Plaintiff's opposition affirmatively undercuts her retaliation claims by admitting that she began complaining about the disparity in pay between herself and two of her

---

[4]    <u>See</u> <u>Grey v. City of Oak Grove, Missouri</u>, 396 F.3d 1031, 1034-35 (8th Cir. 2005) (applying the *McDonnell Douglas Corp.* framework to claim of unlawful retaliation under the EPA).

male colleagues several months before the Library abolished the Assistant Director positions of all three employees. Plaintiff's affidavit demonstrates that she began complaining to her supervisor as early as October, 2004. Mansfield Aff. ¶ 7. Moreover, plaintiff's own statements reveal that this was not an isolated incident, but rather that she had multiple conversations with her supervisor between October, 2004 and March, 2005 concerning the perceived inequity in pay. Id. She also admits that the action she contends was adverse to her happened on March 31, 2005.[5] Accordingly, plaintiff cannot prevail as a matter of law because the approximately five months between when she began complaining and the supposed adverse action is too long. Clark County, 532 U.S. at 273-74 (finding that a 20-month lag suggests no causality at all and quoting with approval cases finding 4-month and 3-month gaps in time insufficient to establish causality); Saunders v. DiMario, 1998 WL 525798 at *5 (D.D.C. August 14, 1998) ("The greater the time elapsed between the protected activity and the alleged acts of retaliation, however, the more difficult it is to demonstrate any causal connection and, absent any other evidence, where

---

[5] Plaintiff's affidavit is imprecise on the timing of both her letter to the Librarian and the effective date of the abolition of the Assistant Director positions. See Mansfield Aff. ¶ 8 ("I complained directly to the Librarian of Congress in March 2005 . . ."); ¶ 9 ("Immediately following my complaint . . ."). The date of the letter, March 15, 2005, is not in dispute because plaintiff is bound by the allegations in her complaints (Complaint, ¶ 25; Complaint in Court of Federal Claims, ¶ 22), and because she failed to dispute defendant's Statement of Fact No. 4. See Atlas Corp. v. United States, 895 F.2d 745, 755 (Fed. Cir. 1990) (statements in complaint are admissions); E.C. McAfee A/C Bristol Metal Indus. of Canada Ltd. v. United States, 832 F.2d 152, 154 n.* (Fed. Cir. 1987) (statements in pleadings are judicial admissions "that render the facts contained therein indisputable"); Rhone-Poulenc Agro, S.A. v. DeKalb Genetics Corp., 272 F.3d 1335, 1353 (Fed. Cir. 2001) ("Pleadings are judicial admissions and a party may use them to render facts indisputable."); Faust v. The Travelers, 55 F.3d 471, 474 (9th Cir. 1995) (holding that facts asserted in a complaint constitute binding and indisputable judicial admissions). Similarly, the date that the Library informed plaintiff and her two colleagues that their Assistant Director positions were being eliminated was March 31, 2005. See Def.'s Statement of Facts No. 8, Complaint, ¶ 26, Court of Federal Claims Complaint, ¶ 23.

the gap is sufficiently great it is appropriate to grant judgment as a matter of law."), aff'd,194 F.3d 175 (D.C. Cir 1999).   With so much time having passed between the start of Plaintiff's protected EEO activity and the alleged retaliatory act, Plaintiff cannot establish causation.  She therefore cannot make out a *prima facie* case of retaliation.

**3.      Plaintiff Otherwise Fails to Make Out a *Prima Facie* Case of Retaliation And Cannot Demonstrate Pretext**

Plaintiff's opposition to defendant's motion relies exclusively on the temporal proximity between her complaints about her salary compared to two men and the abolition of their Assistant Director positions which resulted in all three being returned to their former positions. Defendant has shown that the time gap is significantly longer than the two weeks plaintiff asserts. Beyond that, all plaintiff offers is her own rank speculation that the Library treated two arguably similarly-situated men the same way it treated her to mask its retaliatory intent is insufficient to create any inference of a connection to her protected activity or to avoid the entry of summary judgment against her.  Brown v. Brody, 199 F.3d 446, 459 (D.C. Cir. 1990) (plaintiff's mere "speculations and allegations" are "insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions and avoid summary judgment.") (internal quotation omitted); Heasley v. D.C. General Hosp., 180 F. Supp. 2d 158, 163 (D.D.C. 2002) ("To survive summary judgment, the nonmovant must provide *evidence* that would permit a reasonable jury to find in her favor") (emphasis added) (citing Laningham v. United States Navy, 813 F.2d 1236, 1241 (D.C. Cir.1987)).[6]  Moreover, plaintiff's opposition contains no evidence

---

[6]    See Gleklen v. Democratic Congressional Campaign Committee, Inc., 199 F.3d 1365, 1369 (D.C. Cir. 2000); compare Rogers Corp. v. EPA, 275 F.3d 1096, 1103 (D.C. Cir. 2002) ("Although the finder of fact may draw inferences from the evidence, they must be reasonably probable, and based on more than speculation."); McGill v. Munoz, 203 F.3d 843, 846 (D.C. Cir.

- 13 -

tending to suggest that the Library's abolishment of the Assistant Director positions was a pretext for retaliation. As the Declaration of Deanna B. Marcum (originally filed in the plaintiff's case in the Court of Federal Claims and attached hereto as Exhibit 1) explains, she directed a realignment of Library Services and approved the assignment of collateral duties to plaintiff and others in September 2004 in an attempt "to improve workflow and mission effectiveness." Declaration of Deanna B. Marcum, ¶¶ 9-10.  Although plaintiff's supervisor (to whom plaintiff says she complained about the disparity in her salary around this same time) affirmatively recommended to Ms. Marcum that plaintiff's new position justified raising her pay grade to the Senior Level, Ms. Marcum disagreed due to budgetary considerations.  Id. ¶ 11.  After several months with the new structure, Ms. Marcum decided that the new positions had not been effective and directed that they be eliminated.  Id. ¶ 13; see April 13, 2005 Memo To Directors and Division Chiefs from Deanna Marcum (attached as Exhibit 2).[7]

---

2000) (witness's "speculation that it 'could' take an hour-and-a-half is not evidence that it 'did' take anyone--other than plaintiff--that long").  Plaintiff's citation to Jones v. Ohio Dep't of Mental Health, 687 F.Supp. 1169 (S.D. Ohio 1987), is unpersuasive because plaintiff lacks *any* evidence from which an unlawful intent could be inferred, whereas Mr. Jones presented evidence of, among other things, his satisfactory performance which contradicted the employer's barely articulated reason for firing Mr. Jones – a lack of confidence in him.  Jones, 687 F.Supp. at 1172. Based on the lack of evidence here, the Library's legitimate non-retaliatory reason is unshaken and constitutes a defense.

[7]  The Court need not reach the defendant's non-retaliatory reason because of the absence of an actionable adverse action and causation.  Defendant is providing Ms. Marcum's declaration, which was filed in the Court of Federal Claims on July 13, 2005, in the event the Court reaches the issue.  If necessary, defendant's statement of facts should be supplemented to include that defendant had a legitimate, non-retaliatory reasons for returning plaintiff to her position as the Chief of the Arts and Sciences Cataloging Division.  Although this information is being provided to this Court for the first time with defendant's reply, plaintiff has been on notice of defendant's reasons since at least July, 2005, if not since April, 2005 when plaintiff presumably received a copy of Ms. Marcum's memo in the course of her employment.

- 14 -

Having articulated a legitimate, non-retaliatory reason for the non-selection, plaintiff is "required to produce some objective evidence showing defendant's proffered reasons are mere pretext" to avoid summary judgment. <u>Batson v. Powell</u>, 912 F. Supp. 565, 578 (D.D.C. 1996), <u>aff'd</u>, 203 F.3d 51 (D.C. Cir. 1999) (emphasis added).  This she cannot do.  As the D.C. Circuit has made clear time and again, "a mere unsubstantiated allegation . . . creates no 'genuine issue of fact' and will not withstand summary judgment." <u>Harding v. Gray</u>, 9 F.3d 150, 154 (D.C. Cir. 1993).  Plus, "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" <u>Barbour v. Browner</u>, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting <u>Dale v. Chicago Tribune Co.</u>, 797 F.2d 458, 464 (7th Cir. 1986)).  To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably [unlawful] motive.'" <u>Fischbach v. District of Columbia Dep't of Corrections</u>, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting <u>Milton v. Weinberger</u>, 696 F.2d 94, 100 (D.C. Cir. 1982)).

## <u>Conclusion</u>

Based upon the foregoing, Defendant respectfully requests that his motion to dismiss or for summary judgment be granted summary and that this case be dismissed in its entirety.

Dated: February 24, 2006.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
United States Attorney

/s/_____
R. CRAIG LAWRENCE, D.C. Bar #171538
Assistant United States Attorney


/s/_____
JANE M. LYONS, D.C. Bar #451737
Assistant United States Attorney
555 4th Street, N.W. - Room E4822
Washington, D.C. 20530
(202) 514-7161