UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JUDITH A. MANSFIELD, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-1790 (RMU) |
| | : | | |
| v. | : | Document No.: | 8 |
| | : | | |
| JAMES H. BILLINGTON, | : | | |
| Librarian of Congress, | : | | |
| Library of Congress, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

The plaintiff is an employee at the Library of Congress, and she brings this suit alleging sex discrimination under Title VII, of the Civil Rights Act of 1964 ("Title VII") 42 U.S.C. §§ 2000e *et seq*. and retaliation under Title VII and the Equal Pay Act, 42 U.S.C. §§ 206 *et seq* ("EPA"). The plaintiff alleges that the defendant discriminated against her by paying her a salary less than that paid to male employees holding the same position. In addition, the plaintiff alleges that the defendant retaliated against her after she requested pay commensurate with that of her colleagues. The defendant filed this motion to dismiss,[1] arguing that the plaintiff has failed to exhaust her administrative remedies as to her discrimination claim and that the plaintiff has not stated a claim for retaliation. Because the plaintiff has exhausted her administrative

---

[1] The defendant styles his motion as a motion to dismiss or, in the alternative, for summary judgment. The court treats the defendant's motion as a motion to dismiss because the court's analysis is based only on the pleadings, FED. R. CIV. P. 12(b), and because the parties have not yet engaged in discovery, *Chappell-Johnson v. Powell*, 440 F.3d 484, 485 (D.C. Cir. 2006) (reversing the district court's grant of summary judgment because the plaintiff would be in a better position to prove a *prima facie* case after discovery had taken place).

remedies for her discrimination claim and because the plaintiff has sufficiently pled a case for retaliation under Title VII, the court denies the defendant's motion as to the plaintiff's Title VII claims. Because the plaintiff cannot establish a case for retaliation under the EPA, the court grants the defendant's motion as to that claim.

## II.   BACKGROUND

### A.   Factual History

The plaintiff has worked at the Library of Congress since 1969. Compl. ¶ 1. In the spring of 1998, the defendant promoted her to Chief of the Arts and Sciences Cataloging Division, a GS-15 position on the United States Federal Employee Pay Scale. *Id*. ¶ 9. In September 2002, the defendant gave the plaintiff a temporary 120-day promotion to Acting Director for Cataloging and moved her from the GS-15 pay level to the Senior Level pay plan, resulting in a pay raise. *Id*. ¶¶ 10-11. At the end of the 120-day period, the defendant returned the plaintiff to her previous GS-15 pay level, but the plaintiff alleges that she continued to serve as Acting Director for Cataloging. *Id*. ¶ 13. The plaintiff's male predecessor serving in that position received Senior Level pay. *Id*. ¶¶ 13-14.

In April 2003, a classification specialist determined that the plaintiff's position was substantially equal in functional responsibilities to other positions paid at the Senior Level. *Id*. ¶¶ 18-19. As a result, the Acting Associate Librarian for Library Services recommended that the defendant reclassify the plaintiff's position as a Senior Level position, but the defendant did not react. *Id*. ¶ 21.

In February 2004, the defendant once again assigned the plaintiff to a temporary Acting Director for Cataloging position with pay at the Senior Level. *Id*. ¶ 15. During this time, the

plaintiff also retained her position as Chief of the Arts and Sciences Cataloging Division. *Id*. ¶ 17. After 120 days, the defendant returned the plaintiff to her original position and GS-15 pay status. *Id*. ¶ 15. During the two periods in which the plaintiff served as Acting Director for Cataloging and received Senior Level pay, she still received less pay than her male predecessor and other male employees performing similar duties. *Id*. ¶ 16.

In August 2004, the defendant restructured its Library Services division, and appointed the plaintiff and two men to be Assistant Directors. *Id*. ¶ 22. The plaintiff claims that although the three positions "performed substantially the same job duties," the two men who held the other positions received pay at the Senior Level while the plaintiff received GS-15 level pay. *Id*. ¶ 23. Between October 2004 and March 2005, the plaintiff had several conversations with her supervisor about the pay difference and requested compensation at a level commensurate with her male counterparts. *Id*. ¶ 24. On March 15, 2005, the plaintiff hand delivered a letter to the defendant alleging that her pay violated the law and requesting compensation equal to that of her male peers. *Id*. ¶ 25. On March 31, 2005, the defendant informed the plaintiff of plans to abolish her position, along with the other two Assistant Director positions. *Id*. ¶ 26.

### B.   Procedural History

On April 14, 2005, the plaintiff filed suit under the EPA in the United States Court of Federal Claims. Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") at 4. On April 18, 2005, the plaintiff filed an administrative charge with the Library of Congress' Equal Employment Opportunity Complaints office ("EEOC"). *Id*. at 5. Shortly thereafter, the EEOC dismissed that charge, finding that the plaintiff had filed a civil action in the Court of Federal Claims raising the "same identical issues" as those raised in her administrative charge. *Id*. at 5. The plaintiff

sought reconsideration of that dismissal on the grounds that the Court of Federal Claims lacked jurisdiction for her retaliation claims, but the EEOC denied her request. *Id*.

On September 9, 2005, the plaintiff brought claims in this court for gender discrimination pursuant to Title VII and retaliation pursuant to both Title VII and the EPA. On December 15, 2005, the defendant moved to dismiss the case. The court turns to the defendant's motion.

### III.   ANALYSIS

#### A.   The Court Denies the Defendant's Motion to Dismiss the Plaintiff's Title VII Claims

The defendant moves to dismiss this case arguing that the plaintiff has failed to exhaust her administrative remedies for her Title VII discrimination claim and that she has failed to state a claim of either discrimination or retaliation. Def.'s Mot. at 1, 6-8. The plaintiff counters that she exhausted her administrative remedies and that she sufficiently states claims for relief under Title VII's discrimination and retaliation provisions. Pl.'s Opp'n at 5-6. The court agrees.

##### 1.   Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48

(internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his *prima facie* case in the complaint, *Swierkiewicz*, 534 U.S. at 511-14, or "plead law or match facts to every element of a legal theory." *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Accordingly, "the accepted rule in every type of case" is that a court should not dismiss a complaint for failure to state a claim unless the defendant can show beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Warren v. Dist. of Columbia*, 353 F.3d 36, 37 (D.C. Cir. 2004); *Kingman Park*, 348 F.3d at 1040. Thus, in resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren*, 353 F.3d at 39; *Browning*, 292 F.3d at 242.

### 2.     The Plaintiff has Exhausted Her Administrative Remedies

The defendant contends that the plaintiff failed to timely exhaust administrative remedies for her Title VII discrimination claim. Def.'s Mot. at 6-8. Because the plaintiff failed to file an EEOC charge after the defendant reduced her pay in 2002 and 2004, the defendant argues that she "may not be heard to complain about those things now." *Id.* The plaintiff, however, alleges discriminatory pay structure, and consequently, she has an opportunity to exhaust her administrative remedies after she receives each pay check. *Anderson v. Zubieta*, 180 F.3d 329,

335 (D.C. Cir. 1999). As a result, the plaintiff can still prove that she filed an administrative charge within the statutory period.

### a. Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12. (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### b. The Plaintiff Timely Filed an Administrative Charge After Receiving a Discriminatory Paycheck

The plaintiff alleges that since September 2002, she has been the immediate supervisor of a man who receives Senior Level pay, although she receives lower pay at the GS-15 level. Compl. ¶ 27.  Moreover, her position requires "at least as much (if not more) skill, effort, and responsibility as the work required of" her subordinate. *Id*. Because discriminatory paychecks are considered a continuing wrong, the plaintiff's claims are "actionable upon receipt of each paycheck." *Anderson*, 180 F.3d at 335 (citing *Bazemore v. Friday*, 478 U.S. 385, 395 (1986)).

On April 18, 2005, the plaintiff filed her administrative charge alleging discrimination. Pl.'s Opp'n at 5.  The Library of Congress requires that aggrieved employees file an administrative charge within 20 days of receiving a paycheck.  Def.'s Mot at 6 (citing LCR 2010-B.1 § 4A).  Therefore, the court may infer from the record that the plaintiff received a paycheck 20 days before April 18, 2005.  This, in turn, will fulfill Title VII's requirement that the plaintiff initiate an administrative charge within 45 days of the alleged discriminatory event. 29 C.F.R. § 1614.105(a)(1); *see Shea v. Rice*, 409 F.3d at 453.  The defendant, therefore, has not demonstrated that the plaintiff failed to exhaust her administrative remedies, *Brown*, 777 F.2d at 13, and the court cannot conclude that there is no set of facts on which she is entitled to relief. Accordingly, the court denies the defendant's motion.

### 3. The Plaintiff has Stated a Claim for Gender Discrimination Under Title VII

Having concluded that the plaintiff exhausted her administrative remedies, the court now examines the merits of the plaintiff's allegations.  The defendant asserts that the plaintiff has failed to state a claim for gender discrimination.  Def.'s Mot. at 1.  To succeed on a claim of gender discrimination under Title VII, the plaintiff must show that: "(1) she is a member of a

protected class;[2] (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Stella v. Mineta*, 284 F.3d 135, 145 (D.C. Cir. 2002) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Specifically, the defendant states that the plaintiff cannot show that she suffered an adverse action or that the defendant's actions give rise to an inference of discrimination. Def.'s Mot. at 9-11. The court cannot agree.

Because Title VII plaintiffs need not establish each element of a *prima facie* case to survive a motion to dismiss, *Runkle v. Gonzalez*, 391 F. Supp. 2d 210, 222 (D.D.C. 2005), the plaintiff need only present facts that would establish each element, *Major v. Plumbers Local Union No. 5.*, 370 F. Supp. 2d 118, 128-29 (D.D.C. 2005), *see also Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1115 (D.C. Cir. 2000) (explaining in the context of a racial employment discrimination case that a plaintiff may survive a motion to dismiss by simply stating that "I was turned down for a job because of my race"). The court, therefore, looks to the facts the plaintiff has alleged within the framework of the *prima facie* case for Title VII discrimination. *Runkle*, 391 F. Supp. 2d at 222 (citing *Rochon v. Ashcroft*, 319 F. Supp. 2d 23, 29 (D.D.C. 2004) (stating that courts may explore the plaintiff's *prima facie* case at the dismissal stage to determine "whether the plaintiff can ever meet his initial burden to establish a *prima facie* case").

### a. The Plaintiff Allegations Constitute an Adverse Action

The defendant asserts that the plaintiff's claims must fail because "[t]he only change to her pay or benefits in 2005 was an increase [and a]n increase in pay is simply not adverse."

---

[2] As a woman, the plaintiff is a member of a protected class. *McCain v. CCA of Tenn., Inc.*, 254 F. Supp. 2d 115, 121 (D.D.C. 2003).

Def.'s Mot. at 8-11 (explaining that the plaintiff received an annual cost of living adjustment received by all federal employees). To plead an adverse action, however, the plaintiff need only allege facts from which a reasonable trier of fact could conclude that she suffered objectively tangible harm. *Brown*, 199 F.3d at 456-57.

The plaintiff alleges that she received less pay than her male predecessor and two male colleagues who served in comparable positions. Compl. ¶ 16. This alleged disparity in pay constitutes an adverse action because an "employer commit[s] a separate unlawful employment practice each time he [pays] one employee less than another for a discriminatory reason." *Shea*, 402 F.3d at 452-53 (stating that discriminatory paychecks are actionable adverse employment actions under Title VII). Because the plaintiff alleges that she received less pay than male co-workers, she has sufficiently pled an adverse action.

### b.    The Plaintiff Need not Allege an Inference of Gender Discrimination

The plaintiff asserts that the defendant discriminated against her by "fail[ing] to pay [the plaintiff] salary and benefits equal to those of defendant's male employees, who have had and have jobs that are similar [to the plaintiff's job]." Compl. ¶ 30. Specifically, she alleges that the defendant paid her less than the male Assistant Directors, who received Senior Level pay, and that the defendant abolished all three positions when the plaintiff complained about her pay. *Id.* The defendant asserts that "no inference of sex discrimination . . . is possible." Def.'s Mot. at 11. Curiously, however, the defendant's argument that follows this statement centers on disputing the existence of retaliation. Other than a general refutation of the plaintiff's claim, the defendant offers no support for its position.

Furthermore, the plaintiff need not plead facts giving rise to an inference of discrimination to survive a motion to dismiss. A motion to dismiss tests the legal sufficiency of the plaintiff's pleading, and demonstrating an inference of discrimination is an evidentiary standard, not a pleading requirement. *Swierkiewicz*, 534 U.S. at 512. Therefore, the plaintiff's allegation that male employees in the same position received higher pay is sufficient to survive the defendant's motion to dismiss. *Howard Univ. v. Best*, 282 A.2d 958, 984 (D.C. Cir. 1984) (discussing Title VII's requirement that the plaintiff show that she received different wages than male employees for equal work performed under similar working conditions) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)).

### 4. The Plaintiff has Stated a Claim for Retaliation Under Title VII

The defendant challenges that the plaintiff has not alleged an adverse action or causation as required to state a claim for retaliation under Title VII. Def.'s Mot. at 8-13. The court disagrees.

#### a. The Reduction of the Plaintiff's Responsibilities Constitutes an Adverse Action

In March 2005, the defendant abolished the plaintiff's Assistant Director position, significantly reducing her duties and responsibilities. Compl. ¶ 26. Before the defendant abolished the plaintiff's position, she managed a staff of 550 employees and a budget of $40 million. Pl.'s Opp'n at 10. After losing her position, the plaintiff's supervisory authority dwindled to oversight of approximately 75 employees and a budget of $4.4 million. *Id*. That is, the number of employees she supervised decreased by approximately 86%, and the plaintiff's budget decreased by approximately 90%. Because the loss of supervisory responsibilities can constitute an adverse employment action, the court concludes that this considerable reduction in

supervisory duties is a sufficient pleading of an adverse personnel action. *Burke v. Gould*, 286 F.3d 513, 522 (D.C. Cir. 2002).

### b. The 12-Day Lapse Between the Plaintiff's Letter and the Termination of her Position is Sufficient to Allege a Causal Connection

The defendant also argues that the plaintiff cannot establish the requisite causal connection between her protected activity and any adverse action. Def.'s Reply at 11-13. To sufficiently prove a *prima facie* case of retaliation, the plaintiff must show "that a causal connection existed" between her statutorily protected activity and the adverse action taken against her. *Brown*, 199 F.3d at 452-53 (internal citations omitted). One way to prove causation is to demonstrate a close temporal proximity between the employer's knowledge of a protected activity and the adverse employment action. *Breeden*, 532 U.S. at 273.

Here, the plaintiff hand delivered a letter to the defendant claiming that she suffered from discriminatory pay and asking for a response within 10 business days. Compl. ¶ 25. On March 31, 2005, 16 days later, the defendant informed the plaintiff that it had abolished her position. *Id*. ¶ 26. Based on these facts, the defendant had direct knowledge of the plaintiff's protected activity when the plaintiff delivered her letter on March 15, 2005, and the adverse personnel action took place in sufficiently close temporal proximity to establish causation. *See Childs-Pierce v. Utility Workers Union of Am.*, 383 F. Supp. 2d 60, 76 (D.D.C. 2005) (finding that "nine weeks is sufficient to establish causation"); *Jones v. Greenspan*, 402 F. Supp. 2d 294, 301 (D.D.C. 2000) (finding that five weeks is close temporal proximity to allege causation). Taking the plaintiff's allegations as true, the court concludes that she has shown facts entitling her to relief.

### B.  The Court Grants the Defendant's Motion to Dismiss the Plaintiff's EPA Claims

To succeed on a claim for retaliation, the plaintiff must first demonstrate that she engaged in a statutorily protected activity. *Grimes v. Dist. of Columbia*, 630 F. Supp. 1065, 1070 (D.D.C. 1986) *vacated on other grounds*, 836 F.2d 647 (D.C. Cir. 1988). The defendant argues that the plaintiff's letter to her supervisor does not constitute a protected activity under the EPA.[3]  Def.'s Reply at 11-16. Conversely, the plaintiff argues that the EPA protects the filing of informal charges because the purpose of the anti-retaliation provision is to protect those who complain of discrimination. Pl.'s Opp'n at 18. The court cannot agree with the plaintiff.

The EPA protects an employee who "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . has testified or is about to testify . . . or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3). There appears to be a dispute among the federal circuit courts as to whether "any complaint" encompasses an informal complaint, such as the plaintiff's letter. The Second and Fourth Circuits endorse the defendant's interpretation and maintain that courts should narrowly construe the EPA's anti-retaliation provision. *See Ball v. Memphis Bar-B-Q Co.*, 228 F.3d 360, 363-65 (4th Cir. 2000) (holding that the FLSA's[4] language did not protect a plaintiff who told his employer that he might testify if a co-worker brought an employment discrimination lawsuit

---

[3]   The defendant does not dispute that the plaintiff's letter to her supervisors is a protected activity under Title VII. Because Title VII protects informal complaints such as letters, the plaintiff has stated a claim for retaliation under Title VII. *See Carter-Obayuwana v. Howard Univ.*, 764 A.2d 779, 790-91 (D.C. Cir. 2001).

[4]   The Equal Pay Act, 42 U.S.C. §§ 206 *et seq* ("EPA"), amends the Fair Labor Standards Act, 29 U.S.C. §§ 207 *et seq* ("FLSA"). Claims for retaliation in violation of the EPA fall under the FLSA, 29 U.S.C. § 215(a)(3).

because the Act protects the act of giving testimony, not merely voicing opposition to an employer); *Lambert v. Genesee Hosp.*, 10 F.3d 46, 55 (2d Cir. 1993) (comparing the FLSA's restrictive language to Title VII's inclusive language and concluding that voicing complaints to supervisors is not a protected activity under the FLSA).

A majority of circuits, on the other hand, have broadly interpreted the provision, finding that the EPA protects informal charges. *See e.g., Valerio v. Putnam Assoc. Inc.,* 173 F.3d 35 (1st Cir. 1999) (expressing concern that a "narrow construction of the anti-retaliation provision could create an atmosphere of intimidation," thereby defeating the FLSA's purpose in protecting employees' attempts to secure their rights, but noting that the provision does not protect "all abstract grumblings" or even all written complaints); *Brock v. Richardson,* 812 F.2d 121 (3d Cir. 1987) (stating that the FLSA's anti-retaliation provision necessarily protects informal complaints because the purpose of the Act is to "prevent employees' 'fear of economic retaliation' for voicing grievances"); *EEOC v. Romeo Cmty. Schools,* 976 F.2d 985 (6th Cir. 1992) (recognizing a protected activity in the plaintiff's assertion to her employer that it was "breaking some sort of law" by paying her lower wages than men); *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179 (8th Cir. 1975) (concluding that because the act "prohibits discrimination against an employee who asserts or threatens to assert his or her FLSA rights," an employee's termination violated the FLSA where it followed her complaint that her rights under the FLSA were being violated); *Lambert v. Ackerley,* 180 F.3d 997 (9th Cir. 1999) (stating that to "ensure that employees are not compelled to risk their jobs in order to assert their rights under the Act . . . it must protect employees who complain about violations to their employers, as well as employees who turn to the Labor Department or the courts for a remedy"); *Love v. RE/MAX of Am., Inc.* 738 F.2d 383

(10th Cir. 1984) (recognizing a protected activity where the plaintiff sent a memo to her employer requesting a raise and attached a copy of the EPA because the "Act applies to the unofficial assertion of rights through complaints at work"); *EEOC v. White & Son Enter.*, 881 F.2d 1006 (11th Cir. 1989) (concluding that the anti-retaliation provision protected an informal, verbal assertion of rights under the statute). These circuits appear to rely on the premise that courts ought not apply the EPA in a "narrow, grudging manner" because the "remedial and humanitarian" purpose of the statute deserves a liberal application. *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). The D.C. Circuit has not yet reached this issue.

When a statute is unambiguous on its face, however, courts ought to apply the clearly expressed intent of the statute's language. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984). The plain language of the EPA's retaliation provision expressly limits the scope of its application. *Ball*, 228 F.3d at 364. It discusses the filing of "any complaint" in the context of formal legal actions, such as instituting proceedings, testifying, and serving on an industry committee. 29 U.S.C. § 215(a)(3). By way of contrast, Title VII protects employees who have "*opposed any practice* made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added). The phrase "opposed any practice" is markedly more inclusive than the language of the EPA's anti-retaliation provision which protects the filing of "any complaint" in the context of specific formal actions. *See Lambert*, 10 F.3d at 55 (explaining that the FLSA, unlike Title VII, prohibits retaliation for "three expressly enumerated types of conduct") (citing *Romeo Cmty. Schs.*, 976 F.2d at 990 (Surheinrich, J., dissenting)). Although the D.C. Circuit broadly interprets remedial civil rights statutes,

especially as they relate to employment discrimination, *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 885 (D.C. Cir. 2003), this generalized purpose is insufficient to outweigh the plain language of the statute here, *Friends of the Earth v. Envtl. Prot. Agency*, 2006 U.S. App. LEXIS 10264 (April 25, 2006 at *11) (stating that "[t]he most reliable guide to congressional intent is the legislation the Congress enacted," and when Congress gives a statute plain language, courts cannot set it aside).

The court concludes that by its terms, the EPA provision does not protect the plaintiff's letter to her employer. *See Lambert*, 10 F.3d at 55. She is, consequently, unable to allege facts which entitle her to relief, and the court dismisses this claim.

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to dismiss the plaintiff's Title VII claims. The court grants the defendant's motion to dismiss the plaintiff's EPA retaliation claim. An order directing the parties in a manner consistent with this Memorandum Opinion is issued this 1st day of June, 2006.

                                    RICARDO M. URBINA
                                    United States District Judge