UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDITH A. MANSFIELD | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-1790 (RMU/JMF) |
| JAMES H. BILLINGTON, LIBRARIAN OF CONGRESS, | ) |
| Defendant. | ) |

**PLAINTIFF JUDITH A. MANSFIELD'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Comes now Plaintiff Judith A. Mansfield, by and through her attorneys, and moves this Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure for an order granting partial summary judgment in favor of Plaintiff and finding Defendant liable for retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. Because Judith Mansfield complained directly to the Librarian of Congress of sex discrimination, the Library abolished her position and returned her to a subordinate position in the Library's hierarchy. Plaintiff has established these facts based upon undisputed testimony (largely provided by Defendant's own witnesses). As a result, Plaintiff respectfully requests that the Court grant summary judgment on liability on Ms. Mansfield's Title VII retaliation claim set forth in Count II of the Complaint.

Plaintiff's motion is supported by good and substantial authority in the accompanying memorandum and in the statement of material facts for which there is no genuine issue or dispute.

        Respectfully submitted,

        WEBSTER, FREDRICKSON, HENRICHSEN,
        CORREIA & PUTH, P.L.L.C.


        */s/ Bruce A. Fredrickson*
        Bruce A. Fredrickson, #933044
        Cedar P. Carlton, #480255
        1775 K Street, NW, Suite 600
        Washington, DC 20006
        (202) 659-8510 (tel)
        (202) 659-4082 (fax)
        bfredrickson@wfhcplaw.com
        ccarlton@wfbhcplaw.com
        Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDITH A. MANSFIELD | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-1790 (RMU/JMF) |
| JAMES H. BILLINGTON, LIBRARIAN OF CONGRESS, | ) |
| Defendant. | ) |

**PLAINTIFF JUDITH A. MANSFIELD'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant abolished Ms. Mansfield's position as Assistant Director for Bibliographic Access because she complained of sex discrimination. These facts can be established through the uncontradicted testimony of Defendant's witnesses. In subjecting Ms. Mansfield to an adverse action in response to protected conduct, Defendant retaliated against Ms. Mansfield under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Therefore, Ms. Mansfield respectfully submits that the Court should enter summary judgment in her favor on her Title VII retaliation claim.

**I.   STATEMENT OF FACTS**

On March 16, 2005, Ms. Mansfield submitted a letter to the Honorable James H. Billington, the Librarian of Congress, in which she complained of sex discrimination. (*See* Exhibit ("Ex.") 1 (Letter from Judy Mansfield to James Billington (March 15, 2005).) Specifically, Ms. Mansfield complained that she had been performing the same duties as male employees of the Library, but continually been paid less, in violation of "Title VII of the Civil Rights Act of 1964" and "the Equal Pay Act of 1963." (*Id.*) Among other things, Ms. Mansfield complained that she held an Assistant

Director position along side two male Assistant Directors who were paid more.[1]  (*See id.*)  In response to Ms. Mansfield's complaint, Defendant **abolished** Ms. Mansfield's position as Assistant Director for Bibliographic Access within fifteen (15) days after she had complained to the Librarian.  (Ex. 10 (Deposition of Deanna B. Marcum, February 13, 2007) at 171, 178-80; Ex. 9 (Deposition of Judith A. Mansfield, April 17, 2007) at 209-10; Ex. 3 (Verified Complaint) ¶26.)

Specifically, Deanna Marcum, the Associate Librarian for Library Services, admitted that she eliminated Ms. Mansfield's position because she was "concerned" about Ms. Mansfield's complaint of discrimination.  (Ex. 10 at 5, 171.)  Ms. Marcum consulted with the Library's general counsel about Ms. Mansfield's letter and "concluded that the way to proceed was to eliminate" Ms. Mansfield's assistant director position along with the other assistant director positions. (Ex. 10 at 179-80.)  Ms. Marcum explained to another assistant director, Mr. Dimunation, that she was terminating the positions in response to an "objection raised by another staff member [referring to Ms. Mansfield[2]] regarding the rank of the assistant directorships. . . ." (Ex. 7 (Deposition of Mark G. Dimunation, February 9, 2007) at 67-68.)

Upon losing her Assistant Director position, Ms. Mansfield returned to her position as Division Chief of the Arts and Sciences Cataloging Division.  (Ex. 2 (Mansfield Aff.) ¶9.)  As a result, Ms. Mansfield suffered a diminution of her supervisory duties, a reduction in her budgetary responsibility, and an overall loss of influence in determining the direction of Library Services.  (Ex. 9 at 212-13.)  While Assistant Director, Ms. Mansfield supervised nine divisions and a staff of 550

---

[1]  Mark Dimunation was the Assistant Director for Special Collections and Steve Herman was the Assistant Director for Collections Management.  (Ex. 4 at JM000154.)

[2] *See* Ex. 7 at 68 (explaining that "one naturally assumed it was Judy" because the other two assistant directors were in the room).

employees, compared to supervising one division and a staff of approximately 75 as Division Chief. (Ex. 2 ¶¶12-15.) While Assistant Director, Ms. Mansfield managed a budget of over $40 million, compared to a budget of $4.4 million as Division Chief. (Ex. 2 ¶16.) Furthermore, while Assistant Director, Ms. Mansfield participated in directors meetings whereas she did not have such an opportunity to participate in the overall management of Library Services as Division Chief. (Ex. 9 at 212-13; Ex. 8 (Deposition of Steven J. Herman, January 31, 2007) at 42-46 (describing the management opportunities involved in assistant director positions).)

## II.   ARGUMENT

Ms. Mansfield should be granted summary judgment on her claim of retaliation in violation of Title VII because undisputed and direct evidence in this record indicates Defendant eliminated her position as Assistant Director for Bibliographic Access because she complained of sex discrimination.

### A.  Legal Standards on Summary Judgment

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that may affect the outcome of the action. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment may be granted, despite the presence of some factual disputes, if their resolution could not change the final result. *See Anderson*, 477 U.S. at 248. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### B. Defendant retaliated against Ms. Mansfield.

To prevail on her retaliation claim, Ms. Mansfield need only establish that she engaged in activity protected under Title VII, that her employer took an adverse employment action against her, and that the adverse action was causally related to her protected conduct. *Lee v. Winter*, 439 F.Supp.2d 82, 85 (D.D.C. 2006); *see also Cones v. Shalala*, 199 F.3d 512, 521 (D.C.Cir. 2000). Defendant does not dispute that it eliminated Ms. Mansfield's assistant director position because she complained of discrimination. As such, Defendant subjected Ms. Mansfield to an adverse action as a result of her protected activity. Therefore, Plaintiff is entitled to summary judgment on her retaliation claim under Title VII.

#### 1. Ms. Mansfield's letter of March 15, 2005 is protected activity under Title VII.

By letter dated March 15, 2005, Ms. Mansfield complained that she was paid less than male employees doing comparable work. (*See* Ex. 1.) Ms. Mansfield further complained that the Library's treatment was "unfair," "illegal" and in violation of "Title VII" and the "Equal Pay Act." (*See id*.) By complaining of gender discrimination under Title VII, Ms. Mansfield engaged in protected activity under Title VII. *See, e.g., Villines v. United Brotherhood of Carpenters and Joiners of America, AFL-CIO*, 999 F.Supp. 97, 106 (D.D.C. 1998) (complaining of discrimination constitutes protected activity under Title VII). Therefore, as a matter of law, Ms. Mansfield's March 15, 2005 letter is protected conduct.

#### 2. The Library abolished Ms. Mansfield's position because she complained.

Defendant does not dispute causation between Ms. Mansfield's complaint and the abolishment of her position. Just two weeks after Ms. Mansfield's complaint of discrimination, Ms. Mansfield learned that her position as Assistant Director for Bibliographic Access would be abolished along

with the assistant director positions of Mr. Dimunation and Mr. Herman. (Ex. 3 ¶26; Ex. 9 at 209-10).) Indeed, after meeting with counsel to discuss Ms. Mansfield's March 15, 2005 letter, the Associate Librarian for Library Services, Deanna Marcum, decided to eliminate all of the assistant director positions. (Ex. 10 at 5, 149-51, 157-61.) Undisputed facts show that Ms. Mansfield's letter prompted this drastic personnel decision.

Ms. Marcum explained to the Deputy Librarian, Donald Scott, that she abolished the positions in response to Ms. Mansfield's "letter:"

> I told him that we had received the letter from Miss Mansfield, that I had consulted with OGC, I had consulted with the directors, and had concluded that the way to proceed was to eliminate the assistant director positions.

(Ex. 10 at 7-8, 178-80.) Similarly, Ms. Marcum explained to Mr. Herman that she was eliminating the positions in response to Ms. Mansfield's discrimination complaint:

> I told him that there had been a complaint by Miss Mansfield of discrimination, and that I was concerned enough about that that I thought for now at least we would simply eliminate the assistant director positions. And that I was sorry to tell him this, but it would be effective immediately.

(Ex. 10 at 171.) Moreover, Ms. Marcum told Mr. Dimunation that she was terminating the assistant director positions in order to respond to an "objection raised by another staff member regarding the rank of the assistant directorships." (Ex. 7 at 67-68.) As Mr. Dimunation explained, "one naturally assumed it was Judy" who made the objection because the other two assistant directors were in the room. (*Id.*)

To announce the elimination of the assistant director positions, Ms. Marcum drafted a memorandum in which she said that "the positions have not worked out as intended." (Ex. 5 (Memorandum from Deanna Marcum to Directors and Division Chiefs (April 13, 2005)); Ex. 10 at

5

193-94.) Ms. Marcum explained to Mr. Scott, the Deputy Librarian, that the assistant directors had not "worked very well" because they had "received the letter from Ms. Mansfield." (Ex. 10 at 178-79.) Indeed, Ms. Marcum had expressed to Mr. Dimunation that the elimination was "unfortunate in terms of the fact that [they] had been doing good work." (Ex. 7 at 67-69.)[3]

So obvious was the causal relationship between Ms. Mansfield's discrimination complaint and the abolishment of the assistant director positions, Ms. Marcum assumed that Ms. Mansfield would see the relationship between the two events. Without even speaking to Ms. Mansfield directly, Ms. Marcum was "sure" that Ms. Mansfield would know why the positions were eliminated. Ms. Marcum "had indicated that [she] was concerned about being accused of discrimination," and, thus, "[w]hen Mr. Wiggins told [Ms. Mansfield] what the plan was," Ms. Marcum thought Ms. Mansfield "would understand exactly what that meant." (Ex. 10 at 190-92.)[4] Thus, in Ms. Marcum's view, the causal relationship between Ms. Mansfield's complaint and the abolishment of the positions was obvious.

Therefore, Defendant cannot show a genuine dispute as to the reason for the abolishment of Ms. Mansfield's assistant director position. To the contrary, undisputed facts establish that the Library abolished Ms. Mansfield's position because she complained of gender discrimination under Title VII. Accordingly, Ms. Mansfield succeeds on the causal element of her retaliation claim as a matter of law.

---

[3]To the extent that the memorandum implied any critique of the assistant directors' work, Mr. Dimunation "was infuriated" because that was "not the truth" and he had "no indication whatsoever that [his] position had not worked out as intended." (Ex. 7 at 92.) Mr. Herman, too, took issue with that language because the positions "were working successfully." (Ex. 8 at 76.) As a result, Ms. Marcum testified that the phrase may have been modified before it was sent out. (Ex. 10 at 193-94.)

[4]Ms. Marcum testified that she felt "very disturbed" that she was in effect "being accused of discrimination" and "that bothered [her] a lot." (Ex. 10 at 158.)

### 3. The abolishment of Ms. Mansfield's position constitutes an adverse action.

The elimination of Ms. Mansfield's Assistant Director for Bibliographic Access position constitutes an adverse action. As recently clarified by the Supreme Court, an employee suffers an adverse action where "a reasonable employee would have found the challenged action materially adverse" such that it "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern & Sante Fe Railway Co. v. White*, 126 S.Ct. 2405, 2415 (2006). Here, Defendant cannot dispute that taking away the very opportunity for which Ms. Mansfield sought to be properly remunerated was materially adverse and would have deterred any reasonable employee from making a complaint.

Moreover, consistent with well-established case law of this jurisdiction, this Court found that reduction of responsibility and supervisory duties may constitute an adverse action. *See Mansfield v. Billington*, 432 F.Supp.2d 64, 72 (D.D.C. 2006) (citing *Burke v. Gould,* 286 F.3d 513, 522 (D.C. Cir. 2002)); *see also Cones*, 199 F.3d at 521. Here, there is no dispute that Ms. Mansfield suffered a diminishment in her supervisory duties, budgetary responsibility, and overall influence on Library Services. In returning to the position of Division Chief, Ms. Mansfield:

- supervised 75 employees instead of a staff of over 550;
- supervised one division instead of nine divisions;
- managed a budget of $4.4 million instead of a budget of over $40 million; and
- no longer participated in the directors meetings.

(Ex. 2 ¶¶12-16; Ex. 9 at 212-13.) In addition to this significant diminishment of duties, Ms. Mansfield was returned to a lower position in the Library's own hierarchy. (*See, e.g.,* Ex. 6 (organizational chart).) Therefore, Ms. Mansfield clearly suffered an adverse action. *See Stewart v.*

7

*Ashcroft*, 352 F.3d 422, 426-27 (D.C. Cir. 2003)(denial of opportunity to advance within defendant's hierarchy constitutes adverse action); *Burke v. Gould,* 286 F.3d 513, 522 (D.C. Cir. 2002)(withdrawing an employee's supervisory duties constitutes an adverse action); *Brown v. Brody*, 199 F.3d 446, 456-57 (adverse actions include "reassignment with significantly different responsibilities").

Furthermore, the views of her counterparts, Mr. Herman and Mr. Dimunation, demonstrate that a reasonable person would view the change as an adverse action.[5] As expressed by Mr. Herman, becoming an assistant director was a "fantastic" opportunity to participate in future planning for the Library. Mr. Herman explained why he was "thrilled" to receive the appointment:

> So when [Ms. Marcum] offered me [the assistant director position] and said that this would involve coming to directors meetings and all that which I thought was kind of the place where all the action took place, the real programmatic and discussion and planning, I was thrilled.

(Ex. 8 at 41-46.) Similarly, Mr. Dimunation viewed the position as an "opportunity to do really important programmatic work at a higher level of collection development and public outreach." (Ex. 7 at 70.)

Both Mr. Herman and Mr. Dimunation were upset when they lost the position. Mr. Herman was "upset, annoyed, angry, not happy" because he was no longer able to attend the directors meetings. (Ex. 8 at 70.) Mr. Dimunation was "extremely disappointed" by the abolishment of the assistant director positions. (Ex. 7 at 70.) Indeed, Ms. Mansfield felt that she had "lost a lot" in terms of her duties and responsibilities in addition to suffering "the embarrassment and the humiliation" of

---

[5] As with Ms. Mansfield, both Mr. Herman and Mr. Dimunation were division chiefs when they became assistant directors. (Ex. 4; Ex. 6.) Mr. Herman was Chief of the Collections Access, Loan, and Management Division. (Ex. 8 at 5.) Mr. Dimunation was Chief of the Rare Book and Special Collection Division. (Ex. 7 at 5.)

being "demoted" unjustifiably. (Ex. 9 at 212-13.)

Given Ms. Mansfield's significant reduction of duties as well as the views of her counterparts, ample undisputed evidence demonstrates that a reasonable person might forgo complaining of sex discrimination in order to hold her assistant director position. As such, Defendant's abolishment of Ms. Mansfield's position is precisely the sort of materially adverse act that denies employees "'unfettered access' to Title VII's remedial mechanisms" and, thus, constitutes an adverse action under *Burlington Northern*, 126 S.Ct. at 2415. Therefore, the abolishment of the assistant director position constitutes an adverse action as a matter of law.

### III.   CONCLUSION

Defendant subjected Ms. Mansfield to an adverse action on account of her protected activity. Therefore, the Court should grant summary judgment in favor of Ms. Mansfield on her retaliation claim under Title VII. For these reasons, and any others the Court may find, Ms. Mansfield respectfully requests that the Court grant her Motion for Partial Summary Judgment on Count II of the Complaint and find that Defendant retaliated against her in violation of Title VII.

Respectfully submitted,

WEBSTER, FREDRICKSON, HENRICHSEN, CORREIA & PUTH, P.L.L.C.


   /s/   *Bruce A. Fredrickson*
Bruce A. Fredrickson  #933044
Cedar P. Carlton # 480255
1775 K Street, N.W., Suite 600
Washington, D.C.  20006
(202) 659-8510
(202) 659-4082 (fax)

Attorneys for Plaintiff Mansfield

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDITH A. MANSFIELD,  )<br> )<br>     Plaintiff,  )<br> )<br>     v.  )<br> )<br>JAMES H. BILLINGTON,  )<br>LIBRARIAN OF CONGRESS,  )<br> )<br>     Defendant.  )<br>_____) | Civil Action No. 05-1790 (RMU/JMF) |

**PLAINTIFF JUDITH A. MANSFIELD'S STATEMENT OF FACTS FOR WHICH THERE IS NO GENUINE ISSUE OR DISPUTE**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 7(h), Plaintiff respectfully submits this statement of material facts as to which there is no genuine issue or dispute.

**Ms. Mansfield complained of sex discrimination.**

1. On March 16, 2005, Ms. Mansfield submitted a letter to the Honorable James H. Billington, the Librarian of Congress, in which she complained of unfair pay on the basis of sex in violation of the "Title VII of the Civil Rights Act of 1964." (Ex. 1; Ex. 9 at 209-10.)

2. Ms. Mansfield complained that she had been performing the same duties as male employees of the Library, but continually been paid less, in violation of "Title VII of the Civil Rights Act of 1964" and the "Equal Pay Act of 1963." (Ex. 1.)

3. Ms. Mansfield specifically complained that, as Assistant Director for Bibliographic Access, the Library continued to compensate her at the GS-15 level, while there were two male Assistant Directors in Library Services who were paid at the Senior Level. (Ex. 1.)

4. The Library had appointed Ms. Mansfield to serve as Assistant Director for Bibliographic

Access in August 2004 at the same time Steve Herman was appointed to Assistant Director for Collections Management and Mark Dimunation was appointed to Assistant Director for Special Collections and Services. (Ex. 2 ¶¶4-5; Ex. 4; Ex. 6 (Carroll Memorandum announcing the appointment of three assistant directors and attached organizational chart of Library Services).)

5.      While Defendant paid Mr. Herman and Mr. Dimunation at the senior level in their assistant director positions, Defendant compensated Ms. Mansfield at a lower level, the GS-15 level, as Assistant Director for Bibliographic Access. (Ex. 2 ¶¶4-6.)

**The Library abolished Ms. Mansfield's position in response to her complaint.**

6.      Within fifteen days of Ms. Mansfield's letter complaining of discrimination, on March 31, 2005, the Library informed Ms. Mansfield that her position as Assistant Director for Bibliographic Access would be abolished, along with the other two assistant director positions. (Ex. 9 at 209-10; Ex. 3 ¶26.)

7.      The Library then returned Ms. Mansfield to her position as Chief of the Arts and Sciences Cataloging Division and removed her assistant director responsibilities. (Ex. 2 ¶9; Ex. 9 at 212-13.)

8.      After meeting with counsel to discuss Ms. Mansfield's letter to Dr. Billington, Deanna Marcum, the Associate Librarian for Library Services, "decided [she] would end all of the acting director positions and just eliminate all of them." (Ex. 10 at 5, 149-50, 156-61.)

9.      Ms. Marcum met with Mr. Herman and Mr. Dimunation, the other two assistant directors, and stated that the positions would be eliminated in response to Ms. Mansfield's complaint of discrimination. (Ex. 10 at 171-72.)

    a) Ms. Marcum explained the following to Mr. Herman: "I told him that there had been a

complaint by Miss Mansfield of discrimination, and that I was concerned enough about that that I thought for now at least we would simply eliminate the assistant director positions. And that I was sorry to tell him this, but it would be effective immediately." (Ex. 10 at 171.)

      b) Ms. Marcum acknowledged that she said "basically the same thing" to Mr. Dimunation. (Ex. 10 at 172.) As Mr. Dimunation testified, Ms. Marcum "said there had been an objection raised by another staff member regarding the rank of the assistant directorships, and that in order to respond to the situation that she was terminating all of the positions." (Ex. 7 at 67-68.) The context of the conversation made clear that Ms. Marcum was referring to an objection raised by Ms. Mansfield. (*Id.* at 68.)

10.     Ms. Marcum also explained the decision to the Deputy Librarian, Donald Scott: "I told him that we had received the letter from Miss Mansfield, that I had consulted with OGC, I had consulted with the directors, and had concluded that the way to proceed was to eliminate the assistant director positions." (Ex. 10 at 7-8, 178-79.)

11.     Ms. Marcum was "sure" that Ms. Mansfield would know why the positions were eliminated. (Ex. 10 at 191-92.) As Ms. Marcum testified, "When Mr. Wiggins told [Ms. Mansfield] what the plan was and I had indicated that I was concerned about being accused of discrimination, I didn't think we could continue, I thought she would understand exactly what that meant." (*Id.*)

**The Library removed significant responsibilities and opportunities from Ms. Mansfield.**

12.     As Assistant Director, Ms. Mansfield supervised all nine Bibliographic Access division chiefs in the Acquisitions and Bibliographic Access directorate, including the ASCD Chief. (Ex. 2 ¶¶12-13; Ex. 6 (organizational chart).)

13. As Assistant Director, Ms. Mansfield managed a budget of over $40 million and supervised a staff of 550 members. (Ex. 2 ¶¶15-16.)

14. As Assistant Director, Ms. Mansfield participated in the directors meetings. (Ex. 9 at 212-13.)

15. In Mr. Herman's words, the Assistant Director position afforded the opportunity to participate in "directors meetings and all that which [he] thought was kind of the place where all the action took place, the real programmatic and discussion and planning . . . ." (Ex. 8 at 43-46.)

16. Mr. Herman was "thrilled" to have the opportunities associated with the assistant director appointment. (Ex. 8 at 41-46.)

17. For Mr. Dimunation the assistant director position was an "opportunity to do really important programmatic work at a higher level of collection development and public outreach" and have "more influence in the directorate." (Ex. 7 at 70; Ex. 10 at 130.)

18. Both Mr. Herman and Mr. Diminution were upset by the elimination of the assistant director positions. Mr. Herman testified that he was "upset, annoyed, angry, not happy" because he was no longer able to attend the directors meetings. (Ex. 8 at 70.) Mr. Dimunation was "extremely disappointed" about the lost opportunity and remembers "just being really pissed off." (Ex. 7 at 70-72).

19. As Ms. Mansfield testified, she "lost a lot" by being "demoted." (Ex. 9 at 212-13.)

20. Upon losing her position as Assistant Director for Bibliographic Access and returning exclusively to the position of Chief of the Arts and Sciences Cataloging Division, Ms. Mansfield's duties were again limited to the Arts and Sciences Cataloging Division, only one division within the Acquisitions and Bibliographic Access directorate. (Ex. 2 ¶14.)

21. As Division Chief, Ms. Mansfield no longer attended the directors meetings. (Ex. 9 at 212-

13.)

22. As Division Chief, Ms. Mansfield managed a budget of $4.4 million. (Ex. 2 ¶16; Ex. 9 at 212-13.)

23. As Division Chief, Ms. Mansfield supervised a staff of approximately 75 employees. (Ex. 2 ¶15; Ex. 9 at 212-13.)

24. As Division Chief, Ms. Mansfield occupied a lower position within the Library's hierarchy in comparison to her position as Assistant Director for Bibliographic Access. (Ex. 6 (organizational chart).)

>Respectfully submitted,
>
>WEBSTER, FREDRICKSON, HENRICHSEN,
>CORREIA & PUTH, P.L.L.C.
>
>
>   /s/   *Bruce A. Fredrickson*
>Bruce A. Fredrickson, #933044
>Cedar P. Carlton, #480255
>1775 K Street, NW, Suite 600
>Washington, DC 20006
>(202) 659-8510 (tel)
>(202) 659-4082 (fax)
>bfredrickson@wfhcplaw.com
>ccarlton@wfbhcplaw.com
>Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDITH A. MANSFIELD )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JAMES H. BILLINGTON, )<br>LIBRARIAN OF CONGRESS, )<br>)<br>Defendant. )<br>) | Civil Action No. 05-1790 (RMU/JMF) |

**[PROPOSED] ORDER**

Upon consideration of Plaintiff Judith A. Mansfield's Motion for Partial Summary Judgment, any opposition thereto, and upon the entire record herein; it is

ORDERED that the motion shall be, and hereby is, GRANTED; and it is further

ORDERED that Judgment in favor of Plaintiff shall be entered on Count II of the Complaint and the matter shall proceed to trial for the determination of the make-whole relief to be provided to Plaintiff.

Dated: _____        _____
                                                                    Judge Ricardo M. Urbina

                                                                    United States District Court
                                                                    for the District of Columbia

Copies to:

    Bruce A. Fredrickson, Esq.
    Cedar P. Carlton, Esq.
    1775 K Street, N.W.
    Suite 600
    Washington, D.C. 20006

    Jane M. Lyons, Esq.
    Assistant United States Attorney
    555 4th Street, N.W.
    Room E4822
    Washington, D.C. 20530

**CERTIFICATE OF SERVICE**

       I hereby certify that on the ***20th*** day of September, 2007, a true and accurate copy of Plaintiff Judith A. Mansfield's Motion for Partial Summary Judgment, Memorandum in Support of Motion for Summary Judgment, and Statement of Facts for Which There is No Genuine Issue or Dispute, and Proposed Order, was filed and served electronically to:

Jane M. Lyons, Esq.
Assistant United States Attorney
555 4th Street, N.W.
Room E4822
Washington, D.C. 20530


         ***/s/   Cedar P. Carlton***
        Cedar P. Carlton, #480255
        Webster, Fredrickson, Henrichsen, Correia & Puth, P.L.L.C.
        1775 K Street, N.W., Suite 600
        Washington, D.C.  20006
        (202) 659-8510 (tel)
        (202) 659-4082 (fax)
        ccarlton@wfbhcplaw.com

        Attorney for Plaintiff