UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDITH A. MANSFIELD, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-1790 (RMU/JMF) |
| JAMES H. BILLINGTON, LIBRARIAN OF CONGRESS, | ) |
| Defendant. | ) |

**DEFENDANT'S STATEMENT OF UNDISPUTED FACTS
AND RESPONSE TO PLAINTIFF'S STATEMENT OF FACTS**

Defendant James H. Billington, Librarian of Congress, by and through his undersigned counsel, hereby submits this Statement of Undisputed Material Facts pursuant to Local Civil Rule 56.1 and Fed. R. Civ. P. 56 in support of Defendant's Motion for Summary Judgment. All exhibits and evidence of record supporting these facts are attached hereto.

In addition, Defendant's response to Plaintiff's Statement of Facts in support of her motion for partial summary judgment appears below.

**Defendant's Statement of Undisputed Material Facts**

1.  The Library employs over 4,000 full-time staff in seven major service units. Id. The majority (almost 2,500) of the Library's employees work in the Library Services unit. Id. ¶ 2, see also Marcum Depo. at 6:7-8. The head of Library Services is the Associate Librarian for Library Services. Marcum Depo. at 6:3-8. The current Associate Librarian for Library Services is Deanna Marcum. Id. Ms. Marcum was selected and appointed to her position in August of 2003. Id.

2. Plaintiff's permanent position of record has been Chief of the ASCD, GS-15. See Complaint, ¶ 9.

3. Plaintiff was promoted to pay grade GS-15 in 1998, when she applied and was selected to her current position as Chief of ASCD by the then Director for Cataloging, Beacher Wiggins. Wiggins Depo. at 116:10-22; Mansfield Depo. at 69:9-22. At the time, the Cataloging Directorate was one of seven directorates within Library Services. Marcum Depo. at 13:15-14:16.

4. When Plaintiff was selected as Chief of the ASCD in 1998, she worked under Mr. Wiggins as an Automated Operations Coordinator, pay grade GS-13, Step 10. Wiggins Decl. ¶ 6, fn.1.

5. In September 2002, then Associate Librarian for Library Services, Winston Tabb, retired. Mr. Tabb was Mr. Wiggins' direct supervisor. Id. at ¶ 4. The Library assigned Mr. Wiggins as Acting Associate Librarian for Library Services until the process for selecting Mr. Tabb's replacement was completed. Id.; see also Wiggins Depo. at 50:18-51:1.

6. Mr. Wiggins solicited volunteers to perform the duties of Acting Director for Cataloging while he performed duties of Acting Associate Librarian for Library Services. Wiggins Depo. at 52:14-54:21. From the volunteers, Mr. Wiggins assigned Plaintiff to be the Acting Director for Cataloging. Id.

7. Pursuant to Library personnel regulations, temporary promotions can last a maximum of 120 days. Wiggins Depo. at 39:10-14, 42:13-43:14; Hanratty Depo. at 51:21-52:12; Library of Congress Regulation ("LCR") 2017-2.1, § 13.

8. Accordingly, in consideration of Plaintiff performing duties as Acting Director for Cataloging, and consistent with Library regulations, Mr. Wiggins temporarily promoted Plaintiff to the Senior Level pay grade for a period of 120 days. Wiggins Depo. at 54:1-55:11.

9. Plaintiff was initially detailed to the duties of Acting Director for Cataloging for the period of September of 2002 until August 2004. Mansfield Depo. at 175:9-16; Wiggins Depo. at 74:13-16.

10. After the end of her initial 120-day appointment, Mr. Wiggins decided that he wanted Plaintiff to continue performing the duties of Acting Director, because the search for Mr. Tabb's replacement was not completed and Mr. Wiggins was still performing the duties of Acting Associate Librarian and other duties. Wiggins Depo. at 62:7-63:12; Wiggins Decl. ¶ 9.

11. Mr. Wiggins wanted Plaintiff to continue as Acting Director because he was pleased with her performance as Acting Director during her initial 120-day assignment and because he wanted the continuity of a single manager leading the Cataloging directorate during his absence. Id.

12. In February of 2004, Mr. Wiggins again promoted Plaintiff to the SL pay grade for a period of 120 days based upon her on-going performance of higher-graded duties as Acting Director. Mansfield Depo. at 171:15-174:12.

13. In June 2004, Plaintiff's second temporary promotion period ended. Id.

14. Prior to becoming Acting Associate Librarian, Mr. Wiggins had requested that Human Resources Services ("HRS") upgrade all the GS-15 Cataloging Chief positions, including Plaintiff's, under his supervision to the SL. Wiggins Depo. at 119:9-121:7. At the time, two of the Cataloging Chief's positions were classified at the SL, and six of the Cataloging Chief's

positions, including Plaintiff's, were classified at the GS-15 pay grade level.[1]  Classifier's Report; Mansfield Depo. at 115:15-20.

15.   As a result of Mr. Wiggins' request, in 2003 the Library's HRS hired a private contractor-classifier to undertake a classification review of the Cataloging Chief's positions. Mansfield Depo. at 119:7-13; Wiggins Depo. at 120:2-121:3.  Upon concluding his review, the contractor-classifier recommended that three of the GS-15 positions (including Plaintiff's position) be upgraded to the Senior Level.  Classifier's Report.  During HRS' review of Mr. Wiggins's request to upgrade the Cataloging Chief positions to the Senior Level, in August 2003, the Library selected and appointed Deanna Marcum as the new Associate Librarian for Library Services and Mr. Wiggins's term as Acting Associate Librarian for Library Services ended. Marcum Depo. at 5:20-22; Wiggins Depo. at 7:7-8:2.

16.   Shortly after Ms. Marcum's appointment in August 2003, the Director of HRS, Teresa Smith, submitted the contractor-classifier's recommendation upgrades to Ms. Marcum for review and approval.  Marcum Depo. at 75:14-16.  Upon completion of her review, Ms. Marcum declined to approve the request because she concluded that she did not want to add any additional SL positions to Library Services' management structure before she completed her

---

[1] There were eight cataloging divisions, each headed by a Chief, in Library Services.  Six of the eight Cataloging Chief positions were occupied during the time Plaintiff was Acting Director and the incumbents were:  Plaintiff (GS-15), Chief of the ASCD; John Byrum (SL), Chief of the Regional Cooperative Cataloging Division; Barbara Tillett (SL), Chief of the Cataloging Policy and Support Office; Susan Vita (SL), Ms. Vita's position of record was Whole Book Implementation Leader, but she encumbered the position of Chief of the Special Materials Cataloging Division at the time; Jeffrey Heynen (GS-15), Chief of the History and Literature Cataloging Division, and John Celli (GS-15), Chief of the Cataloging in Publication Division.  Mansfield Depo. at 98:18-99:5. The two GS-15 positions of Chief of the Decimal Classification Division and Chief of the Social Sciences Classification Division were vacant during this period.  Prior to Plaintiff's assignment as Acting Director however, these two positions had been occupied by a male and a female, respectively.  Mansfield Depo. at 98:18-99:5; 113:1-9; 126:3-7.

planned realignment of Library Services, and she did not believe that Library Services' budget could support the addition of any new SL positions. Id; see also Marcum Decl. ¶ 8.

17. Ms. Marcum, therefore, did not approve any of the recommended upgrades to SL for the three Cataloging Chiefs. Marcum Depo. at 72:5-16; 76:3-15.

18. In September of 2004, Ms. Marcum decided to implement her planned realignment of Library Services. Marcum Depo. at 18:3-6. As part of her realignment, Ms. Marcum decided to create five directorates that would oversee the operations of Library Services. Marcum Depo. at 16-19. Mr. Wiggins and Carolyn Brown (another SL manager in Library Services) were assigned as Directors of the two largest newly created directorates, Acquisitions and Bibliographic Access ("ABA") and Collections Services ("CS"), respectively. Marcum Depo. at 45:16-46:2; Wiggins Depo. at 75:19-81:18.

19. At their request, Ms. Marcum gave Mr. Wiggins and Ms. Brown permission to temporarily create and to assign collateral duties to employees within their directorates who were willing to volunteer to assist the Directors in the performance of their duties. Marcum Depo. at 119:22-120:17; Wiggins Depo. at 87:12-88:2.

20. Based upon Plaintiff's past performance and her expressed interest in voluntarily performing collateral duties, Mr. Wiggins recommended to Ms. Marcum that Plaintiff be assigned additional duties as Assistant Director for Bibliographic Access. Ms. Marcum, therefore, assigned the Assistant Director for Bibliographic Access duties to Plaintiff. Wiggins Depo. at 87:18-88:2.

21. Ms. Brown recommended Steve Herman (Chief of the Collections Access, Loan and Management Division) and Mark Dimunation (Chief of the Rare Book and Special

Collections Division) for assignment to the collateral duties as Assistant Director of Collections Management and Assistant Director of Special Collections and Services, respectively. Marcum Depo. at 120:11-17. Based upon their subject-matter knowledge, interest in performing the additional duties, and the recommendation of Ms. Brown, Ms. Marcum approved Mr. Herman's and Mr. Dimunation's assignments to the Assistant Director collateral duties under the supervision of Ms. Brown. Marcum Depo. at 121:21-124:13, 128:16-129:18.

22. When assigned their collateral duties, Mr. Herman and Mr. Dimunation already held permanent SL positions. Dimunation Depo. at 88:9-10; Herman Depo. at 7:15-20; Wiggins Depo. at 96:2-15.

23. When assigned her collateral duties, Plaintiff at all times relevant to this action, except during the two 120-day details to the Senior Level, held a GS-15 position. Complaint, ¶¶ 11, 13, 15.

24. Mr. Wiggins continued his effort to make the collateral duties permanent and renewed his effort to have Plaintiff appointed to a SL position. Wiggins Depo. at 92:18-95:9. As part of his effort, in January 2005, Mr. Wiggins encouraged and assisted in the preparation of a position description for the Assistant Director duties and he presented the position description to Ms. Marcum for review. Id. at 94:21-95:19, 105:10-20, 110:18-11:22, 177:5-178:4.

25. Ms. Marcum, however, was adamant that the Assistant Director duties were strictly collateral duties and that she did not want to create any new SL positions because of budgetary constraints and the ongoing realignment of Library Services. Marcum Depo. at 133:21-134:2, 144:3-19, 146:21-147:1.

26. In a letter dated March 15, 2005, Plaintiff delivered a letter to the Librarian of Congress and to the Associate General Counsel of the Library's Office of General Counsel, complaining about her compensation at the GS-15 pay grade while performing collateral duties as Assistant Director that were similar to the Assistant Director collateral duties being performed by male colleagues who were paid at the SL pay grade (of their permanent positions). Complaint ¶ 25; March 15, 2005, letter.

27. Shortly after receipt of the letter to the Librarian, the Associate General Counsel, Jessie James, met with Ms. Marcum and informed her of Plaintiff's letter. James Decl.¶ 5; Marcum Depo. at 149:21-150:6. During his meeting with Ms. Marcum, Mr. James presented three options available to Ms. Marcum to cure Plaintiff's complaint: (1) return Plaintiff exclusively to the duties of her permanent position as Chief of the ASCD and allow Mr. Herman and Mr. Dimunation to continue performing collateral duties as Assistant Directors; (2) create a permanent position for Plaintiff at the SL pay grade; or (3) end the Assistant Director collateral duties for Plaintiff, Mr. Herman, and Mr. Dimunation. James Decl.¶ 6; Marcum Depo. 157:22-158:22.

28. After consulting further with her senior staff, Ms. Marcum decided that the most equitable option was to end the collateral duty assignments for all three Assistant Directors. Marcum Depo. at 160:19-161:15; 178:22-183:14.

29. Plaintiff first complained about alleged sex discrimination in a letter she delivered to the Librarian of Congress on March 15, 2005. See Complaint, ¶ 25.

30. Plaintiff submitted a formal complaint to the Library's Equal Employment and Opportunity Complaints Office ("EEOCO") on April 18, 2005. See Complaint , ¶ 4.

31. Plaintiff filed her complaint in this Court on September 9, 2005. See Docket Entry No. 1.

**Defendant's Response to Plaintiff's Statement of Facts ("PSF")**

1. Defendant does not dispute that on March 16, 2005, Ms. Mansfield submitted a letter to the Honorable James Billington, the Librarian of Congress, in which she complained of unfair pay on the basis of sex in violation of the "Title VII of the Civil Rights of 1964."

2. Defendant does not dispute that in her letter to the Librarian, Ms. Mansfield complained that she had been performing the same duties as male employees of the Library but, continually paid less in violation of "Title VII of the Civil Rights Act of 1964" and the "Equal Pay Act of 1963."

3. Defendant does not dispute that Ms. Mansfield specifically complained in her letter to the Librarian that as Assistant Director for Bibliographic Access the Library continued to compensate her at the GS-15 level while there were two male Assistant Directors in Library Services who were paid at the Senior Level. The text of the letter [Exhibit 12] speaks for itself.

4. Defendant does not dispute that the Library appointed Ms. Mansfield to serve as Assistant Director for Bibliographic Access in August 2004 at the same time Steve Herman was appointed as Assistant Director for Collections Management and Mark Dimunation was appointed to Assistant Director for Special Collections and Services. However, Defendant notes that the record demonstrates that at all times relevant to this action, Ms. Mansfield's permanent position of record was Chief of the Arts and Sciences Cataloging Division, Steve Herman's permanent position of record was Chief of Chief of the Collections Access, Loan and Management Division and Mark Dimunation's was Chief of Chief of the Rare Book and Special

Collections Division.  See Herman SF-50; Dimunation SF-50.  The record further demonstrates that the Plaintiff concedes that her Assistant Director duties were collateral duties.  See Exhibit 12 [March 15, 05 Letter from Ms. Mansfield to Librarian]; Mansfield Depo. at 181-82.

    5.  Defendant disputes that "while Defendant paid Mr. Herman and Mr. Dimunation at the Senior Level in their Assistant Director positions, Defendant compensated Ms. Mansfield at a lower level, the GS-15 level, as Assistant Director for Bibliographic Access."  The record demonstrates that at all times relevant to this action, Mr. Herman was paid at the Senior Level pay grade because his permanent position as Chief of the Collections Access, Loan and Management Division was classified at the Senior Level pay grade.  See Herman SF-50.  Similarly, the record demonstrates that at all times relevant to this action, Mr. Dimunation was paid at the Senior Level because his permanent position as Chief of the Rare Book and Special Collections Division was classified at the Senior Level pay grade.  See Dimunation SF-50.  Accordingly, Ms. Mansfield is not similarly situated to Mr. Herman or Mr. Dimunation.

    6.  Defendant does not dispute that, "[w]ithin 15 days of Ms. Mansfield's letter complaining of discrimination, on March 31, 2005, the Librarian informed Ms. Mansfield that her position as Assistant Director for Bibliographic Access would be abolished, along with the other two Assistant Director positions."

    7.  Defendant disputes that "the Library then returned Ms. Mansfield to her position as Chief of the Arts and Sciences Cataloging Division." The record demonstrates that at all times relevant to this action, Ms. Mansfield was Chief of the Arts and Sciences Cataloging Division. Defendant does not dispute that on March 31, 2005, the Library removed Ms. Mansfield's Assistant Director responsibilities.

8. Defendant does not dispute that after meeting with counsel to discuss Ms. Mansfield's letter to Dr. Billington, Deanna Marcum, the Associate Librarian for Library Services, "decided she would end all of the Acting Director positions and just eliminate all of them."

9. Defendant does not dispute that, "Ms. Marcum met with Mr. Herman and Mr. Dimunation, the other two assistant directors, and stated that the [Assistant Director] positions would be eliminated as a result of Ms. Mansfield's complaint of discrimination."

10. Defendant does not dispute that Ms. Marcum also explained the decision to the Deputy Librarian, Donald Scott: "I told him that we had received the letter from Ms. Mansfield, that I had consulted with OGC, I had consulted with the directors, and had concluded that the way to proceed was to eliminate the Assistant Director positions."

11. Defendant does not dispute that Ms. Marcum was "sure" that Ms. Mansfield would know why the positions were eliminated. Further, Defendant does not dispute that Ms. Marcum testified that "when Mr. Wiggins told Ms. Mansfield what the plan was and I had indicated that I was concerned about being accused of discrimination I didn't think we could continue, I thought she would understand exactly what that meant."

12. Defendant does not dispute that as Assistant Director, Ms. Mansfield supervised all nine Bibliographic Access Division Chiefs in the Acquisitions and Bibliographic Access Directorate, including the ASCD Chief.

13. Defendant does not dispute that as Assistant Director Ms. Mansfield managed a budget of over $40 million and supervised a staff of 550 members.

14. Defendant does not dispute that as Assistant Director Ms. Mansfield participated in the Directors' meetings.

15. Defendant does not dispute that, in Mr. Herman's words, the Assistant Director position afforded the opportunity to participate in "Directors' meetings and all that which he thought was kind of the place where all the action took place the real programmatic discussion and planning…".

16. Defendant does not dispute that Mr. Herman was "thrilled" to have the opportunities associated with the Assistant Director appointment.

17. Defendant does not dispute that for Mr. Dimunation the Assistant Director position was an "opportunity to do really important programmatic work at a higher level of collection development and public outreach" and have "more influence in the directorate."

18. Defendant does not dispute that both Mr. Herman and Mr. Dimunation were upset by the elimination of the Assistant Director positions. Defendant does not dispute that Mr. Dimunation testified that he was "upset, annoyed, not happy" because he was no longer able to attend the Directors' meetings. Defendant does not dispute that Mr. Dimunation was "extremely disappointed" about the lost opportunity and remembers "just being really pissed off."

19. Defendant does not dispute that Ms. Mansfield testified that she "lost a lot" by being "demoted," but contends that this testimony amounts to Plaintiff's subjective belief and characterization.

20. Defendant does not dispute that upon "losing" her "position" as Assistant Director for Bibliographic Access and returning exclusively to the position of Chief of the Arts and Sciences Cataloging Division, Ms. Mansield's duties were again limited to the Arts and Sciences Cataloging division, only one division within the Acquisitions and Bibliographic Access directorate.

21. Defendant does not dispute that as Division chief, Ms. Mansfield no longer attended the Directors' meetings.

22. Defendant does not dispute that as Division Chief, Ms. Mansfield managed a budget of $4.4 million.

23. Defendant does not dispute that as Division Chief, Ms. Mansfield supervised a staff of approximately 75 employees.

24. Defendant does not dispute that as Division Chief, Ms. Mansfield occupied a lower position within the Library's hierarchy as compared to her position as Assistant Director for Bibliographic Access.

Dated: November 1, 2007.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

/s/
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

/s/
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W - Room E4822.
Washington, D.C.  20530
(202) 514-7161
(202) 514-8780 (facsimile)

Of Counsel:
Julia Douds, Assistant General Counsel
Evelio Rubliella, Assistant General Counsel
Office of General Counsel, Library of Congress