# MARCUM DECLARATION

## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JUDITH A. MANSFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-472C |
| ) | Judge Mary Ellen Coster Williams |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

### Declaration of Deanna B. Marcum

I, Deanna B. Marcum, make the following declaration pursuant to the authority of 28 U.S.C. §1746. I am aware that this declaration may be filed in the United States Court of Federal Claims and that a declaration is the legal equivalent of a statement under oath:

1. I am currently the Associate Librarian for Library Services at the Library of Congress. As Associate Librarian, I oversee the operations of Library Services, the largest service unit at the Library of Congress. The Library of Congress employs over 4,000 full-time permanent staff in seven major service units and is the nation's oldest federal cultural institution. The Library serves as the research arm of Congress and is also the largest library in the world, with more than 130 million items on approximately 530 miles of bookshelves. The collections include more than 29 million books and other printed materials, 2.7 million recordings, 12 million photographs, 4.8 million maps, and 58 million manuscripts. The Library's mission is to make its resources available and useful to the Congress and the American people and to sustain and preserve a universal collection of knowledge and creativity for future generations.

2. In my capacity as Associate Librarian, I manage 53 divisions and offices comprised of nearly 2,500 employees. Library Services employees are responsible for acquisitions, cataloging, public service, preservation activities, services to the blind and physically challenged, and network and bibliographic standards. I am also responsible for budget oversight for all divisions within Library Services and with integrating the emerging digital resources into the traditional artifactual library with the goal of building a national digital library for the 21st century.

3. I am currently a Senior Level (SL) employee of the Library, a pay scale that is equivalent to the Senior Executive Service (SES) pay scale in the Executive Branch of the Federal Government.

4. I was selected and appointed to my current position in August of 2003. From January of 1995 to August of 2003, I was the President of the Council on Library and Information Resources (CLIR), a non-profit library association in Washington, D.C. Before joining CLIR, I was the Director of the Public Service and Collections Management directorate in Library Services, an SL position, from January 4, 1993 to December 30, 1994. From 1989 to 1993, I was Dean of the School of Library and Information Science at The Catholic University of America. From 1980 to 1989 I was first a program officer and then vice-president of the Council on Library Resources. I hold a Bachelor's Degree in English (University of Illinois, 1968), a Master's Degree in Library Science (University of Kentucky, 1970), and a Ph.D in American Studies (University of Maryland, 1991).

5. Shortly after my appointment as Associate Librarian for Library Services in August of 2003, I became aware that Ms. Mansfield, a GS-15 employee and the Chief of the Arts and Sciences Cataloging Directorate (ASCD), was performing the duties of Acting Director of

Cataloging. I was also aware that her supervisor, Beacher Wiggins, the Director of Cataloging, had temporarily promoted her for 120 days to the SL pay grade based on her performing the higher-graded duties of Acting Director. In February of 2004, Ms. Mansfield was once again promoted to the SL pay scale for 120 days. On June 9, 2004, at the end of Ms. Mansfield's 120-day temporary promotion, she returned exclusively to her duties as Chief of ASCD.

6. Temporary promotions, like Ms. Mansfield's, at the Library are customary for any detail of a manager or staff member to a higher-graded position. An employee temporarily promoted to SL at the Library has his or her rate of pay adjusted by the Library's Human Resources Services (HRS) based on the employee's permanent GS-15 pay grade. Additionally, under Library of Congress regulation, a staff member may only be temporarily promoted to SL for up to 120 days during any twelve-month period. Exceptions to this rule are granted only when there is a vacant position for which the Library is seeking a permanent employee and which will be filled through a competitive selection process. Therefore, since the position of Director of Cataloging was not vacant and the Library was not seeking applications for the position, Ms. Mansfield did not meet the criteria for extension of her temporary promotions beyond the 120-day limit.

7. Upon my appointment as Associate Librarian for Library Services in August of 2003, the Director of HRS, Teresa Smith, submitted to me for consideration three positions in Library Services that a private contractor-classifier had recommended for upgrade to SL. The three positions recommended for upgrade were Chief of the Arts and Sciences Cataloging Division (ASCD), Chief of the History and Literature Cataloging Division (HLCD), and Chief of the Social Sciences Cataloging Division (SSCD). At the time, Ms. Mansfield was Chief of the

3

ASCD, Jeffrey Heynen was the Chief of the HLCD, and the position of Chief of the SSCD was vacant.

8. I considered these recommendations and concluded that Library Services' budget could not support the additional SL positions and that upgrades were not advisable in light of my impending goal of restructuring Library Services. Therefore, I did not approve the recommend upgrades. As a result, HRS never reclassified nor upgraded the three Cataloging Chiefs' positions. My decision to not upgrade any of these positions was in no way based on Ms. Mansfield's gender.

9. In September of 2004, I decided to realign Library Services in order to improve workflow and mission effectiveness. The realignment produced five new directorates, two of which were substantial in size. The Directors of the two larger directorates, Acquisitions and Bibliographic Access (ABA) and Collections Services, were Mr. Wiggins and Carolyn Brown (also a SL), respectively. I granted permission to Mr. Wiggins and Ms. Brown to assign collateral duties to individuals within their respective directorates who were willing to assist the Directors. As part of the realignment, Mr. Wiggins and Ms. Brown chose themselves to fulfill additional (collateral) duties as Assistant Director for Acquisitions and as Assistant Director for General Collections and Services, respectively.

10. Based on the recommendation of Mr. Wiggins and Ms. Mansfield's expressed interest, I assigned Ms. Mansfield to perform collateral duties as Assistant Director for Bibliographic Access. Steve Herman, Chief of the Collections Access, Loan, and Management Division and Mark Dimunation, Chief of the Rare Book and Special Collections Division, were assigned collateral duties as Assistant Director for Collections Management and Assistant

4

Director for Special Collections and Services, respectively, under Ms. Brown's supervision. Mr. Herman has extensive knowledge of collections management and security and Mr. Dimunation is very knowledgeable in all aspects of special collections. Both Mr. Herman and Mr. Dimunation, like Ms. Mansfield, expressed interest in performing the Assistant Director collateral duties and were recommended by their supervisor, Ms. Brown, to assist her. When assigned their collateral duties as Assistant Directors, both Mr. Herman and Mr. Dimunation were SL and had been SL for several years.

11. Shortly after assigning the above collateral duties to Ms. Mansfield, Mr. Wiggins presented to me a draft permanent position description, at the SL pay grade, for the Assistant Director collateral duties to which he had assigned Ms. Mansfield. However, I was not in agreement with Mr. Wiggins that the collateral duties assigned to Ms. Mansfield should be a basis for creating a permanent SL position for her as Assistant Director of Bibliographic Access. Rather, as I had earlier emphasized to Library Services staff and as I explained to Mr. Wiggins again at the time, none of the Assistant Director assignments were meant to be permanent positions, but a practical method of managing these very large directorates during the realignment of Library Services. Moreover, the Library Services budget did not allow for the creation of any new permanent SL positions at the time.

12. Even had I been able to accept Mr. Wiggins' proposal to create a new permanent position of Assistant Director for Bibliographic Access, the Library's Merit Selection procedures would have mandated that the position be posted and that Ms. Mansfield compete for the position. Hence, Ms. Mansfield could not have simply been reassigned from her permanent GS-15 position to a permanent SL Assistant Director position without competing against other

qualified applicants who might have applied for the job. Nevertheless, my decision to not create a permanent Assistant Director position at the SL pay grade for Ms. Mansfield was in no way based on Ms. Mansfield's gender. Also, Ms Mansfield's pay at the time she was assigned the collateral duties was in no way based on her gender, but on the rate of pay for her permanent GS-15 position.

13. In April of 2005, the assignment of collateral duties to Ms. Mansfield, Mr. Herman, and Mr. Dimunation ceased and they each returned to exclusively performing the duties of their permanent positions.

I swear under penalty of perjury that the foregoing is a true and accurate statement.

*Deanna B. Marcum*
Deanna B. Marcum