# HANRATTY DECLARATION

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JUDITH A. MANSFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-472C |
| ) | Judge Mary Ellen Coster Williams |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

### Declaration of Dennis Hanratty

I, Dennis M. Hanratty, make the following declaration pursuant to the authority of 28 U.S.C. §1746. I am aware that this declaration may be filed in the United States Court of Federal Claims and that a declaration is the legal equivalent of a statement under oath.

1. I am currently the Director, Strategic Planning and Automation, in the Library of Congress' Human Resources Services (HRS). I have worked at the Library since April 18, 1983 and in HRS since September 19, 1993. My current pay grade is GS-15, Step 8. I hold Bachelor's, Master's, and Doctoral degrees in Political Science.

2. My duties in HRS involve administering the Senior Level (SL) pay system, managing the Human Resources Information System and related automation initiatives, and managing special projects on behalf of the Director of HRS.

3. Because of my involvement and experience in personnel issues over many years, especially those issues that involve SL employees at the Library, I have acquired extensive knowledge about HRS policies, procedures and regulations as they apply to Ms. Mansfield's temporary promotion and rate of compensation during the time that she was assigned to duties as Acting Director of Cataloging from 2002-2004. I was also involved

15

in the HRS process of implementing Ms. Mansfield's two temporary promotions to SL since this is part of my regular duties in HRS.

4. There are four pay "bands" in the Senior Level pay system at the Library of Congress: SL-1, SL-2, SL-3, and SL-4. These rates are linked to the federal government's General Schedule as follows: an SL-1's rate of pay is equivalent to 120% of the GS-15, Step 1 rate of pay; An SL-2's rate of pay is equivalent to 128.51% of the GS-15, Step 1 rate of pay; An SL-3's rate of pay is equivalent to 139.51% of the GS-15, Step 1 rate of pay; and an SL-4's rate of pay is equivalent to 162.44% of the GS-15, Step 1 rate of pay. Irrespective of these rates, by statute pay may not exceed Executive Schedule Level III, which in calendar year 2005 is $149,200. The rates cited are only used to set pay for initial appointments to SL positions; subsequent increases are determined by performance. As a result, a position vacated by an employee earning the calendar year 2005 statutory maximum of $149,200 could be filled by an appointee at the SL-1, SL-2, or SL-3 rates.

5. Under Library regulations, temporary promotions from GS-15 to SL are limited to 120 days unless a permanent candidate is being sought to the vacant position through a competitive announcement, in which case the temporary promotion may not exceed 270 days. In Ms. Mansfield's case, since she was merely in the position of Acting Director while her supervisor and the incumbent Director of Cataloging, Beacher Wiggins, was performing duties as Acting Associate Librarian for Library Services, each of her temporary promotions could not be extended beyond the 120-day limit.

6. With respect to Ms. Mansfield's rate of pay during the two periods when she was temporarily promoted to SL, HRS was responsible for recommending her rate of pay during both of her temporary promotions to SL. In Ms. Mansfield's case, and consistent with other similar Library temporary promotions to the SL, I based my recommendation by examining her rate of pay in her permanent position and then comparing that rate to the SL initial appointment pay scale mentioned above.

7. In Ms. Mansfield's case, at the time of her first temporary promotion in September of 2002, she was a GS-15, Step 5. Taking this fact into consideration, I recommended that she be paid at the SL-1 level, considering that this constituted a 5.9 percent increase in pay over her GS-15 salary at the time. This is a reasonable percentage of pay increase for anyone at the Library of Congress who is being temporarily promoted to SL. Ms. Mansfield's gender was not a factor in the determination of the amount of compensation she would receive during the period of her temporary promotion. Moreover, I recommended the rate of pay she would be receiving during the period of her temporary promotion independently and without input from any of her supervisors or other Library officials or employees. Following standard Library practice, I forwarded my recommendation--as to the rate of pay that Ms. Mansfield should receive during her temporary promotion---to the Director of HRS for concurrence and then the Deputy Librarian of Congress for approval. Shortly thereafter, the Deputy Librarian concurred with my recommendation and Ms. Mansfield's temporary promotion to SL and rate of pay were effectuated.

8. Consistent with Library regulations limiting temporary promotions to SL to 120 days where a permanent candidate is not being sought to the vacant position through a competitive announcement, Ms. Mansfield's temporary promotion to SL ended on January 20, 2003.

9. In January of 2004, Mr. Wiggins again recommended that Ms. Mansfield be temporarily promoted to SL. By this time, Ms. Mansfield had attained pay grade GS-15, Step 7. Taking this fact into consideration, I recommended that she be paid at the SL-2 level, considering that adjustment of her pay to SL-1 would result in no increase in her basic pay. Temporary promotion to SL-2 would instead result in a 7 percent increase in basic pay for Ms. Mansfield based on her GS-15 salary at the time. This is a reasonable percentage of pay increase for anyone at the Library of Congress who is being temporarily promoted to SL. Ms. Mansfield's gender was not a factor in the determination of the amount of compensation she would receive during the period of her temporary promotion. Moreover, I made the determination of the rate of pay she would be receiving during the period of her temporary promotion independently and without input from any of her supervisors or other Library officials or employees. Following standard Library practice, I forwarded my recommendation—as to the rate of pay that Ms. Mansfield should receive during her temporary promotion—to the Director of HRS for concurrence and then to the Deputy Librarian of Congress for approval. Shortly thereafter, the Deputy Librarian concurred with my recommendation and Ms. Mansfield's temporary promotion to SL and rate of pay were effectuated.

10. Consistent with Library regulations limiting the length of temporary promotions to 120 days where a permanent candidate is not being sought to the vacant position through a competitive announcement, Ms. Mansfield's temporary promotion to SL ended on June 9, 2004.

I swear under penalty of perjury that the foregoing is a true and accurate statement.

*[signature]*
Dennis M. Hanratty