# Exhibit 10

# Expert Report
# Stephen H. Perloff

*Mansfield v. Billington*, Civil Action No. 05-1790 (RMU/JMF)

Stephen H. Perloff
Personnel Management Consultants, Inc.
11701 Silent Valley Lane
Gaithersburg, Md 20878
301-762-5442
FAX: 301-762-3895
E-mail: pmcinc1@comcast.net

March 15, 2007

Bruce A. Fredrickson, Esq.
Webster, Fredrickson, and Brackshaw
1775 K Street, N.W.
Suite 600
Washington, D.C. 20006

Dear Mr. Fredrickson:

This letter responds to your request that I review materials related to Mansfield v. The United States, and provide to you my opinion as to whether the positions held by Ms. Mansfield merited classification to the Library of Congress (LOC) SL level, and whether Ms. Mansfield's positions required the same level of skill, effort, and responsibility as those held by certain of her male colleagues.

Specifically, you asked that I provide my opinion on the appropriate pay grade for Ms. Mansfield's position of record, Chief of the Arts and Sciences Cataloging Division, and the appropriate pay grade for Ms. Mansfield while she was performing as Acting Director for Cataloging and while she occupied the position of Assistant Director for Bibliographic Access. In addition, you asked that I compare Ms. Mansfield's position of record with the positions occupied by John Byrum, Steven Herman, and Mark Dimunation. Finally, you asked that I comment on the assignment of Ms. Mansfield to the position of Assistant Director for Bibliographic Access.

SUMMARY OF MY CONCLUSIONS

Based on my review of the materials you provided --

• I believe that Ms. Mansfield's position of record, Chief of the Arts and Sciences Cataloging Division, should have been designated as a SL position, and made equal to the other comparable Division Chief positions, as originally proposed by her supervisor, Mr. Beacher Wiggins. This conclusion is based on my analysis of Ms. Mansfield's position description, a comparison to the LOC requirements for designation as a SL position, and the intensive review of the GS-15 positions carried out by Mr. Donald Krigbaum, the classifier retained by the LOC to examine Ms. Mansfield's position, along with the other Division Chiefs. The LOC's refusal to designate initially this position as SL

-2-

caused Ms. Mansfield to suffer further pay inequity when later assigned to act as the Director for Cataloging and when assigned duties as the Assistant Director for Bibliographic Access.

• It is obvious from the deposition of Mr. Beacher Wiggins, that he believes that Ms. Mansfield carried out the full responsibilities of the Director for Cataloging position, an SL position, for the full period of time while she was acting in that position. In spite of her noteworthy performance, the LOC did not appropriately compensate Ms. Mansfield at the SL level for the entire time she served as the Acting Director for Cataloging. While the LOC 120 day limit for details had some operational validity in encouraging the timely filling of vacant positions, in this instance that provision served only to withhold from Ms. Mansfield the SL level pay to which she was entitled, and enabled the LOC to fill an SL position with a person paid at GS-15.

• Based on my review of the materials provided to me, I believe that the work of Ms. Mansfield, serving as the Chief of the Arts and Sciences Cataloging Division, and compensated at the GS-15 level, was at least equivalent in skill, effort, and responsibility to the work performed by John Byrum, Steven Herman, and Mark Dimunation, all of whom were paid at the LOC SL level. Significantly, Mr. Herman and Mr. Dimunation also were Division Chiefs, comparable to Ms. Mansfield in duties, skills, and responsibilities, while Ms. Mansfield supervised Mr. Byrum. Generally speaking, the grade of a supervisor is at least one grade higher that the grade of subordinates. Assuming that the SL designation for Mr. Byrum's position is correct, then this unusual grade relationship is an additional indication that the GS-15 determination for Ms. Mansfield's position is not appropriate.

ANALYSIS

Ms. Mansfield is a long time employee at the LOC, who is the Chief of the Arts and Sciences Cataloging Division. In that position, she supervises approximately 70 positions and is responsible for a budget of about 4 to 4.5 million dollars. Her performance over the years has not been criticized and, in fact, the LOC and her supervisor have rated her performance as well above average and often as outstanding.

Findings related to the Chief of the Arts and Sciences Cataloging Division position

In coming to my conclusions, some facts are well established; Ms. Mansfield's position of record was the Chief of the Arts and Sciences Cataloging Division, paid at the GS-15 level. At the LOC there are other Division Chiefs who are paid at the SL level. Although a matter of some dispute, I believe the duties, skill, responsibilities, and difficulty of work of those Division Chief positions are at the same level as Ms. Mansfield's.

LOC SL Requirements

LCR 2017-2.1 states that to be designated SL, a position must minimally exceed the classification standards governing GS-15 of the General Schedule. Also, the position

-3-

must be such that its incumbent is responsible for one of the following:

1. Directing the work of an organizational unit includes responsibility for:
Assessing policy, program, and project feasibility
Determining program goals
Designing an organizational structure to promote effective work accomplishment; and
Setting effectiveness, efficiency, productivity, and management/internal control standards.

2. Accountability for the success for a program or a project includes:
Obtaining the resources necessary to accomplish the program or project and assuming responsibility for their effective use; and
Dealing with key officials from within and/or outside the agency to gain understanding and support for the program or project

3. Responsibility for monitoring progress toward organizational goals and making appropriate adjustments to such goals includes:
Monitoring work status through formal and informal means to evaluate progress toward objectives;
Assessing overall effectiveness, efficiency, and productivity of the organization; and
Identifying, diagnosing, and consulting on problem areas related to implementation and goal achievement and making decisions on alternative courses of action.

4. Policy-making or policy-determining functions would be expected to include responsibility for:
Reviewing staff recommendations on policies developed to affect the organization's mission; considering political, social, economic, technical, and administrative factors with potential impact on the recommended polices; and approving the policies.

5. Serving Congress in the capacity of Specialist or Senior Specialist in the Congressional Research Service.

Based on my review of the materials available to me, including the depositions of Mr. Herman and Mr. Dimunation, it is apparent to me that Ms. Mansfield's level of responsibility, difficulty of work, and skill required is comparable to that of Mr. Herman, Mr. Dimunation, and certainly of that of Mr. Byrum, who was supervised by Ms. Mansfield.

More importantly, the characteristics of her Arts and Sciences Cataloging Division Chief position clearly meet the LOC's own criteria for designation as a SL position, as outlined above. Those criteria require only that a position minimally exceed the classification standard for GS-15 and be responsible for one of five designated areas described above. Disregarding the item related to the Congressional Research Service, and number 4, because it does not appear that such policy making responsibility is an inherent responsibility of any of the SL Division Chief positions, I believe that the characteristics of Ms. Mansfield's position, based on the information included in her position description and her performance appraisals show that she meets criteria one, two, and three. That

-4-

is, she certainly has been directing the work of an organizational unit, has accountability for the success for a program or a project, and is responsible for monitoring progress toward organizational goals and making appropriate adjustments to such goals.

Findings related to the Acting Director for Cataloging position

Ms. Mansfield was assigned to be Acting Director for Cataloging, a position that had been a SL position. While she was performing as the Acting Director for Cataloging, her duties, responsibilities, skill level requirements were the same as those of Mr. Beacher Wiggins when he was the Director for Cataloging. For two periods of 120 days each she was compensated at a SL level, for the remainder, she was paid at GS-15, even though the work she was assigned to perform remained at the SL level. The work not only continued unchanged at the SL level while she acted in the position, it remained at that level afterwards. The reason put forth by the LOC for reducing her pay back to GS-15 was that its regulations limited assignments such as hers to 120 days in a year period. Thus, a LOC employee could be promoted for 120 days in any year period, and then be repromoted for 120 days after a year's time passed.

Findings related to the comparison of the grade level of Ms. Mansfield's Division Chief position with other Division Chief positions

Regarding whether Ms. Mansfield's position was the equivalent in terms of skill, effort, and responsibility of the work performed by John Byrum, Steven Herman, and Mark Dimunation, both Beacher Wiggins, the Acting Associate Librarian for Library Services and Donald Krigbaum, the classification consultant retained to evaluate Division Chief positions in the Cataloging Directorate, came to the same conclusion. Mr. Krigbaum, through his very detailed classification study, recommended that Ms. Mansfield's position be paid at the SL level, and Mr. Wiggins fully supported that determination by recommending to the Director of Human Resources Services that Ms. Mansfield's position be upgraded to the SL level.

I have reviewed the position descriptions provided to me for Ms. Mansfield, John Byrum, Steven Herman, and Mark Dimunation. Although each position has its own unique characteristics, they all have common program development and program management responsibilities. Based on that review, I believe that the work of Ms. Mansfield is of equivalent levels of skill, effort, and responsibility to Mr. Byrum, Herman, and Dimunation. Moreover, Since Ms. Mansfield supervised Mr. Byrum during the period in question, Ms. Mansfield's level of responsibility certainly should be considered greater than his. In comparing the position occupied by Ms. Mansfield with those of her male counterparts, it is interesting to note that her GS-15 position supervises more staff than six of seven comparable SL positions in Library Services, and has a budget greater than five of seven comparable SL positions in Library Services.

It is of some concern that the LOC did not respond more substantively to Ms. Mansfield's concerns, the findings of Mr. Krigbaum's classification study, and to Mr. Wiggins' recommendations to promote Ms. Mansfield to the SL level. I did not see in the materials

-5-

provided to me any conclusion or rationale regarding why the LOC did not believe Ms. Mansfield's position to be a SL position. Instead, there was what appears to be organizational shuffling and maneuvering to avoid recognizing the additional duties and responsibilities that were integral to Ms. Mansfield's position.

Findings related to the Assistant Director for Bibliographic Access position

Ms. Mansfield was assigned what the LOC termed "collateral duties" to serve as the Assistant Director Bibliographic Access in August 2004 and served in that position until April 13, 2005, when that position and comparable Assistant Director positions were abolished. During that time, she was compensated at the GS-15 level, while all the other Assistant Directors were compensated at the SL level. The assignment of collateral duties to a position generally is considered appropriate when such duties are at the same or lower grade level as the established grade for a position and the "collateral duties" constitute a relatively minor part of the workload of the assignee. It is clear from well established Office of Personnel Management (OPM) guidance that the assignment of Assistant Director for Bibliographic Access duties were not "collateral duties", but were duties that directly impacted Ms. Mansfield's pay grade and were, in fact, grade controlling.

As a result of this assignment, Ms. Mansfield's responsibilities not only were significantly more extensive and at a higher level than her GS-15 Division Chief position, they were even more extensive than her duties as the Acting Director for Cataloging, a well-established SL position. Specifically, while she managed eight Divisions as the Acting Director for Cataloging, she was responsible for nine Divisions as the Assistant Director for Bibliographic Access. As a result, the assignment of these additional duties to Ms. Mansfield compounded the already existing pay inequity resulting from the designation of her Chief of the Arts and Sciences Cataloging Division position as GS-15 instead of SL.

Summary

• I believe that Ms. Mansfield's Division Chief position should have been classified at the SL level.
• Ms. Mansfield should have been compensated at the SL level for the entire time she was Acting Director for Cataloging.
• I believe that it was inappropriate to assign Ms. Mansfield to the Assistant Director for Bibliographic Access position as a GS-15 since such an assignment clearly represented a promotion to a position with a much higher level of responsibility and impact. Since the Assistant Director for Bibliographic Access position was a direct extension of the Acting Director for Cataloging position, it is clear that the Assistant Director for Bibliographic Access position should have been compensated at the SL level.

It should be noted that the preceding opinions and conclusions are based on the documents provided for my review. I may develop further opinions and conclusions if additional information becomes available.

-6-

Data and Other Information Considered in Forming My Opinion

• Deposition of Mark Dimunation
• Deposition of Dennis Hanratty
• Deposition of Steven Herman
• Deposition of Beacher Wiggins
• Deposition of Deanna Marcum
• Deposition Exhibits 3,4,5,6,7,8,9,15,16
• Deposition Exhibit 13 (including organizational chart of assistant directors)
• Library of Congress Organizational Chart As of September 30, 2004
• Office of Personnel Management Introduction to Position Classification Standards
• Office of Personnel Management Classifiers Handbook
• LCR 2017-2.1, Senior Executive System
• Report "Evaluation of Division Chiefs' Positions Cataloging Directorate", prepared by Donald Krigbaum
• Copies of emails and memoranda related to discussions concerning Cataloging Directorate Division Chief positions
• SF-50s, performance appraisals and position descriptions related to Judith Mansfield's employment at the Library of Congress

My Qualifications -- Please see attached resume.

My compensation for this study is $90 per hour.

<u>Listing of Any Other Cases in Which I Have Testified as an Expert at Trial or by Deposition Within the Preceding Four Years</u> –
     • Bell v. Mineta


Please let me know you if need additional information.

        Sincerely yours

        Stephen Perloff
        Stephen Perloff

Attachment

STEPHEN H . PERLOFF
PERSONNEL MANAGEMENT CONSULTANT
11701 SILENT VALLEY LANE
GAITHERSBURG, MD 20878


301-762-5442
FAX: 301-762-3895
E-mail: PMCINC1@comcast.net


RESUME


- September 1998 to present

    Consultant providing advice and assistance on a full range of staffing, position classification,
    and organizational design issues.  I have assisted the U.S. Department of Agriculture, National
    Credit Union Administration, Environmental Protection Agency, Nuclear Regulatory
    Commission, U.S. Coast Guard, U.S. Department of Energy, Smithsonian Institution, National
    Institutes of Health, Centers for Disease Control, Federal Emergency Management Agency,
    Peace Corps, and others.  In addition, I have been retained as an expert consultant and
    witness by the Office of the U.S. Attorney and by plaintiffs' attorneys in matters relating to
    classification, staffing, qualifications, and general human resource management issues.

- May 1989 to August 1, 1998

    U.S. Office of Personnel Management
    Supervisory Personnel Management Specialist/Team Leader

    Responsible for managing the Office of Personnel Management's General Schedule (white-
    collar) and Federal Wage System (blue-collar) qualification standards systems.  The scope of
    my responsibilities included developing and implementing policies related to qualification
    standards issues, establishing policy and operational requirements to be followed by Federal
    competitive service agencies, refining and improving the qualification standards system for all
    competitive service General Schedule and Federal Wage System positions, providing guidance
    and training to OPM and agency staff to insure that OPM policies were appropriately interpreted
    and implemented, and maintaining an appropriate relationship between OPM's classification
    and qualification standards.

    I was responsible for the development, implementation, and revision of the current OPM
    Operating Manual - Qualification Standards for General Schedule Positions, and was a member
    of the management team of the Nationwide Examining Policy Office.  That Office was
    responsible for establishing the operational requirements followed by OPM and Federal
    agencies for competitive examining, including operation of delegated examining units.

    I regularly provided position classification, staffing, and organizational design advice and
    assistance to Federal agencies, both at the headquarters and field organizational levels,
    particularly in situations where complicating factors required expert knowledge and
    understanding of both classification and staffing, and a multi-disciplinary approach, including

the review of agency requests to pass over disabled veterans in the competitive examination process.

- December 1986 to May 1989

    U.S. Office of Personnel Management
    Senior Personnel Management Specialist

    Responsible for providing technical guidance to the staff of Personnel Management Specialists assigned to the Qualification Standards Division. During this time, OPM was transitioning the qualification standards system from one that was extremely prescriptive to one that provided much greater involvement and decision-making authority by Government agencies. My prime responsibility was to lead the establishment and implementation of the philosophical and operating foundation of the new General Schedule qualification system, as well as to personally develop the more complex aspects of the new system. This work required a great deal of interaction and negotiation with all the agencies of the Federal Government.

- May 1978 to December 1986

    U.S. Office of Personnel Management
    Senior Personnel Management Specialist

    Responsible for the analysis and resolution of issues related to the development and implementation of the Factor Evaluation System (FES), the classification system used to evaluate and determine the proper series and grade for General Schedule positions. The FES, which is still the classification system for General Schedule positions, was under development during this period and my responsibilities included identifying operational and conceptual problems, and developing workable solutions. In addition, my responsibilities included ensuring that the General schedule classification and qualification systems maintained an appropriately integrated relationship. This work required an expert knowledge and understanding of both the classification and qualification standards systems.

- September 1973 to May 1978

    U.S. Civil Service Commission/U.S. Office of Personnel Management
    Senior Personnel Management Specialist

    Provided policy and technical support to the Civil Service Commission and the Director of the Office of Personnel Management to help them carry out their responsibilities related to determining government white-collar pay increases, as determined by a comparison with comparable private sector pay levels. This work required an expert knowledge of both General Schedule and private sector occupations and occupations structures and relationships.

- September 1961 to September 1973

    Bureau of Labor Statistics, U.S. Department of Labor
    Labor Economist

    Responsible for conducting wage and salary surveys related to geographic areas and industrial sectors and analyzing and publishing results. My area of concentration was the nationwide occupational salary survey of the private sector that was used as the basis for recommending changes to the General schedule salary structure.