# Exhibit 35

# Declaration of Beacher Wiggins

*Mansfield v. Billington*, Civil Action No. 05-1790 (RMU/JMF)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JUDITH A. MANSFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-472C |
| ) | Judge Mary Ellen Coster Williams |
| THE UNITED STATES, ) | |
| ) | |
| Defendant. ) | |

### Declaration of Beacher Wiggins

I, Beacher Wiggins, make the following declaration pursuant to the authority of 28 U.S.C. §1746. I am aware that this declaration may be filed in the United States Court of Federal Claims and that a declaration is the legal equivalent of a statement under oath:

1. I am currently the Director for Acquisitions and Bibliographic Access in the Library Services service unit of the Library of Congress.

2. I am currently a Senior Level (SL) employee of the Library, a pay scale that is equivalent to the Senior Executive Service (SES) pay scale in the Executive Branch of the Federal Government.

3. I have been working at the Library of Congress since January 1972. I was promoted to the SL pay grade in June 1997 when I was selected and appointed to the permanent position of Director for Cataloging in Library Services. At the time there were seven directorates in Library Services, including Cataloging. From January 1995 to June 1997, I was assigned duties as Acting Director for Cataloging and was temporarily promoted for three 120-day periods while assigned to duties as Acting Director. My third temporary promotion took place around the time that the permanent position of Director

7

for Cataloging was posted in September 1996. My pay during these temporary promotions to SL was set by HRS based on my then current GS-15 pay grade. Moreover, during those periods between 1995 and 1997 when I was performing the duties of Acting Director for Cataloging and not temporarily promoted to SL, I was paid at my regular GS-15 pay.

4. In September 2002, as a result of the retirement of the Associate Librarian for Library Services (who was the head of Library Services), Winston Tabb, I was detailed to duties as Acting Associate Librarian for Library Services. At the time, Cataloging was one of seven directorates in Library Services. I was detailed to duties as Associate Librarian for Library Services until Mr. Tabb's replacement, Deanna Marcum, was selected and appointed in August 2003.

5. Upon my assignment to duties as Acting Associate Librarian for Library Services in September 2002, I assigned Judith Mansfield as Acting Director for Cataloging to cover the duties I would normally perform as Director for Cataloging. I assigned her to these duties based on her expressed interest in performing the duties of Acting Director, her qualifications, and my assessment that she would be an excellent manager to oversee the operations of the directorate.

6. At the time I detailed Ms. Mansfield to the position of Acting Director for Cataloging, she was the Chief of the Arts and Sciences Cataloging Division (ASCD) in Cataloging and was paid at the GS-15, Step 5 pay grade.[1] At this time, there were eight divisions in Cataloging under my supervision. Each Cataloging division was headed by a

---

[1] In 1998, I had selected Ms. Mansfield to be Chief of ASCD after she had applied and interviewed for the position. Before her selection as Chief of ASCD, Ms. Mansfield was a GS-13 Automated Operations Coordinator in Library Services under my supervision.

8

Chief who reported directly to me. Of the eight Chiefs who reported to me in Cataloging, three were pay grade SL and the rest were pay grade GS-15. Of the three SL Chiefs, one was a male and the other two were female. The three SL Chiefs were John Byrum, Susan Vita, and Barbara Tillett. With respect to the five GS-15 Chief positions, there were two men and one woman in permanent positions, and two positions were vacant at the time with acting Chiefs. The three permanent GS-15 Chiefs at the time were Ms. Mansfield, John Celli, and Jeffrey Heynen.

7. On September 22, 2002, Ms. Mansfield was officially assigned to duties as Acting Director for Cataloging. At this time, I also temporarily promoted Ms. Mansfield to the SL pay grade because as Acting Director she would be performing the full range of duties of the position, which is an SL position. Temporary promotions are customary for any detail of a manager or staff member to a higher-graded position. Ms. Mansfield's rate of pay during her temporary promotion to SL was adjusted based on her then-current GS-15 pay grade and was determined and set by the Library's Human Resources Services (HRS) directorate. I do not believe that HRS' determination as to what rate of pay Ms. Mansfield would receive during her temporary promotion was based on her gender.

8. Under Library of Congress regulations, a staff member may only be temporarily promoted for up to 120 days during any twelve-month period. Temporary promotions to the SL pay grade in excess of 120 days are restricted to those situations where a permanent candidate for the position is being sought and the position is being posted. Therefore, since the position of Director for Cataloging was not being filled, Ms. Mansfield's temporary promotion could not exceed 120 days. Limiting Ms. Mansfield's temporary promotion to a period of 120 days was in no way based on her gender.

9

9. On January 20, 2003, Ms. Mansfield's temporary promotion to the SL pay grade ended. Nevertheless, from January 2003 to June 2004, Ms. Mansfield continued to perform the duties of Acting Director for Cataloging. I wanted Ms. Mansfield to continue as Acting Director for Cataloging for the duration of my assignment as Acting Associate Librarian for Library Services because I wanted the continuity of a single manager leading the directorate and because I had been very pleased with her work during her first 120 days as Acting Director. Ms. Mansfield's gender had nothing to do with my decision to keep her assigned to the duties of Acting Director nor did it have anything to do with the amount of pay she received while assigned to these duties. Moreover, as I discussed with Ms. Mansfield at the time, she could have declined to continue as Acting Director when the temporary promotion ended. However, based on Ms. Mansfield's explicit agreement in continuing to perform the duties of Acting Director and my desire to have her continue, I allowed her to do so.

10. On February 8, 2004, after the requisite 12-month period had elapsed since Ms. Mansfield's last temporary promotion to SL, I again temporarily promoted her to SL based on her ongoing duties as Acting Director for Cataloging. As with her earlier temporary promotion to SL, Ms. Mansfield's pay was adjusted based on her rate of pay in her regular GS-15 position. Ms. Mansfield's temporary promotion to the SL pay grade, in keeping with Library regulations that limit the period of a temporary promotion to 120 days, ended on June 9, 2004. At this time, Ms. Mansfield was re-assigned exclusively to her regular duties as Chief of ASCD. As with her earlier temporary promotion to SL, I do not believe that the determination of Ms. Mansfield's rate of pay by HRS during this temporary promotion was premised on her gender but, on her rate of pay in her regular

10

GS-15 position. Moreover, neither the end of her temporary promotion nor her return exclusively to performing the duties of Chief of ASCD were based on Ms. Mansfield's gender.

11. Prior to becoming Acting Associate Librarian for Library Services, I had requested that HRS review the position descriptions for the eight Chief positions in Cataloging. I had long thought that the Chief positions in Cataloging merited being classified at the SL level. As noted above, at the time, three of the Chiefs were already SL and the remaining five positions, including Ms. Mansfield's position, were at the GS-15 pay grade. In April 2003, a contractor-classifier hired by HRS reviewed the Chief positions and recommended that three of the GS-15 Chief positions be upgraded to SL. The three GS-15 Chief positions recommended for upgrade to SL were: Chief of the ASCD, Ms. Mansfield; Chief of the History and Literature Cataloging Division, Jeffery Heynen; and Chief of the Social Sciences Cataloging Division, a position which was vacant at the time.

12. On August 11, 2003, Deanna Marcum was appointed as the new Associate Librarian for Library Services. The Director of HRS, Teresa Smith, submitted the recommended position upgrades to Ms. Marcum for her consideration. Ms. Marcum determined that Library Services' budget could not support the additional SL positions and therefore, did not approve the recommended upgrades. As a result, HRS never reclassified nor upgraded the three Cataloging Chief positions. I do not believe that Ms. Marcum's decision not to upgrade these positions was motivated by Ms. Mansfield's gender.

11

13. In September 2004, Ms. Marcum decided to realign Library Services with the aim of improving workflow and mission effectiveness. As part of the realignment, Ms. Marcum created five new directorates to oversee Library Services operations. The Directors of two of these directorates, Acquisitions and Bibliographic Access (ABA) and Collections and Services (C&S), were granted permission to assign Assistant Director collateral duties to Chiefs within their directorates who were interested in assisting the Directors. I was assigned as Director for ABA and Carolyn Brown, another SL, became Director for C&S.

14. Ms. Marcum assigned Ms. Mansfield collateral duties as Assistant Director for Bibliographic Access based on my strong recommendation and Ms. Mansfield's expressed interest in the Assistant Director position.[2] Because I wanted to have a better immersion in acquisition activities, I assumed the collateral duties of Assistant Director for Acquisitions. Steve Herman (Chief of the Collections Access, Loan, and Management Division) and Mark Dimunation (Chief of the Rare Book and Special Collections Division) were assigned collateral duties as Assistant Director for Collections Management and Assistant Director for Special Collections and Services, respectively, in the new C&S directorate. Both Mr. Herman and Mr. Dimunation were under the supervision of the Director of C&S, Carolyn Brown.[3] When assigned their collateral duties as Assistant Directors, Mr. Herman and Mr. Dimunation had already been SL for several years. As noted above, I was also already a SL employee when I assumed my collateral duties as Assistant Director for Acquisitions in September 2004.

---

[2] By this time, Ms. Mansfield was at pay grade GS-15, Step 7. She had attained the higher step after I had awarded her a Quality-Step-Increase in 2002 based on her performance ratings.
[3] Ms. Brown, like myself, also assumed collateral duties during the realignment--as Assistant

12

15. Shortly after she was assigned her collateral duties as Assistant Director, Ms. Mansfield began expressing to me disappointment that a permanent position description and upgrade to SL pay grade were not forthcoming for the Assistant Director duties. I also considered the Assistant Director duties to warrant a permanent position description and upgrade to SL and helped prepare a draft permanent position description, at the SL pay grade, and submitted this to Ms. Marcum for review. However, Ms. Marcum was steadfast in her belief that the Assistant Director assignments should only be collateral duties and that the Library Services budget did not allow for the creation of any new permanent SL positions. I do not believe that Ms. Marcum's decision not to create permanent SL Assistant Directors positions was in any way based on Ms. Mansfield's gender.

16. While assigned to duties as Acting Director for Cataloging and while assigned collateral duties as Assistant Director for Bibliographic Access, Ms. Mansfield became the de facto supervisor of three SL employees in Cataloging. These SL employees were John Byrum, Susan Vita, and Barbara Tillett. When I was similarly assigned duties as Acting Director for Cataloging from 1995 to 1997, I also became supervisor to these three SL employees in Cataloging even though my then current permanent pay grade was GS-15. The fact that Ms. Mansfield became the supervisor of three SL employees during her tenure as Acting Director for Cataloging and while performing the Assistant Director collateral duties had nothing to do with her gender. Rather, I assigned her (or recommended her) for these duties based on her past performance and her expressed interest in performing these duties. Moreover, any pay

---

Director of General Collections and Services.

13

disparity that may have existed between Ms. Mansfield and any of the SL employees under her supervision was on account of her being a GS-15 at the time or, during those periods when Ms. Mansfield was temporarily promoted to SL, on account of their having been in permanent SL positions for several years at the time Ms. Mansfield was assigned the above duties--not on account of Ms. Mansfield's gender.

17. In April 2005, the assignment of collateral duties to Ms. Mansfield, Mr. Herman, and Mr. Dimunation ceased and they each returned exclusively to performing the duties of their permanent positions.

I swear under penalty of perjury that the foregoing is a true and accurate statement.

_____ 7/5/05
Beacher Wiggins

14