UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                )
JUDITH A. MANSFIELD,            )
                                )
          Plaintiff,            )
                                )
     v.                         )     Civil Action No. 05-1790 (RMU/JMF)
                                )
JAMES H. BILLINGTON,            )
LIBRARIAN OF CONGRESS,          )
                                )
          Defendant.            )
_____)

## DEFENDANT'S REPLY IN SUPPORT OF HIS
## CROSS-MOTION FOR SUMMARY JUDGMENT

_____Defendant James Billington, Librarian of the Library of Congress ("Defendant" or

"Library") respectfully submits this reply in support of his cross-motion for summary judgment.

## I. INTRODUCTION

An oft-quoted legal standard for the purposes of summary disposition of a case is that "[a]

party opposing a motion for summary judgment must point to more than just 'a scintilla of

evidence' to support [her] position," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Specifically, "there must be evidence on which the jury could reasonably find for the plaintiff."

Id. at 249-50.  Evidence that is "merely colorable" or "not significantly probative" will not defeat

a motion for summary judgment.  Id.  It is this latter type of evidence - for example, supposition,

upon which Plaintiff relies heavily in opposing Defendant's motion for summary judgment.

Plaintiff, in her opposition memorandum, fails to raise a genuine issue in dispute such

that a jury might rule to the contrary.  See, e.g., Stewart v. Ashcroft, 352 F.3d 422, 428 (D.C. Cir.

-1-

2003)(affirming District Court's decision granting summary judgment to defendant in Title VII case where plaintiff/appellant failed to offer sufficient evidence such that a jury could find that the agency's reason for its actions was a pretext for discrimination). Indeed, Plaintiff's voluminous opposition memorandum and exhibits attempt to create the appearance of material facts in dispute when in fact there are none. As such, Defendant's cross-motion for summary judgment should be granted and Plaintiff's suit dismissed with prejudice.

## II.  ARGUMENT

**A.    Plaintiff Provides No Evidence That The Setting of Her Pay By The Library Was Motivated In Any Way By Her Sex.**

Plaintiff's supposition that the disparity in pay between herself and her male co-workers raises an inference of sex discrimination is contradicted by the evidence and does not create an issue such that a reasonable jury could conclude that the Library's reasons for paying her less than her male co-workers were pretextual. Plaintiff has presented no evidence that the setting of her pay by the Library, when she was assigned duties as Acting Director for Cataloging from 2002 to 2004, was motivated by her sex. Although Plaintiff posits that she was "appointed" to the duties of Acting Director for Cataloging, she admits that her permanent position throughout the period in dispute was as Chief of the Arts and Sciences Cataloging Division ("ASCD") (in the Cataloging directorate of Library Services and under the direct supervision of the Director for Cataloging), a position classified at the GS-15 pay grade. Pl.'s Opp. at 14.

Moreover, Plaintiff points to no evidence that she ever applied for and was denied promotion to a Senior Level position at the Library. Rather, during her tenure as Acting Director for Cataloging, she suggests that–but for sex discrimination, she would have been paid at the

same rate as the incumbent Director for Cataloging (Beacher Wiggins, who was Plaintiff's direct supervisor). The Library has presented evidence in the form of Plaintiff's SF-50s to show, as noted above, that her permanent position since 1998 has been at the GS-15 pay grade and that it temporarily promoted her to the Senior Level pay grade (while performing the higher graded duties of Acting Director) during two 120 periods while she performed the duties of Acting Director. Plaintiff's two temporary promotions were based on the recommendation of Mr. Wiggins and in accordance with the Library's regulations which limit the duration and number of temporary promotions to the SL pay grade during any one year period. See Dkt. 26, Ex. 8, Library of Congress Regulation 2017-2.1. As noted previously by Defendant, a federal employee is only entitled to the pay of their permanent position, even while assigned to higher-graded duties. United States v. Testan, 424 U.S. 392, 406 (1976). The Library has presented ample, unrefuted, and non-discriminatory reasons as to how it set Plaintiff's pay while she was assigned to duties as Acting Director for Cataloging. See Dkt 26, Defendant's motion at 21-22.

In contrast, Plaintiff presents no evidence (or legal theory) as to why she should have received the same pay as her supervisor, Mr. Wiggins, simply because she was performing his duties when she was assigned as the Acting Director for Cataloging and no evidence that the setting of her pay during this period was premised on her sex.[1] Moreover, contrary to Plaintiff's

---

[1] In footnote 4 of Pl.'s Opp., Plaintiff alludes to a settlement of her claims under the Equal Pay Act and clarifies types of relief she is now seeking in this case. Although Plaintiff properly refrains from explicitly urging the Court to consider the fact of the settlement, she also fails to note that such evidence would be inadmissible to prove liability. See Fed. R. Evid. 408. Accordingly, the Court should not consider anything about the settlement of Plaintiff's Equal Pay Act claims in resolving the pending motions for summary judgment. See Greer v. Paulson, 505 F.3d 1306, 1314 (D.C. Cir. 2007) (only evidence capable of being converted into admissible evidence may be considered at summary judgment).

vague assertions that she was somehow treated disparately as compared to her male supervisor, Mr. Wiggins did not "take over" nor was he "given" the position of Director for Cataloging in 1997. Pl.'s Opp. at 16-17. Rather, Mr. Wiggins applied, was interviewed, and was competitively selected for the position of Director for Cataloging–a position that was classified at the Senior Level pay grade <u>before</u> Mr. Wiggins was selected for the position. Plaintiff presents absolutely no evidence that Mr. Wiggins' selection as Director for Cataloging in 1997, the setting of his pay upon his appointment as Director for Cataloging, or the classification of the Director for Cataloging position somehow shows that the Library's treatment of her was disparate on account on her sex. Certainly none of those decisions were made by Ms. Marcum because they preceded her employment by the Library. Therefore, while Plaintiff may have performed the higher-graded duties of Acting Director from September 2002 to August of 2004, Plaintiff presents no evidence, except for her own musings and suppositions, to show or suggest that the Library's stated reasons for paying Plaintiff at the GS-15 pay grade (of her permanent position as Chief of the ASCD) for most of the period during which she was performing these higher-graded duties were "false" or a pretext for sex discrimination. <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 148 (2000)(jury issue only created where plaintiff establishes a prima facie case **combined** with sufficient evidence to disbelieve the employer's asserted justification)(emphasis in original).[2]

---

[2] Plaintiff attempts to avoid her burden by arguing that the Library's articulation of its legitimate reasons for its actions negates the <u>McDonnell Douglas</u> framework. <u>See</u> Pl.'s Opp. at 12-13. Beyond the fact that Defendant is permitted to argue in the alternative, and the Court can initially evaluate the *prima facie* case without regard to the proffered reasons, recent decisions by courts in this Circuit and elsewhere confirm that this amounts largely to an academic debate because there is no doubt that the Plaintiff at all times retains the burden of showing that intentional discrimination or retaliation motivated the Library's actions. <u>See</u> <u>Wiley v. Glassman</u>, No. 06-5402, 2007 WL 4354431, **4-5 (D.C. Cir. Dec.

Plaintiff has presented no evidence that the setting of her pay when she was assigned duties as Assistant Director for Bibliographic Access was based on her sex.  First, while Plaintiff posits that her assignment to the duties of Assistant Director was an "official appointment"and "worthy of announcement to the entire Library and the public at large,"  this in no way shows that–as with her assignment to the duties of Acting Director for Cataloging, discussed above–she would, as a general principle, be entitled to Senior Level pay.  Pl.'s Opp. At 15-16.  As noted above, a federal employee is entitled only to the pay of their permanent position, even if (as asserted by Plaintiff), she is performing higher-graded duties.  Testan, supra.  Despite Plaintiff's assertions as to the "official" nature of her assignment to the duties of Assistant Director, she cannot and does not show that she was ever appointed or transferred from her permanent position as the Chief of the ASCD (at the GS-15 pay grade) to a permanent position as Assistant Director for Bibliographic Access (at the Senior Level pay grade) such that she would be entitled to the pay of the latter "position" at the Senior Level pay grade.

However, Plaintiff's own admissions confirm that the Library (and specifically Deanna Marcum, the Associate Librarian for Library Services) made it clear that assignment of the Assistant Director duties would be collateral and that no promise or indication of additional pay was made by anyone at the Library at the time that the Assistant Director assignment was

---

14, 2007) (discussing evaluation of record on summary judgment and ultimately finding, among other things, that employee had failed to show one of the *prima facie* elements, an adverse action); accord St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) (holding that a complainant "at all times bears the ultimate burden of persuasion") (internal quotation marks and citations omitted); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (employer "need not prove that the tendered reason actually motivated [his] behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff").

proposed to Plaintiff by Ms. Marcum.  See Dkt. 26, Ex. 8, Mansfield Depo. at 182:1-22.  At

most, Plaintiff, as GS-15 employee with 30 years of experience at the Library, posits that, "Well,

I did not know that there would be no additional pay.  No one had told me there would be

additional pay, but I didn't know there would not be."  Id. at 182:16-19.  While Plaintiff may

have hoped that her new duties as Assistant Director would lead to the upgrade of her permanent

position to the Senior Level pay grade or that a new permanent Senior Level position as Assistant

Director would be created for her, there is simply no evidence whatsoever that Plaintiff's

assignment to the duties of Assistant Director in August 2004 and the rate of pay that the Library

would pay Plaintiff while performing these duties was in any way motivated by Plaintiff's sex.

There is no evidence that the disparity in pay between Plaintiff and any of her male co-

workers– particularly the two who were assigned duties as Assistant Director along with

Plaintiff--was on account of Plaintiff's sex.  Even assuming that Plaintiff performed similar

duties or even that she had "far more responsibility" than the two male Assistant Directors, Mark

Dimunation and Steve Herman, there is no evidence that Plaintiff's sex was a factor in how the

Library paid these three individuals while they were assigned to duties as Assistant Director.  As

noted previously by Defendant, Ms. Marcum had tasked her two Senior Level subordinates, Mr.

Wiggins and Carolyn Brown (a Senior Level Director in Collections Services of Library

Services) to choose employees in their respective directorates as Assistant Directors during an

ongoing reorganization.  See Dkt. 26, Ex. 2, Marcum Depo. at 119:22-120:17; Ex. 4, Wiggins

Depo. 87:18-88:2.  There is no evidence to suggest in any way that Ms. Marcum had any

individuals in mind when she directed Mr. Wiggins and Ms. Brown to recommend candidates for

the Assistant Director duties.  Mr. Wiggins recommended Plaintiff for the Assistant Director

duties in Bibliographic Access and Ms. Brown recommended Mr. Dimunation and Mr. Herman.

At the time they were recommended for the Assistant Director duties, both Mr. Dimunation's and

Mr. Herman's permanent positions (as Chief of the Rare Book and Special Collections Division

and Chief of the Collections Access, Loan and Management Division, respectively) were

classified at the Senior Level pay grade.  These two men had both been in their respective Senior

Level positions well before Ms. Marcum was appointed to her position as head of Library

Services in August 2003–Mr. Dimunation was appointed to his Senior Level position in

November of 1997 and Mr. Herman had held a Senior Level position since March of 1999.  See

Dkt. 26, Exs. 21 & 22.  In short, there is absolutely no evidence that the Library, in the guise of

Ms. Marcum, assigned the Assistant Director duties to Plaintiff and did not pay her comparably

to Mr. Dimunation and Mr. Herman in order to "save money" and thereby "targeted" Plaintiff for

lower pay (while performing the Assistant Director duties along with Mr. Herman and Mr.

Dimunation) on account of her sex.  Pl.'s Opp. at 26.  Indeed, Plaintiff offers no evidence either

that the Library or Ms. Marcum promoted any other employees to the Senior Level in 2005 or

that budget issues were otherwise fictitious.  To the contrary, the only inference that can be

drawn by the disparity in pay between Plaintiff and her male co-workers is that it was on account

of factors completely unrelated to sex and wholly related to different supervisors and budgetary

times when the issue of Senior Level arose.[3]  Specifically, the permanent position and pay grade

_____

[3]  Under the case law, the individuals with whom Plaintiff seeks to compare herself must be
"similarly situated in all respects . . . [They] must have dealt with the same supervisor, have been subject
to the same standards and have engaged in the same conduct without such differentiating or mitigating
circumstances that would distinguish their conduct or the employer's treatment of them for it."  Phillips
v. Holladay Prop. Servs., 937 F. Supp. 32, 37 (D.D.C. 1996), aff'd, 1997 U.S. App. LEXIS 19033 (D.C.
Cir. June 19, 1997) (quoting Mitchell v. Toledo Hospital , 964 F.2d 577, 583 (6th Cir. 1992)) (emphasis
added); see also Barbour v. Browner, 181 F.3d 1342, 1345 (D.C. Cir. 1999); Mungin v. Katten, Muchin

at which each Assistant Director happened to have at the time they were recommended for and accepted their duties of Assistant Director determined their respective rates of pay.

Plaintiff provides no evidence that Ms. Marcum's decision and reasons for not upgrading Plaintiff's duties as Assistant Director to a permanent position at the Senior Level pay grade was motivated by sex.  Mr. Wiggins, Plaintiff's supervisor, agreed with Plaintiff that her Assistant Director duties should be upgraded to a permanent position at the Senior Level pay grade and duly prepared a position description which he presented to Ms. Marcum in January 2005.  <u>See</u> Dkt. 26, Ex. 4, Wiggins Depo at 65.  Again however, Ms. Marcum reminded Mr. Wiggins that her intention in creating the Assistant Director positions was as a collateral duty while Library Services underwent a reorganization and that because of budget constraints that she did not agree that an upgrade for Plaintiff was appropriate.  <u>See</u> Dkt. 26, Ex. 2, Marcum Depo. at 133:21-134:2, 144:3-19, 146:21-147:1.

Plaintiff presents no evidence that Ms. Marcum's reasons for rejecting the upgrade proposal were motivated by sex discrimination.  Mr. Wiggins conceded that although his upgrade proposal was only for Plaintiff's position, such a proposal would have had an, "impact across the service unit, [since] a single instance is generally the beginning of a pattern...".  <u>See</u> Dkt. 26, Ex. 4, Wiggins Depo. at 95:10-97:11.  In addition, while Mr. Wiggins may have believed that Plaintiff's pay while performing Assistant Director duties was unfair, this does not mean that

---

& Zavis, 116 F.3d 1549, 1554 (D.C. Cir. 1997); <u>Neuren v. Adduci, Mastriani, Meeks & Schill</u>, 43 F.3d 1507, 1514 (D.C. Cir. 1995); <u>Christopher v. Billington</u>, 43 F. Supp. 2d 39, 50 (D.D.C. 1999), <u>aff'd</u>, 1999 WL 1336221 (D.C. Cir. 1999); <u>Holbrook v. Reno</u>, 196 F.3d 255 (D.C. Cir. 1996).  Mr. Byrum, for example, was automatically elevated to the Senior Level nearly fifteen years before Plaintiff claims to have been entitled to the Senior Level.  <u>See</u> Def.'s Mem. at 18.  Because Plaintiff relies entirely on comparisons to inappropriate co-workers, she fails to establish a genuine issue of material fact.

Plaintiff's rate of pay was premised on her sex.  Indeed, as Mr. Wiggins conceded, he had "no doubt' that Ms. Marcum's decision was not motivated in any way by Plaintiff's sex.  Id. at 96. Moreover, the Library's Director for Human Resources Services testified that in the last several years, "budgets really have gotten tighter and tighter and tighter..." across the Library and in order to maintain the same level of operations, cost-of-living increases, and programs mandated by Congress the Library has had to reduce its work force by approximately 20% in the last 15 years.  See Dkt. 26, Ex. 7, Hanratty Depo. at 41:1-44:20.  The Librarian of Congress himself testified before Congress in 2003 (when Ms. Marcum was first appointed to her positions as head of Library Services) that the Library was undergoing challenging budgetary times and that it was seeking support in its 2004 budget not for any new functions but, "mainly for managing our growing collections, incorporating rapidly changing technology into our operations, and covering mandatory pay raises and unavoidable price increases." See Exhibit 23, April 10, 2003 Statement by the Hon. James Billington before the Subcommittee on the Legislative Branch, Committee on Appropriations, United States Senate (attached).  Lastly, Ms. Marcum's newsletters to staff during 2003-2004 also shows that the Library Services' budget was of genuine concern to her.  As Ms. Marcum noted early in her tenure as head of Library Services, "[fiscal year] 2005 will clearly be a difficult budget year. . . [the Librarian of Congress has] asked all of us to look at areas we can cut in order to realize savings with which to do new things.  See Exhibit 24, Sept. 26, 2003, March 5 and 12, 2004 "Friday's News from Deanna Marcum" (attached).  Subsequent newsletters from mid-2005 also convey the genuine sense that the Library Services' budget was of serious concern to Ms. Marcum:

> I think nearly everyone knows by now that the 2004 budget of LS [Library Services] must be trimmed if we are to get through the year without a deficit, and the picture in 2005 is less than cheerful.

Id. at DA 52.  A later newsletter depicts an even more dire budget situation for Library Services. As Ms. Marcum stated to her staff after the Senate Appropriations hearing, although one Senator "expressed. . . affection for the Library," the Library was "warned that the national budget situation is difficult" and the Library must plan for how it will "function if the 2005 budget is frozen at 2004 levels."  Id. at DA 54.  Ms. Marcum went on to note that "Library Services is already in a deficit situation in 2004, and the directors have worked hard to help me make decisions about ways to reduce this year's spending to balance our budget...[s]acrifice will be required of every division, and I regret the hardships that will result."  Id.  Therefore, Plaintiff has failed to show in any manner that the Library "...repeatedly targeted [Plaintiff] to save money" or that the Library's stated justifications for not converting her Assistant Director duties to a permanent Senior Level position (and thereby paying her at the Senior Level pay grade) was a pretext for sex discrimination.[4]

---

[4] Equally specious is Plaintiff's contention that because she continued to perform the same duties as Assistant Director for Bibliographic Access that she performed as Acting Director for Cataloging ("the Director for Cataloging position with a new name."), and because the Director for Cataloging position was classified at the Senior Level pay grade, that a jury could infer discrimination based on the Library not paying her at the Senior Level pay grade because this is somehow a "deviation from business practice."  Pl.'s Opp. at 21.  As noted above, Testan stands for the well-established rule that a federal employee is entitled only to the pay of their permanent position, even though they may be performing higher-graded duties.  To pay Plaintiff at the Senior Level pay grade--even though her permanent position was classified at the GS-15 pay grade--just because she was assigned to higher-graded duties or performed duties that are akin or arguably at the Senior Level pay grade would in fact have been a deviation from business practice.  Therefore, Plaintiff's contention--that the Library paying her at the GS-15 pay grade--while she performed the duties of Assistant Director was a "deviation from business practice"-- is both illogical and unsupported by law.

Mr. Dimunation's hiring in 1998 at the Senior Level pay grade does not support an inference of discrimination. Mr. Dimunation applied and was selected to his permanent position as Chief of the Rare Books Division after a competitive selection process. The position of Chief of Rare Books was classified at the Senior Level well before he was appointed to the position. Similarly, Plaintiff's permanent position, Chief of the ASCD, was classified at the GS-15 pay grade before Plaintiff was selected to the position in 1998 and a male (Mr. Wiggins) had occupied the position before Plaintiff.[5] Moreover, while Mr. Dimunation's pay may have "jumped from $61,680 to $93,357" as a result of his hiring, this was only because he came to the Library from a university position that paid a fairly low salary and he was selected to a government position (i.e. Library position) that was already classified at the Senior Level pay grade and would have had a minimum threshold salary. Therefore, for Plaintiff to contend that his salary should only have increased 5-10 percent would have led to the illogical result that Mr. Dimunation would have been paid a salary (in his Senior Level position as Chief of Rare Books) akin to an Government employee at the GS-13 pay grade.[6] Hence, Plaintiff's assertion that the setting of Mr. Dimunation's rate of pay was "outside the normal range" is completely missplaced. Morevoer, as with Plaintiff's characterization of Mr. Wiggins' promotion to the

_____

[5] Since the position was classified at the GS-15 pay grade, Mr. Wiggins was–like Plaintiff–paid at the GS-15 pay grade during his tenure as Chief of ASCD from 1992 to 1997. See Dkt. 26, Ex. 4, Wiggins Depo. at 116:10-22; Ex. 5, Mansfield Depo. at 69:9-22.

[6] This is based on taking Mr. Dimunation's salary prior to his appointment to the Library ($61,680), adding Plaintiff's highest (10%) supposed "normal range [increase] for an outside hire" ($6,180), and coming up with $67,648. Based on OPM's January 1998 Annual Pay Table for the Wasington, D.C. area, this would have placed Mr. Dimunation slightly above the GS-13, step 7, pay grade. Pay Table exhibit. The minimum and maximum pay rates for Senior Level employees in the Washington, D.C. area in 1998 were $91,747 and $125,900, respectively. See Exhibit 25, 1998 OPM General Schedule and Locality Pay Table. Therefore, Mr. Dimunation's rate of pay when he first came to work at the Library as a Senior Level employee was at the low end of the Senior Level rate of pay.

-11-

Senior Level upon his successfully competing for the permanent position of Director for

Cataloging in 1997, Mr. Dimunation was not "given the Senior Level designation" upon his

selection to the position of Chief of Rare Books. Pl.'s Opp. at 22. Rather, Mr. Dimunation

successfully competed for a position that was <u>already</u> classified at the Senior Level at the time of

his hiring. In contrast, Plaintiff was not "placed in the Senior Level" upon her successfully

competing for the position of Chief of ASCD in 1998 because the position of Chief of ASCD

was classified at the GS-15 pay grade. Plaintiff posits neither legal nor factual support for her

contention that her Chief position should have been classified at the Senior Level when she was

selected to the position in 1998.[7] Pl.'s Opp. at 25. Therefore, Plaintiff has not raised a triable

issue or evidence of an inference of sex discrimination by comparing the setting of her and Mr.

Dimunation's respective salaries at the time they were both hired to their permanent positions.

The reclassification of Mr. Herman's permanent position to the Senior Level pay grade in

1999 also does not support an inference discrimination. Mr. Herman's reclassification came

about when his then supervisor (Diane Kresh, Director for Public Service Collections)

recommended that his position be reclassified and the then Associate Librarian for Library

Services (Winston Tabb) agreed with the recommendation and proceeded with upgrading Mr.

Herman's position based on accretion of duties. In contrast, Plaintiff's supervisor (Mr. Wiggins,

Director for Cataloging) recommended that Plaintiff's position and that of the other five GS-15

---

[7] It is curious that Plaintiff believes that she could have been considered for selection and promotion to a supposedly Senior Level position (<u>i.e.</u>, the Chief of the ASCD which she asserts should have been classified at the Senior Level pay grade) when she was a GS-13 at the time she applied for the Chief of the ASCD position. Moreover, even more curious is the fact that Plaintiff, a GS-15 with 30 years of government experience, could have *easily* availed herself of a classification review by the Office of Personnel Management (<u>See</u> 5 U.S.C. § 5112), the results of which would have been binding on the Library, yet to this day Plaintiff has failed to do so.

Chief positions under his supervision be upgraded to Senior Level.[8]  Both the then Director for

Human Resources Services (Teresa Smith) and later the Associate Librarian for Library Services

(Ms. Marcum) disagreed with Mr. Wiggins' recommended upgrades.  Not only are the facts

pertinent to each reclassification effort (i.e., the action affecting Mr. Herman and the action

affecting Plaintiff) completely different and imply no sex discrimination but, more importantly,

the person responsible for denial of Plaintiff's upgrade (Ms. Marcum) gave completely legitimate

and non-discriminatory reasons for not proceeding with the upgrade of Plaintiff's position and

several other positions in the Cataloging directorate:  she was new to the organization and wanted

to better understand the organization's structure and Ms. Smith had indicated concerns about

what impact the upgrades in the Cataloging directorate would have on the Library's budget.  See

Dkt. 26, Ex. 2 Marcum Depo. at 76:10-15; Ex. 4, Wiggins Depo. at 129:20-132:2.  Plaintiff can

muster no substantive evidence that Ms. Marcum's refusal to proceed with the upgrades in the

Cataloging directorate was in order to target Plaintiff on account of her sex, that Ms. Marcum's

explanation for not upgrading the positions was rooted in sex discrimination, or even that an

inference of discrimination arises based on the very different facts surrounding both her and Mr.

Herman's reclassification efforts.[9]

---

[8]  As noted earlier by Defendant, the contractor-classifier retained by the Library to review the upgrade of positions in the Cataloging Directorate also recommended that several GS-14 Assistant Chief positions be upgraded to GS-15.  Dkt. 26, Ex. 4, Wiggins Depo. at 186-187:6-14.  This was all part of an extensive effort and campaign to upgrade the positions within the Cataloging directorate during the period when Mr. Wiggins was performing duties as Acting Associate Librarian for Library Services after Mr. Tabb's retirement in 2002 and before Ms. Marcum's permanent appointment in August 2003.  See Dkt. 26, Ex. 17, Oct. 29, 2002 Memo from Judith Mansfield to Towanda McLeod.

[9]  Indeed, contrary to Plaintiff's suggestion that the Library Services was awash in money, when Ms. Marcum was permanently appointed to her position as Associate Librarian for Library Services she was confronted with having no money to cover all of her personnel expenses.  Specifically, shortly before Ms. Marcum's appointment, Mr. Wiggins had hired 64 new catalogers without an annual budget

Plaintiff has failed to present *substantial* and *credible* evidence of sex discrimination in order to survive summary judgment. Aka v. Washington Hosp. Center, 156 F. 3d. 1284, 1289 (D.C. Cir. 1998). Plaintiff's evidence consists of half-truths, suppositions, and wild conjecture that have little basis in fact and which in no way undermines Defendant's legitimate, non-discriminatory reasons for the setting of Plaintiff's pay while she was Acting Director for Cataloging and while she was assigned duties as Assistant Director for Bibliographic Access. The same feeble speculation is used to support her equally specious and unsubstantiated claims of sex discrimination surrounding the non-reclassification of her position in 2003 and Ms. Marcum's refusal in January of 2005 to convert Plaintiff's Assistant Director duties to a permanent Senior Level position. Nothing put forth by Plaintiff points to any "genuine issue of material fact" that would defeat the Defendant's motion for summary judgment nor are any of the conclusory allegations made by Plaintiff sufficiently meritorious so as to warrant a jury trial. See Greene v. Dalton, 164 F. 3d 671, 675 (D.C. Cir. 1999)("Accepting [some] conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.").

**B.      Plaintiff Provides No Evidence The Library's Decision to Remove the Assistant Director Duties Was Retaliatory**

Plaintiff fails to demonstrate that she was subjected to an adverse employment action when the Library removed her Assistant Director duties. Plaintiff first argues that "she should

---

increase, and he had also upgraded all of the cataloging positions adding a career ladder promotion potential to the GS-13. See Dkt. 26, Ex. 2, Marcum Depo. 217:7-22; see also Ex. 17, Memo from Plaintiff to McLeod. Accordingly, Ms. Marcum was forced to eliminate as many of the non-personnel budget items as she could so Library Services would not be in the "red." Id. at 218:1-11.

not have to fear that taking steps to rectify discrimination will result in the loss of her job." Pl.'s Opp. at 30. However, in no way is Plaintiff's situation analogous to the individuals in the cases cited by Plaintiff. Specifically, unlike the individuals in <u>White</u> and <u>Pedraya</u>, Plaintiff did not "lose her job" - she was not terminated, or even demoted from her position at the Library. <u>See</u> Pl.'s Opp. at 30. Rather, the record demonstrates that Plaintiff was returned from her Assistant Director duties to her <u>permanent</u> position of record as the Chief of the ASCD.

Plaintiff next argues that the record of evidence demonstrates that her assignment to collateral duties as Assistant Director was a permanent assignment. Pl.'s Opp. at 41. Here again, Plaintiff's argument lacks meaningful evidentiary support. Indeed, at no time was Plaintiff informed that the Assistant Director duties were permanent, and her position description was never modified to include the duties of Assistant Director. <u>See</u> Dkt. 26, Ex. 5, Mansfield Depo. at 181:15-182:6. More important, the record reveals that Ms. Marcum and Mr. Wiggins repeatedly told Plaintiff and the rest of Library Services staff that the changes to the organizational structure of Library Services, including the addition of the Assistant Director duties, were "an experiment." Specifically, in an e-mail dated July 2, 2004, to the entire Library Services staff in reference to the realignment, including the addition of the Assistant Directorships, Ms. Marcum notes that: "[She has] said many time what [she is] about to say again: there is nothing permanent about this organizational structure." Exhibit 26, July 2, 2004 "Friday's News" from Deanna Marcum (attached). Moreover, in an e-mail dated August 4, 2004, from Mr. Wiggins to his staff, including Plaintiff, Mr. Wiggins explained that:

> Deanna has determined that she cannot agree to the assistant director positions being full time. Deanna stated that after experimenting with assistant directors in collateral roles for awhile, we can later evaluate its effectiveness.

Exhibit 27, Aug. 4, 2004 e-mail from Beacher Wiggins (attached).  Thus, there is ample evidence

in the record that the Assistant Director duties were not permanent, and the removal of temporary

entitlement does not constitute an adverse employment action.  Forkkio v. Tanoue, 131 F. Supp.

2d. 36, 42 (D.D.C. 2001).

Even assuming Plaintiff's return to her permanent position of record constitutes an

adverse employment action, Plaintiff cannot establish a causal connection between her March 15,

2005, letter and the Library's decision to abolish the Assistant Directorships.  To establish a

prima facie case of retaliation a plaintiff must show a causal connection between the protected

activity and the adverse action.  Paquin v. Fed. Nat'l Mtg. Ass'n, 199 F.3d 23, 31-32 (D.C. Cir.

1997).  In the instant matter, the record contains abundant and uncontroverted evidence that

Defendant had a legitimate reason for rejecting Plaintiff's demand that she be paid at the Senior

Level pay grade.  When the Library received Plaintiff's March 15, 2005, letter Ms. Marcum was

presented by the Library's Associate General Counsel with three legitimate options to address

Plaintiff's complaint:  1) return Plaintiff to her permanent position as Chief of the ASCD and

allow Mr. Herman and Mr. Dimunation to continue to perform the Assistant Director collateral

duties; 2) create a permanent position for Plaintiff at the SL pay grade; or 3) end the Assistant

Director collateral duties for Plaintiff, Mr. Dimunation and Mr. Herman.[10]  Ms. Marcum weighed

---

[10] Plaintiff's own expert concedes that the options presented by the Library's Associate General
Counsel were legitimate options that a federal agency has at its disposal when confronted with an
employee requesting an upgrade.  See Dkt. 26, Ex. 22, Perloff Depo. at 40-41:17; 45:11-18.
Accordingly, these three options are not merely "window-dressing"- but are legal and non-
discriminatory.  Indeed, were the Court to adopt Plaintiff's theory, then a federal agency would have no
choice but to immediately upgrade any employee who complains about performing higher-graded duties
to avoid liability for retaliation.  This would yield an absurd result - a result that was clearly neither
intended nor compelled by Title VII.  Abolishing the assistant directorships is a logical response to the
problem Plaintiff identified, and Plaintiff's characterization of this as so "drastic" so as to amount to
evidence of "consciousness of guilt" is absurd.  Even at the pleading stage, the Court must only accept as

the three options but because of budgetary constraints - a concern voiced by Ms. Marcum

consistently since shortly after her appointment as Associate Librarian for Library Services - she

decided that the most viable option was to eliminate the Assistant Director duties.  Ms.

Marcum's decision was perfectly legitimate since she had already before made it clear that

budgetary constraints made it unfeasible to upgrade Plaintiff (or any other Library Services

employee).[11]

Plaintiff asserts that there is little evidence in the record that budgetary constraints

prevented Defendant from promoting Plaintiff to the Senior Level pay grade.  Pl.'s Opp. at 38-

40.  However, Plaintiff cannot point to any evidence which contradicts the Library's legitimate

reasons for returning her exclusively to the duties of her permanent position.  To the contrary, as

---

true the well-pleaded facts put forth by Plaintiff, and is not bound by her characterization.  See Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); Kivanc v. Ramsey, 407 F. Supp. 2d 270, 277 (D.D.C. 2006).  The burden on a party opposing summary judgment is to come forward with evidence.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ("a party who fails to make a showing sufficient to establish the existence of an element essential to establish that party's case, and on which that party will bear the burden at trial" cannot withstand a motion for summary judgment).  Other than dissatisfaction of the affected employees, there is no evidence in the record to assess the impact of the change, and the subjective responses of the employees is not probative of discrimination.  "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'"  Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)); Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996); cf. McCormick v. District of Columbia, 554 F. Supp. 640, 646 (D.D.C. 1982).  Proof of intentional discrimination is critical.  See Smith v. City of Jackson, Miss., 544 U.S. 228, 248 (2007) (citing Teamsters v. United States, 431 U.S. 324, 335-36, n.15 (1977))  (O'Connor, J., concurring); Anderson v. Zubieta, 180 F.3d 329, 338 (D.C. Cir. 1999) (also quoting Teamsters).

[11] Thus, because Ms. Marcum concluded that an upgrade of Plaintiff's position was not warranted due to budgetary constraints and because she did not want to add any additional Senior Level positions, Plaintiff's demand that she be promoted to the Senior Level was determined by Ms. Marcum to be "unreasonable."  See Paquin, supra, at 31-32 ("an employee would be unable to establish the necessary causal connection to make out a retaliation claim unless the employee took an adverse action because of the employee's protected activity and not for some legitimate reason - such as rejecting the employee's demand because it is unreasonable.") (emphasis in original).

delineated above (pages 7-10) the record is *replete* with evidence of the serious budgetary issues faced by Ms. Marcum and the Library as a whole.

More importantly, Plaintiff was well aware of Ms. Marcum's stance against any upgrade of Plaintiff's (or any other GS-15 positions) to the Senior Level long before Plaintiff sent her March 2005, complaint letter to the Librarian. Specifically, Plaintiff's own notes dated February 15, 2005, state that:

> [Plaintiff] spoke with Beacher Wiggins about the status of [her] position description, which is still with Deanna Marcum. He said that Deanna has not forwarded it to Human Resources because of the addition to the salaries base and because Library Services has too many Senior Level staff. [Plaintiff] asked him if he thought Deanna was aware of the Equal Pay Act issue. He said that no, he didn't think so. He had not raised it with [Deanna] because [Plaintiff] asked him not to.

Exhibit 28, "Equal Pay Act notes" (attached).

Thus, it is illogical for Plaintiff to now argue that Ms. Marcum's March 2005 decision to eliminate the Assistant Director duties was retaliatory inasmuch as Ms. Marcum had already (in February 2005) made a decision about upgrading Plaintiff's position to the Senior Level pay grade **a month** before Plaintiff sent her complaint letter to the Librarian. Plaintiff is unable to satisfy the causation element of a retaliation claim. Practically, "[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2d Cir.), cert. denied, 534 U.S. 951 (2001).[12]

---

[12] See also Roberts v. Segal Co., 125 F.Supp.2d 545, 550 (D.D.C. 2000) ("Given plaintiff's admission that the offensive behavior preceded her October 3 complaint of race discrimination, it is illogical to conclude that there was a causal connection between the alleged retaliation and her protected activity."); Bermudez v. TRC Holdings, Inc., 138 F.3d 1176, 1178 (7th Cir. 1998) ("Timing may be an important clue to causation ... but does not eliminate the need to show causation") (internal citation

Moreover, Plaintiff's own notes reveal that Ms. Marcum was unaware that Plaintiff felt her pay was discriminatory because Plaintiff, herself, had instructed Mr. Wiggins not to share that information with Ms. Marcum. Therefore, the Library has presented ample evidence that it had legitimate and non-discriminatory reasons for its decision to remove the collateral Assistant Director duties from Mr. Dimunation, Mr. Herman and Plaintiff. Moreover, Plaintiff has presented no evidence to refute or infer that the Library's reasons for terminating these duties was a pretext for retaliation. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim of retaliation.

### III. CONCLUSION

The undisputed material facts demonstrate that, as a matter of law, Plaintiff's claims must fail. Accordingly, for the reasons set forth above, and those set forth in Defendant's prior motion, summary judgment should be granted to Defendant.

Dated:  December 28, 2007.

Respectfully submitted,

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____

omitted).

-19-

/s/
_____
JANE M. LYONS, D.C. Bar # 451737
Assistant United States Attorney
555 4th Street, N.W - Room E4822.
Washington, D.C.  20530
(202) 514-7161
(202) 514-8780 (facsimile)

Of Counsel:
Julia Douds, Assistant General Counsel
Evelio Rubliella, Assistant General Counsel
Office of General Counsel, Library of Congress