## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDITH A. MANSFIELD, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: 05-1790 (RMU) |
| | : | |
| v. | : | Document Nos.: 23, 25 |
| | : | |
| JAMES H. BILLINGTON, | : | |
| Librarian of Congress, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

### Granting in Part and Denying in Part the Defendant's Motion for Summary Judgment and  Denying the Plaintiff's Motion for Partial Summary Judgment

## I.  INTRODUCTION

This employment discrimination case comes before the court on the plaintiff's motion for partial summary judgment and the defendant's cross motion for summary judgment.  The plaintiff, Judith Mansfield, initiated this action against the defendant, the Librarian of Congress James H. Billington, alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-16(a)[1], and for retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).  Specifically, the plaintiff alleges that the defendant has paid her a salary less than that paid to male employees who performed the same duties and that the defendant retaliated against her after she requested commensurate pay.  Because the plaintiff has not met her burden of demonstrating that the defendant's non-discriminatory justifications are pretextual, the court grants in part the defendant's motion for summary judgment as to her discrimination claim.  Although the plaintiff has made a showing sufficient to survive the defendant's motion as

---

[1]     Although the plaintiff references 42 U.S.C. § 2000e-5(f) in her complaint, the court construes the plaintiff's claims as being pursuant to 42 U.S.C. § 2000e-16(a), the appropriate provision for federal employees.

to her retaliation claim, she fails to demonstrate that the defendant was motivated by retaliation. Therefore, the court denies both the plaintiff's motion for partial summary judgment and the defendant's motion as to this count.

## II.   BACKGROUND

### A.   Factual History [2]

### 1.   Chief of Arts and Sciences Cataloging Division (1998-present)

The plaintiff began working for the Library of Congress ("the Library"), on July 1, 1969. Pl.'s Opp'n to Def.'s Mot. for Summ. J. & Reply in Support of Pl.'s Mot. for Partial Summ. J. ("Pl.'s Opp'n"), Ex. 4. ("Mansfield Dep.") 12:8-9.  In 1998, the plaintiff's supervisor, Beacher Wiggins selected the plaintiff to become the Chief of the Arts and Sciences Cataloging Division ("Chief"), for which she was compensated at a pay grade of GS-15.  Mansfield Dep. 71:14-21. Wiggins remained the plaintiff's supervisor during the relevant periods.  Def.'s Opp'n and Cross-Mot. for Summ. J. ("Def.'s Mot."), Ex. 4. ("Wiggins Dep.") 7:20-8:1-2.  As Chief, the plaintiff supervised seventy-five employees, oversaw the cataloging division and managed a budget of $4,400,000.  Pl.'s Opp'n at 34.  While the plaintiff served as Chief, women filled three of the eight other chief cataloging positions.  Mansfield Dep. 98:18-99:1-6.  Two of these women received compensation at the Senior Level ("SL") beginning in 1992 and 1994, respectively, *id.* at 109:17-110:1, and the remaining six received GS-15 level compensation, Def.'s Mot. at 5 n.3.

Sometime before 2003, Wiggins requested that all GS-15 cataloging chiefs receive a pay upgrade.  Def.'s Mot. at 5.  Because of Wiggins' request, Human Resource Services ("HRS") hired a private contractor classifier ("the classifier") to review the classification of all of the

---

[2]      Unless expressly noted, the stated facts are undisputed.

cataloging chiefs.  *Id.*  The classifier recommended that three of the positions, including the plaintiff's, receive an SL designation.  *Id.*

During the time of the contractor's review in August of 2003, the Library appointed Deanna Marcum as the new Associate Librarian for Library Services.  *Id.*  But, Marcum refused to follow the classifier's recommendations and expressed a desire to examine the organizational structure of the Library instead of addressing job classifications on an individual basis.  Pl.'s Opp'n, Ex. 5. ("Marcum Dep.") 89:9-18.  Marcum also concluded that the Library's budget could not support the additional SL positions.  Def.'s Mot., Ex. 1 ("Marcum Decl.") ¶ 8. Marcum instructed Wiggins to have things "straightened out" if he believed that employees were performing duties that were "not reasonable given their position description;" this was "[his] job as a manager."  Marcum Dep. 89:9-18.  Marcum proceeded to spearhead a reorganization that focused on improving user services.  *Id*. 34:10-17.

### 2.  Acting Director for Cataloging (2002-2004)

In September of 2002, Wiggins appointed the plaintiff to serve as Acting Director of Cataloging ("Acting Director").  Wiggins Dep. 53:2-6.  In accordance with the Library's regulations, the plaintiff received a temporary promotion to SL for a period of 120 days. Wiggins Dep. 55:1-7; Def.'s Mot., Ex. 8 ("Library of Congress Regulations").  While Acting Director, the plaintiff was responsible for managing a budget of $40 million, a staff of five hundred employees and eight chiefs.  Mansfield Dep. 137:3-8.  Wiggins was satisfied with the plaintiff's job performance as Acting Director and kept her in this position beyond 120 days, but in accordance with the Library's regulations, the plaintiff's salary reverted to the GS-15 level after the 120-day period.  Wiggins Dep. 62:21-63:12; 69:6-7.  The plaintiff continued in this

capacity at the GS-15 level for approximately a year until February of 2004 when she received a second temporary promotion to the SL for a period of 120 days. *Id.* 69:7-17. The job responsibilities never changed for the period she was compensated at the GS-15 level. *Id.* 65:5-6.

In June of 2004, the plaintiff's second temporary promotion ended and the plaintiff's pay again returned to the GS-15 level. Pl.'s Opp'n at 3. As Acting Director, the plaintiff served as the immediate supervisor to John Byrum, Chief of the Regional and Cooperative Cataloging Division who held the position at the GS-16 pay grade since 1985. Def.'s Mot. at 17-19. In May of 1991, Byrum's pay grade was converted to the SL by the Federal Employees Pay Comparability Act of 1990. *Id.* at 19 n.10. The 2003 classification report conducted by HRS compared Byrum's position description with the plaintiff's and recommended that the plaintiff receive a pay upgrade to the SL. Def.'s Mot., Ex. 9.

In 1997, Wiggins applied for and later became Director of Cataloging. Wiggins Dep. 45:7-11. As a result, Wiggins received a pay upgrade to the SL. *Id.* at 48:16-18. Wiggins' job responsibilities did not change when he received this appointment. *Id.* at 49:16-20. In 2002, Wiggins assumed the acting duties of the Associate Librarian for Library Services. *Id.* 50:18-21.

### 3. Assistant Director of Bibliographic Access (2004-2005)

In September of 2004, as part of her reorganization plan, Marcum created five new directorates to oversee the operations of Library Services.[3] Def.'s Mot. at 6. Marcum assigned Wiggins the position of Director of Acquisitions and Bibliographic Access and gave him permission to temporarily create and assign collateral duties to employees. *Id.* Wiggins

---

[3]     The plaintiff disputes the date of Marcum's reorganization and argues that it began in July of 2004. Pl.'s Statement of Material Facts at Issue ("Pl.'s Statement") ¶ 15.

4

appointed the plaintiff to serve as Assistant Director of Bibliographic Access ("Assistant Director") on August 6, 2004. Def.'s Mot. at 6. The other Assistant Directors appointed alongside the plaintiff were Steve Herman as Assistant Director of Collections Management and Mark Dimunation as the Assistant Director for Special Collections and Services. *Id*. at 7. In a subsequent email sent by Wiggins to the newly appointed Assistant Directors, he mentioned that Marcum "could not agree to any assistant director positions being full-time" and that Marcum stated, "after experimenting with assistant directors in collateral roles for a while, we can later re-evaluate its effectiveness." Reply, Ex. 27. Despite these email communications, the plaintiff believed that her appointment as Assistant Director was not "acting" or "interim" based on a posting of the positions in the Annual Report of Congress. Pl.'s Opp'n at 41. The plaintiff contends that the Assistant Directors were never told that their positions were temporary. *Id.* at 42.

While Assistant Director, the plaintiff supervised a staff of over five hundred employees, supervised nine divisions, managed a budget of approximately $40 million and participated in Directors' Meetings. Pl.'s Opp'n at 19, 34. The plaintiff argues and the defendant disputes that her job responsibilities as Assistant Director were essentially the same as when she was Acting Director. *Id.* at 14.

Sometime after her appointment as Assistant Director, the plaintiff expressed dissatisfaction regarding her continued compensation at the GS-15 level. Wiggins Dep. 94:9-15. Believing that the plaintiff's job required the same level of skill, ability and responsibility as other SL managers within the Library, Wiggins spoke to Marcum and requested an upgrade of the plaintiff's salary to the SL. *Id.* at 90:6-12, 95:10-11. In response, Marcum referenced a

5

strained Library Services budget and stated that adding more SL positions might have a further

adverse impact on the budget. *Id.* at 95:12-19. Marcum in a newsletter dated March 5, 2004

wrote: "I think nearly everyone knows by now that the 2004 budget of LS [Library Services]

must be trimmed if we are to get through the year without a deficit, and the picture in 2005 is less

than cheerful." Reply, Ex. 24 at 052. Again, on March 12, 2004, Marcum sent a newsletter to

staff stating:

> Unfortunately, Library Services is already in a deficit situation in 2004, and the
> directors have worked hard to help me make decisions about ways to reduce this
> year's spending to balance our budget. I concluded that the non-[personnel] budget
> lines should be reduced in order to preserve staff lines.

*Id.*, Ex. 24 at 054. The Library had an annual budget of half a billion dollars and estimates the

cost of elevating the plaintiff to the SL to be between $8,000 to $13,000 per year. Pl.'s Opp'n at

8 & 41. Despite these budget constraints, Marcum received a signing bonus of $20,000 and two

retention bonuses, one for $30,000 and another for $32,000 since her 2003 hiring. Pl.'s Opp'n at

40.

The plaintiff worked alongside both Dimunation and Herman while she was Assistant

Director. Def.'s Mot. at 7. Dimunation became Chief of the Rare Book and Special Collections

Division within Library Services, an SL position in 1998, Def.'s Mot. at 28, and he remained in

this position at the time of the events giving rise to this action. Pl.'s Statement ¶ 75.

### 4.    Abolishment of the Assistant Director Positions

On March 16, 2005, the plaintiff submitted a letter to the defendant complaining that

while she served as Chief, Acting Director, and Assistant Director she performed senior level

duties but was compensated at the GS-15 level, despite her performance being consistently rated

as outstanding.  Pl.'s Opp'n at 2 & Ex. 25 ("Letter to Librarian").  Further, the plaintiff

mentioned that she directly supervised an SL male employee.  Letter to Librarian.  The plaintiff

stated that her pay was lower than that of male employees performing similar work and as a

result constituted continuing violations of the Equal Pay Act and Title VII.  *Id.*

Shortly after the defendant received the letter, Marcum met with the Associate General

Counsel for the Library, Jessie James.  Marcum Dep. 157:1-7.  At the meeting, James told

Marcum that there were three possible options available in response to the plaintiff's letter: (1)

abolish all the Assistant Director positions, (2) send the plaintiff back to her position as Chief

and leave Herman and Dimunation as Assistant Directors, or (3) create a position description for

an Assistant Director's duties, post them and allow the plaintiff to compete for the position.  *Id*.

at 158:8-22.

Marcum elected the first option.  *Id.* at 161:2-4.  She met with the directors of the recently

aligned directorates and explained to them that one of the Assistant Directors believed that the

arrangement was discriminatory and as a result it was best to eliminate those positions.  *Id.* at

162:8-16.  Marcum then separately met with Herman and Dimunation to inform them of her

intent to abolish the Assistant Director positions.  *Id.* at 171:13-172:18.  Marcum mentioned that

the action was in response to the plaintiff's letter.  *Id.*  On March 31, 2005, Marcum informed the

plaintiff that her Assistant Director position was abolished.  Pl.'s Opp'n, Ex.8; Compl. ¶ 26.  The

plaintiff subsequently resumed her full-time duties as Chief, Pl.'s Statement ¶ 90, and on April

18, 2005, submitted a formal complaint to the Library's Equal Employment and Opportunity Complaints Office ("EEOCO"),[4] Compl. ¶ 4.

### B.  Procedural History

On September 9, 2005, the plaintiff filed suit under the Equal Pay Act, 29 U.S.C. § 201 and Title VII for gender discrimination and retaliation.  The plaintiff later transferred her Equal Pay Act claim to the United States Court of Federal Claims.  Pl.'s Opp'n at 5.  Shortly thereafter, the parties reached a settlement agreement regarding the plaintiff's Equal Pay Act claim.[5]

On December 15, 2005, the defendant filed a motion to dismiss or in the alternative for summary judgment as to the plaintiff's Title VII gender discrimination and retaliation claims, as well as to the EPA retaliation claims.  This court denied the motion in part but granted the defendant's request to dismiss the EPA retaliation claims.  *Mansfield v. Billington*, 432 F. Supp. 2d 64, 75 (D.D.C. 2006).

---

[4]     This court in a memorandum opinion issued June 1, 2006 concluded that the plaintiff had exhausted her administrative remedies with respect to her gender discrimination claim. *Mansfield v. Billington,* 432 F. Supp. 2d 64, 70 (D.D.C. 2006).

[5]     The plaintiff alleges that the settlement agreement stipulates that the plaintiff can no longer seek relief for back pay damages under Title VII from September 22, 2002 to April 30, 2005. Pl.'s Opp'n at 6.  The plaintiff states that she is only seeking "economic damages from May 2005 to the present" and "compensatory damages[] from February 23, 2005 through the present."  *Id.* at 13 n.4.  The court cannot agree that the parties' settlement agreement states that the plaintiff settled her Title VII back pay and liquidated damages claims from September 22, 2002 to April 30, 2005.  But her claims under Title VII for the same time period are nonetheless precluded.  While a plaintiff can pursue claims under both the Equal Pay Act and Title VII, a plaintiff cannot receive overlapping remedies for the same wrong. *Stewart v. Thomas*, 538 F. Supp. 891, 896 (D.D.C. 1982).  It follows then that the remaining back pay claims relate to the plaintiff's permanent position as Chief and the plaintiff's alleged unlawful termination as Assistant Director.  As a result, the court will not address the defendant's argument that the plaintiff's claims for back pay while Acting Director are time-barred due to the fact that the settlement agreement renders this point moot.

On September 20, 2007, the plaintiff filed a motion for partial summary judgment on the Title VII retaliation claim alleging that the defendant removed her from her position as Assistant Director because she engaged in protected activity.  Pl.'s Mot. for Partial Summ. J. ("Pl.'s Mot.").  The defendant responded by filing a cross motion for summary judgment on both the Title VII gender discrimination and retaliation claims.  Def.'s Mot.  The court now turns to assess the merit of these competing claims.

### III.  ANALYSIS

#### A.    Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion

for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

**B.    The Court Grants in Part the Defendant's Motion for Summary Judgment**

The defendant moves for summary judgment on the grounds that the plaintiff fails to make out a prima facie case of gender discrimination and fails to demonstrate that the defendant's legitimate nondiscriminatory reasons for refusing to pay the plaintiff a higher salary are a pretext for discrimination. Def.'s Mot. at 26, 30. Because the plaintiff cannot establish that

the defendant's actions were pretextual, the court grants this portion of the defendant's motion

for summary judgment.

### 1.    Legal Standard for a Sex-Discrimination Claim

Generally, to prevail on a claim of sex discrimination under Title VII, a plaintiff must

follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas*

framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court

explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a
> prima facie case of discrimination. Second, if the plaintiff succeeds in proving the
> prima facie case, the burden shifts to the defendant "to articulate some legitimate,
> nondiscriminatory reason for the employee's rejection" . . . . Third, should the
> defendant carry this burden, the plaintiff must then have an opportunity to prove by
> a preponderance of the evidence that the legitimate reasons offered by the defendant
> were not its true reasons, but were a pretext for discrimination . . . . The ultimate
> burden of persuading the trier of fact that the defendant intentionally discriminated
> against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted)

(quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of sex discrimination, the plaintiff must show that (1) he is

a member of a protected class; (2) he was similarly situated to an employee who was not a

member of the protected class; and (3) he and the similarly situated employee were treated

disparately. *Holbrook v. Reno*, 196 F.3d 255, 261 (D.C. Cir. 1999). "The burden of establishing

a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the

plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully

discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must

articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not

persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, '[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted); *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting that "the prima facie case is a largely unnecessary sideshow"). The district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady*, 520 F.3d at 494. The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

12

**2.    The Defendant had Legitimate Non-Discriminatory Reasons for Not Paying the Plaintiff at the Senior Level** [6]

The defendant explains that the Library failed to increase the plaintiff's salary because it was concerned about the "impact that the recommended upgrades would have" and that "budgetary constraints and the ongoing reorganization of Library Services" disfavored approving the plaintiff's pay increase.  Marcum Dep. 89:9-18; Wiggins Dep. 95:12-19.  The record supports the defendant's assertions.  The plaintiff's supervisor, Wiggins, first requested in 2003 that she receive a pay grade increase to the SL.  Def.'s Mot. at 5.  Marcum refused to increase the plaintiff's salary out of a desire to wait for the completion of the Library reorganization.  Marcum Dep. 89:9-18.  This reorganization began in either July or September of 2004, Pl.'s Statement ¶ 15; Def.'s Mot. at 6, and the plaintiff does not argue that the defendant's decision to wait until after a reorganization to consider the plaintiff's salary targeted the plaintiff specifically on account of her gender.  In fact, Marcum's refusal to honor the findings of the contract classifier review affected not only the plaintiff but also another male chief who was receiving pay at the GS-15 level.  Mansfield Dep. 129:2-7.  In addition, Marcum instructed Wiggins that if any of his employees were performing duties higher than their pay grades this was to be "straightened out."  Marcum Dep. 89:9-18.

In 2004, shortly after the plaintiff was appointed Assistant Director, the plaintiff's supervisor again requested that she receive an upgrade to the SL.  Wiggins Dep. 97:12-18.  This time the Associate Librarian refused because the Library faced budgetary constraints.  And again,

---

[6]    The court declines the opportunity to adopt the defendant's argument that under *United States v. Testan*, 424 U.S. 392, 403 (1976), the plaintiff is only entitled to the pay of her permanent position even if she performs higher graded duties.  Def.'s Mot at 31.  The *Testan* case involved claims under the Classification Act and the Back Pay Act, and no court has expressly adopted this rule in Title VII cases.

ample evidence in the record supports this rationale.  Beginning in April of 2003, the Librarian of

Congress testified before a Senate Appropriations Committee requesting funding of "mandatory

pay raises and unavoidable pay increases."  Reply, Ex. 23 at 057.  In March of 2004, the

Associate Librarian on two occasions sent the staff newsletters which mentioned that the Library

faced a budgetary deficit for 2004 and that to avoid further strain, spending would have to be

reduced.  *Id.*, Ex. 24 at 052, 054.

     In addition, Marcum testified that she had two primary concerns regarding upgrading the

plaintiff.  Marcum Dep. 217:6-7.  First, Wiggins had hired sixty-four new people to serve as

catalogers without a budget increase.  *Id.* 217: 9-16.  Second, Wiggins had also upgraded all the

catalogers.  *Id.*  As a result of these pressures, Marcum had to consider ways to cut nonpersonnel

budget items.  *Id.*; *see Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998) (holding that

budgetary constraints are a legitimate reason to reduce a workforce); *see also Globus v. Skinner*,

721 F. Supp. 329, 335 (D.D.C. 1989) *aff'd*, 1990 WL 123927, at *1 (D.C. Cir. Aug. 13, 1990)

(ruling that budgetary constraints are a legitimate reason to terminate an employee).

     The defendant's ample evidence of the Library's budgetary constraints satisfies its burden

to proffer a legitimate non-discriminatory reason for denying the plaintiff a pay increase.  *See*

*Siragy v. Georgetown Univ.*, 1999 WL 767831, at *1-6 (D.D.C. Aug. 20, 1999); *Hatcher-Capers*

*v. Haley,* 786 F. Supp. 1054, 1061 (D.D.C. 1992) (noting that budgetary concerns are a legitimate

priority).  The court does not assess the credibility of the defendant's explanation.  *Reeves v.*

*Sanderson Plumbing Prods.*, *Inc.* 530 U.S. 133, 142 (2000) (explaining that the defendant's

burden is one of production, not persuasion); *see also Fischbach v. D.C. Dep't of Corrections*, 86

F.3d 1180, 1183 (D.C. Cir. 1996) (stating that the court must not review "the correctness or

desirability of the reasons offered but whether the employer honestly believes in the reasons it offers" (alterations and internal quotation marks omitted)). And, in the "absence of discrimination" it will not substitute its business judgment for that of the defendant. *See Stacey v. Allied Stores Corp.*, 768 F.2d 402, 408 (D.C. Cir. 1985) (quoting *Parcinksi v. Outlet Co.*, 673 F.2d 34, 37 (2d. Cir. 1982)). Therefore, the court now turns to whether the plaintiff has demonstrated that this reason is a pretext for discrimination.

### 3. The Plaintiff Fails to Demonstrate Pretext

To successfully undermine the defendant's argument as a pretext for discrimination, the plaintiff must demonstrate "*both* that the reason [for not increasing her salary] was false *and* that discrimination . . . was the real reason." *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (D.C. Cir. 2007)). The plaintiff is unable to meet either burden.

The plaintiff argues that the defendant's reasons are pretextual and that the real reason the defendant denied the plaintiff a pay increase was because of her sex. Pl.'s Opp'n at 38. The parties do not dispute that the Library's budget was over half a billion dollars and that the Associate Librarian received a signing bonus and two retention bonuses during the time the plaintiff performed SL duties for over two years. *Id.* at 40. To the plaintiff, this proves that the Library budget could have "easily and comfortably absorbed the costs of the plaintiff's promotion to SL pay." *Id.* Finally, the plaintiff alleges that her position as Assistant Director was not temporary and that she was not limited to only receiving the pay from her permanent position as Chief.[7] *Id.* at 41.

---

[7]     Also, the plaintiff argues in a conclusory fashion that the reorganization of Library Services was another act to legitimize its refusal to give the plaintiff an upgrade. Pl.'s Opp'n at 41-43. She

The plaintiff has offered nothing to suggest that the Library was not, in fact, experiencing budgetary constraints. But even assuming *arguendo* that she could demonstrate that this rationale is false, she is still unable to demonstrate that the real reason the Library refused to upgrade her salary was because of her sex. In fact, the record reflects that the defendant also denied another male chief an upgrade from the GS-15 to the SL level along with the plaintiff. Mansfield Dep. 129:2-7. Further, at the time that the plaintiff was Acting Director, three of the eight cataloging chiefs, not including the plaintiff, were women, and two of the three women were paid at the SL. Def.'s Mot. at 5 n.3.

The plaintiff presents no facts which show that any employees similarly situated to her, either outside or inside the plaintiff's protected class, were promoted or given pay raises to the SL after her supervisor requested in 2003 that she receive one. *See George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005) (illustrating that a plaintiff can establish a defendant's discriminatory motive by demonstrating that she was treated differently than similarly situated employees). Two employees are similarly situated when "all of the relevant aspects of [their] employment situation[s] were 'nearly identical'" at the time of the disputed events. *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995) (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)). The plaintiff argues that with regard to her Director for Bibliographic Access and Director for Cataloging positions she and Wiggins were similarly-situated and treated differently. Pl.'s Opp'n at 15-16. But, Wiggins'

---

attempts to substantiate this argument with testimony that the individuals serving as Assistant Directors did not believe that their positions were temporary. *Id*. But, the plaintiff nowhere argues, much less presents supporting facts, as to how the reorganization of Library Services serves to disguise a motive for sex discrimination against her. This argument, accordingly, does not factor into the court's analysis.

16

permanent position was classified as SL while the plaintiff's permanent position was a GS-15,

and he served as the plaintiff's supervisor while she was in the acting director position.  Wiggins

Dep. 48:16-18; Def.'s Mot. at 6-7.  Thus, the plaintiff cannot argue that the relevant aspects of

her and Wiggins' employment at the time of the disputed events were nearly identical in material

respects.  *Neuren*, 43 F.3d at 1514.

Similarly, the plaintiff states that she was treated differently than Dimunation and

Herman while the three served as Assistant Directors.  Pl.'s Opp'n at 16-20.  As the defendant

highlights, Dimunation and Herman worked in a different directorate and under different

supervision than the plaintiff.  Def.'s Mot. at 27.  And, each man was in a designated SL

position.  *Id*. at 27-28.  Therefore, these allegations fail to demonstrate that the defendant treated

the plaintiff differently than a similarly-situated employee outside her class or that the defendant

acted with a discriminatory intent.  *Wiley v. Glassman*, 511 F.3d 151, 157 (D.C. Cir. 2007)

(explaining that the plaintiff was not similarly-situated to another employee whose

responsibilities had grown to exceed those of the plaintiff at the time the other employee was

promoted).

Quite simply, the plaintiff does not allege any facts which could support an inference of

discrimination based on her gender.  *See Turner v. District of Columbia*, 383 F. Supp. 2d 157,

170 (D.D.C. 2005) (holding that a plaintiff could not demonstrate that her employer's decision to

under staff a clinic was related to her national origin and not something peculiar to the work

environs).  Because the plaintiff cannot demonstrate that the defendant's explanation is false or

that the real reason for the defendant's actions was sex discrimination, the court awards the

defendant summary judgment as to the plaintiff's discrimination claims while she served as Chief and Assistant Director.

### C.    The Court Denies Both Parties' Motions for Summary Judgment as to the Plaintiff's Retaliation Claim

The plaintiff and the defendant both move for summary judgment as to the retaliation claim.  In this claim, the plaintiff asserts that the defendant retaliated against her for engaging in protected EEOC activity by terminating her position as Assistant Director.  Marcum Dep. 161:2-4.  The defendant argues that the plaintiff cannot demonstrate she suffered an adverse employment action because she did not lose her job but was merely returned from the temporary Assistant Director position to her permanent position as Chief.  Def.'s Mot. at 33.  Further, the defendant argues that the plaintiff cannot establish a causal connection between her letter and its decision to "remove her collateral Assistant Director duties and return[] her to her permanent position." *Id*.

The court concludes that the plaintiff has made a showing sufficient to survive the defendant's motion for summary judgment and denies that motion.  But, whether the defendant acted with a discriminatory animus in this instance is a jury question, and so the court also denies the plaintiff's motion for summary judgment as to this claim.

### 1.    Legal Standard for a Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow the *McDonnell Douglas* framework.  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell*

*Douglas* framework to a Rehabilitation Act retaliation claim).  The Supreme Court explained the

framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a
> prima facie case of [retaliation].  Second, if the plaintiff succeeds in proving the
> prima facie case, the burden shifts to the defendant "to articulate some legitimate,
> [non-retaliatory] reason for the employee's rejection" . . . .  Third, should the
> defendant carry this burden, the plaintiff must then have an opportunity to prove by
> a preponderance of the evidence that the legitimate reasons offered by the defendant
> were not its true reasons, but were a pretext for [retaliation] . . . .  The ultimate
> burden of persuading the trier of fact that the defendant intentionally [retaliated]
> against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted)

(quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in

a statutorily protected activity, (2) a reasonable employee would have found the challenged

action materially adverse, and (3) there existed a causal connection between the protected activity

and the materially adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405,

2415-16 (2006); *see also Scott v. Kempthorne*, 2006 WL 1980219, at *3 (10th Cir. July 17,

2006).  The plaintiff's burden is not great: he "merely needs to establish facts adequate to permit

an inference of retaliatory motive."  *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

If the employer successfully presents a legitimate, non-retaliatory reason for its actions,

"the presumption raised by the prima facie is rebutted and drops from the case."  *St. Mary's

Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993) (internal citation omitted); *Brady v. Office of the

Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008) (noting

that "the prima facie case is a largely unnecessary sideshow").  Upon such a showing by the

defendant, the district court need resolve only one question: "Has the employee produced

19

sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee on the basis of race, color, religion, sex, or national origin?"  *Brady*, 520 F.3d at 494. In other words, did the plaintiff "show *both* that the reason was false, *and* that . . . [retaliation] was the real reason."  *Weber*, 494 F.3d at 186 (alterations in original and internal quotations omitted) (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 515).  The court must consider whether the jury could "infer [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual."  *Smith v. District of Columbia*, 430 F.3d 450, 455 (2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)).  The court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case.  *Aka*, 156 F.3d at 1291.

The strength of the plaintiff's prima facie case, especially the existence of a causal connection, can be a significant factor in his attempt to rebut the defendant's legitimate non-discriminatory reason for the adverse action.  *See Aka*, 156 F.3d at 1289 n.4 (stating that "a *prima facie* case that strongly suggests intentional discrimination may be enough by itself to survive summary judgment"); *Laurent v. Bureau of Rehab., Inc.*, 544 F. Supp. 2d 17, 23 n.5 (D.D.C. 2008) (holding that the plaintiff cannot establish pretext because "she is unable to show any causal connection"); *Meadows v. Mukasey*, 2008 WL 2211434, at *5-6 (D.D.C. May 29, 2008) (holding that the plaintiff demonstrated pretext in part by establishing a causal connection).  The plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after

20

that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a 20-month period suggests "no causality at all").

## 2.    The Plaintiff Did Suffer an Adverse Action

The plaintiff's first obstacle in establishing a prima facie case for retaliation is to demonstrate that a reasonable employee would have found the challenged action to be materially adverse. *Burlington*, 548 U.S. at 68.  The challenged action must be such that it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662 (7th Cir. 2005)).

Although reassignment per se does not constitute an adverse action, this Circuit has held that removing an employee from a supervisory role as well as reassigning her to vastly different responsibilities constitute adverse actions sufficient to survive a motion for summary judgment. *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (internal citations omitted).  The reassigned job should be evaluated under the totality of the circumstances with particular attention given to whether the task is more "arduous," "dirtier" or less prestigious than the previous job. *Burlington*, 548 U.S. at 68.

The defendant claims that the plaintiff has not suffered an adverse action because she was removed from a temporary position, foreclosing her claims pursuant to *Forkkio v. Tanoue*, 131 F. Supp. 2d 36, 42 (D.D.C. 2001).  Def.'s Mot. at 34.  But this argument is not compelling.  In *Forkkio*, the plaintiff was temporarily promoted to a GS-15 position as section chief. *Id.* at 45.

The position later expired "by its terms," and the plaintiff reverted to his permanent GS-14 position. *Id.* In addition, the plaintiff in that case experienced neither a reduction of salary nor a reduction of job responsibilities when he reverted to his permanent position. *Id.* at 37. *Forkkio*, therefore, stands in contrast to the case at bar.

First, the plaintiff's position as Assistant Director did not expire by its own terms. In fact, undisputed testimony in the record reveals that all the temporary positions were abolished due to the plaintiff's letter. Marcum Dep. 171:13-172:18. Second, the plaintiff's reassignment to her permanent position did constitute a diminution in responsibilities. The plaintiff has demonstrated that when she was removed as Assistant Director she lost many of her supervisory duties. For example, after her removal, she supervised a staff of seventy-five rather than a staff of approximately five hundred. Pl.'s Opp'n at 34. The plaintiff lost her privilege to attend Directors' meetings. *Id.* She also went from supervising nine divisions as Assistant Director to supervising one division as Chief, and the size of the budget for which she was responsible shrank from $40 million to $4.4 million. *Id.* Finally, there is no dispute that the plaintiff's permanent position as Chief occupied a lower rung in the Library's hierarchical ladder than her temporary Assistant Director position. Def.'s Statement at 12.

With respect to material adversity, the court concludes that the abolishment of an employment position subsequent to a letter requesting commensurate pay could dissuade a reasonable employee from making or supporting a charge of discrimination. *See Patterson v. Johnson*, 505 F.3d 1296, 1299 (D.C. Cir. 2007) (holding that a reasonable employee could be dissuaded from pursuing a charge of discrimination if his supervisory responsibilities were diminished) (internal citations omitted); *see also Weber*, 494 F.3d at 186 (ruling that the loss of a

financial award or an award of leave could dissuade a reasonable person from making or

supporting a charge of discrimination) (internal citations omitted).[8]

### 3.    The Defendant Provides a Legitimate Non-Retaliatory Reason for Terminating the Plaintiff's Assistant Director Position

The next inquiry is whether the defendant offers a legitimate non-retaliatory justification

for the adverse action. *Holbrook*, 196 F.3d at 263. The defendant argues that it removed the

plaintiff from her position because valid non-retaliatory reasons existed for refusing to increase

her salary to the SL. Def.'s Mot. at 34. Specifically, the Library's budget would not allow for

the plaintiff's promotion, *id*. at 36-37, and the most equitable response to the plaintiff's letter was

to eliminate all three temporary Assistant Director positions, *id*. at 35-36. As the court has

already stated, budgetary concerns have long been recognized as a valid cause for employment

decisions, and the court will not otherwise question the business decisions of the defendant.[9] *See*

*supra*, p.15.

### 4.    A Reasonable Jury Could Conclude that the Defendant was Motivated by Retaliation

For the plaintiff to succeed on her motion for summary judgment, she must show that she

is entitled to judgment as a matter of law, *i.e.*, that the defendant intended to retaliate against her

by returning her to her permanent position. *Hamilton v. Paulson*, 542 F. Supp. 2d 37, 57 (D.D.C.

2008) (quoting *Holcomb*, 433 F.3d at 901). But, for her merely to defeat the defendant's motion

for summary judgment, the court must only conclude that "a reasonable jury could infer

---

[8]    The defendant fails to contest whether a reasonable employee in the plaintiff's position would have been dissuaded from coming forward with these allegations of discrimination.

[9]    In addition, the defendant argues that all of the options presented by its counsel were legitimate ways to respond to the plaintiff's letter, Reply at 16 n.16, but the court not does not find the defendant's consultation of counsel compelling, *see Zervas v. District of Columbia*, 1992 WL 232089, *1; *2 n.7 (D.D.C. July 10, 1992) (holding that the involvement of counsel does not weaken or strengthen the inference of retaliation).

23

intentional [retaliation] from the plaintiff's prima facie case and any other evidence the plaintiff offers to show that the actions were [retaliatory] or that the non-[retaliatory] justification was pretextual." *Mills v. Winter*, 540 F. Supp. 2d 178, 186 (D.D.C. 2008) (citing cases). Regarding the plaintiff's motion and drawing all reasonable inferences in favor of the defendant, a reasonable jury could find that the defendant was merely taking steps to reduce budget constraints and to avoid future issues created by the temporary positions. The court accordingly denies the plaintiff's motion.

On the other hand, and as relevant to defeat the defendant's motion, the jury could also reasonably conclude that the temporal correlation between the plaintiff's letter and the termination of the positions, combined with Marcum's testimony that she terminated the positions in direct response to the plaintiff's letter, proves that the defendant intended to retaliate against the plaintiff for engaging in protected activity. Because either inference is possible, the issue is one for a jury. *Jackson v. Gonzalez*, 496 F.3d 703, 707 (D.C. Cir. 2007) (stating that a plaintiff may survive a motion for summary judgment by proving that a reasonable jury could infer that the employer's given explanation was pretextual and given to shield improper motives) (citing *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)). The court, therefore, also denies the defendant's motion as to the retaliation claim.

## IV.   CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's

motion for summary judgment, and denies the plaintiff's motion for partial summary judgment.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued

this 3rd day of September, 2008.


RICARDO M. URBINA
United States District Judge


25