**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| JUDITH A. MANSFIELD, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 05-1790 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 36 |
| | : | | |
| JAMES H. BILLINGTON, | : | | |
| Librarian of Congress, | : | | |
| Library of Congress, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING THE PLAINTIFF'S MOTION FOR RELIEF UPON RECONSIDERATION**

## I. INTRODUCTION

The plaintiff, an employee at the Library of Congress, originally brought this action alleging gender discrimination under Title VII of the Civil Rights Act of 1694 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., and retaliation under Title VII and the Equal Pay Act ("EPA"), 42 U.S.C. §§ 206 *et seq*. At the time the plaintiff filed the instant motion, her only remaining claim was for retaliation under Title VII. The plaintiff is, however, asking the court for relief upon reconsideration of its decision dismissing her retaliation claim under the EPA. Because recent case law suggests a shift toward broadening the interpretation of statutory anti-retaliation provisions, the court grants the plaintiff's motion and reinstates her retaliation claim under the EPA.

## II.   FACTUAL & PROCEDURAL BACKGROUND[1]

The plaintiff has been employed at the Library of Congress since 1969.  Mem. Op. (Sept. 3, 2008) at 2.  In September 2002 and February 2004, the defendant temporarily designated the plaintiff Acting Director for Cataloging and increased her pay level from GS-15 to the Senior Level.  *Id*. at 3-4.  During both of these periods, the plaintiff received less pay than her male predecessor and other male employees performing similar duties.  *Id*. ¶ 16.

In August 2004 the defendant appointed the plaintiff to one of three Assistant Director positions.  *Id*. ¶ 22.  Male employees filled the other two positions, though they received pay at the Senior Level, while the plaintiff was paid at the GS-15 level.  *Id*. ¶¶ 22-23.  Between October 2004 and March 2005, the plaintiff had several conversations with her supervisor about the pay difference and requested compensation at a level commensurate with that of her male counterparts.  *Id*. ¶ 24.  On March 15, 2005, the plaintiff hand delivered a letter to the defendant alleging that her pay violated the law and again requesting compensation equal to that of her male peers.  *Id.* ¶ 25.  On March 31, 2005, the defendant informed the plaintiff that it planned to abolish her position, along with the other two Assistant Director positions.  *Id*. ¶ 26.

The plaintiff filed her complaint on September 9, 2005.  *See* Compl.  On June 1, 2006, the court dismissed the plaintiff's retaliation claim under the EPA.  Mem. Op. (June 1, 2006) at 12-15.  On September 3, 2008, the court dismissed the plaintiff's Title VII gender discrimination claim.  Mem. Op. (Sept. 3, 2008) at 11-18.  On October 5, 2009, the plaintiff filed a motion for relief upon reconsideration of the court's order dismissing her EPA retaliation claim.  *See* Pl.'s Mot. for Relief Upon Recons. ("Pl.'s Mot.").  That motion has been fully briefed and the court turns now to the parties' arguments.

---

[1]    A more detailed factual description is provided in the court's memorandum opinions dated June 1, 2006 and September 3, 2008.

### III.  ANALYSIS

**A.  Legal Standard for Altering or Amending an Interlocutory Judgment**

A district court may revise an interlocutory decision "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R. CIV. P. 54(b); *see also Childers v. Slater*, 197 F.R.D. 185, 190 (D.D.C. 2000). The standard for the court's review of an interlocutory decision differs from the standards applied to final judgments under Federal Rules of Civil Procedure 59(e) and 60(b). *See Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 42, 48 n.6 (D.D.C. 2001) (noting that "motions for [relief upon] reconsideration of interlocutory orders, in contrast to motions for [relief upon] reconsideration of final orders, are within the sound discretion of the trial court"). The primary reasons for altering or amending a judgment pursuant to Rule 59(e) or Rule 60(b) are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice. *Id.*; *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam); FED. R. CIV. P. 60(b); *LaRouche v. Dep't of Treasury*, 112 F. Supp. 2d 48, 51-52 (D.D.C. 2000). Such motions are not routinely granted. *See Harvey v. District of Columbia*, 949 F. Supp. 878, 879 (D.D.C. 1996).

By contrast, under Rule 54(b) is available "as justice requires." *Childers*, 197 F.R.D. at 190. "As justice requires" indicates concrete considerations of whether the court "has patently misunderstood a party, has made a decision outside the adversarial issues presented to the [c]ourt by the parties, has made an error not of reasoning, but of apprehension, or where a controlling or significant change in the law or facts [has occurred] since the submission of the issue to the court." *Cobell v. Norton*, 224 F.R.D. 266, 272 (D.D.C. 2004) (internal citation omitted). These considerations leave a great deal of room for the court's discretion and, accordingly, the "as

justice requires" standard amounts to determining "whether [relief upon] reconsideration is necessary under the relevant circumstances." *Id.* Nonetheless, the court's discretion under Rule 54(b) is limited by the law of the case doctrine and "subject to the caveat that, where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Singh v. The George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (internal citations omitted).

### B.  The Court Grants the Plaintiff's Motion for Relief Upon Reconsideration

The EPA protects an employee who "has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Fair Labor Standards Act]."[2]  29 U.S.C. § 215(a)(3).  In dismissing the plaintiff's EPA retaliation claim, the court held that

> [t]he plain language of the EPA's retaliation provision expressly limits the scope of its application.  *Ball* [*v. Memphis Bar-B-Q Co.*], 228 F.3d [360, ]364 [(4th Cir. 2000)].  It discusses the filing of "any complaint" in the context of formal legal actions, such as instituting proceedings, testifying, and serving on an industry committee. 29 U.S.C. § 215(a)(3).  By way of contrast, Title VII protects employees who have "*opposed any practice* made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a) (emphasis added).  The phrase "opposed any practice" is markedly more inclusive than the language of the EPA's anti-retaliation provision which protects the filing of "any complaint" in the context of specific formal actions.  *See Lambert* [*v. Genesee Hosp.*], 10 F.3d [46, ]55 [(2d Cir. 1993)] (explaining that the FLSA, unlike Title VII, prohibits retaliation for "three expressly enumerated types of conduct").

Mem. Op. (June 1, 2006) at 14.  Because the plaintiff had not filed a formal complaint, but instead had only sent a letter to her employer, the court ruled that she to state an EPA retaliation claim.  *Id*. at 15.

The plaintiff argues that, in the three years following the court's dismissal of her EPA retaliation claim, the Supreme Court has issued three decisions rejecting a narrow, textual

---

[2]     The EPA amended the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207 *et seq*.  Claims for retaliation in violation of the EPA fall under the FLSA, 29 U.S.C. § 215(a)(3).

analysis of anti-retaliation provisions in federal employment statutes.  Pl.'s Mot. at 1.  The

defendant responds that in none of the cases cited by the plaintiff did the Court interpret the

EPA, but dealt instead with anti-retaliation provisions contained in other statutes.[3]  Def.'s Opp'n

at 3, 5.  Although the Supreme Court has not directly addressed the scope of the anti-retaliation

provision in the EPA, the court agrees with the plaintiff that, in the past three years, the Supreme

Court has expressed its inclination toward a broad interpretation of anti-retaliation provisions in

employment discrimination suits.

　　　The Supreme Court's decision in *Gomez-Perez v. Potter* is particularly persuasive.  *See*

*generally* 128 S. Ct. 1931 (2008).  In *Gomez-Perez*, the Court read into the Age Discrimination

in Employment Act of 1976 ("ADEA"), 29 U.S.C. § 633a(a), a proscription against retaliation.

*Gomez-Perez,* 128 S. Ct. at 1935.  Despite the fact that the ADEA, unlike the EPA, contains no

federal sector anti-retaliation provision, the Court held that, nonetheless, the ADEA prohibits

retaliation in federal employment.  *See generally id*.  The defendant in *Gomez-Perez* argued that,

because Congress, in the ADEA, specifically prohibited retaliation against private sector

employees, the absence of a similar provision in the federal sector provision evinces Congress's

intent not to provide that protection to federal employees.  *Id*. at 1939-40.  The Court, however,

distinguished the two provisions and their legislative histories, and determined that federal sector

retaliation was prohibited under the ADEA.  *Id*. at 1939-41.  Relying largely on *Jackson v.*

*Birmingham Board of Education*, 544 U.S. 167 (2005) and *Sullivan v. Little Hunting Park, Inc.*,

396 U.S. 229 (1969), the Court reaffirmed that "[r]etaliation . . . is another form of intentional . .

---

[3]　　　The defendant also argues that the plaintiff's motion is untimely.  Def.'s Opp'n at 3.  Although
the timing of the plaintiff's motion is far from ideal, the court determines that relief upon
reconsideration is in the interest of justice in light of the changing trend in the interpretation of
federal laws prohibiting retaliation in the workplace.  *See Childers v. Slater*, 197 F.R.D. 185, 190
(D.D.C. 2000) (quoting the Advisory Committee Notes to Federal Rule of Civil Procedure 60(b)
for the proposition that the court has "complete power" to grant relief upon reconsideration of
interlocutory orders "as justice requires").

. discrimination." *Gomez-Perez*, 128 S. Ct. at 1936 (quoting *Jackson*, 544 U.S. at 173-74).  The Court's analysis is particularly elucidating under the circumstances, because, unlike here where the EPA *does* contain a specific anti-retaliation provision, the *Gomez-Perez* Court read such a provision into the ADEA where no such provision was articulated.  *See generally id.*

Likewise, in *CBOCS West, Inc. v. Humphries*, the Court again favored a broad approach to statutory prohibitions on retaliation in the federal workplace by comparing the text and intent of 42 U.S.C. § 1982 with that of 42 U.S.C. § 1981 to hold that § 1981 encompasses claims of retaliation despite the fact that it does not expressly prohibit of retaliation.  128 S. Ct. 1951, 1961 (2008).  Lastly, in *Burlington Northern & Santa Fe Railway Co. v. White*, the Court liberally interpreted "[t]he scope of [Title VII's] antiretaliation provision [to] extend[] beyond workplace-related or employment-related retaliatory acts and harm."  548 U.S. 53, 67 (2006).  That is, despite the fact that a claim of discrimination under Title VII must rest on "actions that affect employment or alter the conditions of the workplace," a claim of retaliation under Title VII can be based on conduct that is not employment-related.  *Id.*

These particularly expansive readings of federal employment discrimination statutes persuade the court that the Supreme Court favors an increasingly broad interpretation of statutes containing anti-retaliation provisions.  Accordingly, in light of these recent decisions, the court grants the plaintiff's motion for relief upon reconsideration.  *See Cobell*, 224 F.R.D. at 272 (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).

## IV.   CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for relief upon

reconsideration.  An Order consistent with this Memorandum Opinion was issued on November

12, 2009.


RICARDO M. URBINA
United States District Judge
